1  HANSON BRIDGETT LLP
   KURT A. FRANKLIN, SBN 172715
2  kfranklin@hansonbridgett.com
   GYMMEL M. TREMBLY, SBN 327236
3  gtrembly@hansonbridgett.com
   425 Market Street, 26th Floor
4  San Francisco, California 94105
   Telephone:    (415) 777-3200
5  Facsimile:    (415) 541-9366

6  Attorneys for Defendant
   ALAMEDA HEALTH SYSTEM

7

8              **UNITED STATES DISTRICT COURT**

9      **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

10

11  DISABILITY RIGHTS CALIFORNIA, a          Case No.  20-cv-05256 JCS
    California nonprofit corporation,
12                                           **DEFENDANT ALAMEDA HEALTH**
                    Plaintiff,               **SYSTEM'S NOTICE OF MOTION AND**
13                                           **MOTION TO DISMISS PLAINTIFF'S**
          v.                                 **COMPLAINT AND MOTION TO**
14                                           **STRIKE; MEMORANDUM OF POINTS**
    COUNTY OF ALAMEDA; ALAMEDA               **AND AUTHORITIES IN SUPPORT**
15  COUNTY BEHAVIORAL HEALTH CARE
    SERVICES; and ALAMEDA HEALTH             Judge:    Hon. Joseph C. Spero
16  SYSTEM,                                  Date:     November 20, 2020
                                             Time:     9:30 a.m.
17                  Defendants.              Ctrm.:    F – 15th Floor

18

19

20

21

22

23

24

25

26

27

28

                                             Case No.  20-cv-05256 JCS

16909751.7

# <u>TABLE OF CONTENTS</u>

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ..................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................3

I.     INTRODUCTION.......................................................................................................3

II.    ISSUES PRESENTED ..............................................................................................5

     A.     Does This Court Lack Subject Matter Jurisdiction To Hear DRC's Claims
        Against A Hospital When DRC's Concern Is Based On County-Provided
        Community-Based Programming That Does Not Yet Exist? ....................................5

     B.     Can An *Olmstead*-Based Discrimination Claim Under Title II Of The
        Americans With Disabilities Act, Section 504 Of The Rehabilitation Act,
        And Government Code Section 11135, Be Raised Against A Hospital That
        Provides Emergency Psychiatric Care And Has No Means To Provide
        Community-Based Programming? ..........................................................................5

III.   PROCEDURAL BACKGROUND ..........................................................................5

IV.    FACTUAL BACKGROUND ....................................................................................6

     A.     Alameda Health System Oversees John George Psychiatric Hospital, Which
        Is Limited To Treatment Of Patients In Mental Health Crisis ...................................6

     B.     Psychiatric Treatment For Individuals With Mental Health Disabilities At
        John George Psychiatric Hospital Is Provided According To Statutory
        Mandates ...............................................................................................................7

     C.     DRC Asks This Court For Equitable Relief Against AHS Which Only The
        County Can Provide ..............................................................................................8

     D.     Alameda County And Alameda County Behavioral Health Care Services
        Administer Mental Health Care Services For Alameda County Residents ...............9

V.     LEGAL STANDARD ...............................................................................................9

VI.    ARGUMENT ..........................................................................................................10

     A.     DRC Lacks Article III Standing Because There Is No Case Or Controversy
        As To Defendant AHS ........................................................................................10

           1.     As pled, the issues before this Court are not fit for adjudication
               because AHS does not detain patients, nor does it have the means to
               provide community-based programming. .................................................11

               a.     AHS does not arrest, detain, take into custody, nor
                   institutionalize patients.............................................................12

               b.     AHS does not place, provide, nor fund community-based
                   services ......................................................................................13

DEFT. ALAMEDA HEALTH SYSTEM'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S
COMPLAINT AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

16909751.7

2. DRC does not suffer direct hardship if its claims as to Defendant AHS are not heard in federal court ................................................. 15

B. DRC Lacks Article III Associational Standing Because DRC Has Not Pled That Any DRC Constituent In His Or Her Own Right Can Claim A Risk Of Unjust Institutionalization Resulting From Any Conduct By AHS ..................... 15

C. DRC's Fails To State A Claim of Disability Discrimination Upon Which Relief Can Be Granted ......................................................... 17

1. DRC has not alleged facts to make a regular disability accommodation claim under the ADA or Rehabilitation Act and limits itself to an *Olmstead* integration claim. ............................. 17

2. Because courts interpret the ADA and Rehabilitation Act's integration requirement in an identical manner, DRC's failure to state a claim under the ADA necessarily results in a failure to state a claim under the Rehabilitation Act, and the derivative claim under state law also fails. .................................................. 18

3. DRC fails to state that AHS's statutorily mandated patient care is not in accordance with the prescriptions of the ADA and Rehabilitation Act. ........................................................ 19

D. DRC's Allegations Of Racial Disparities In Treatment, And COVID-19 Risk Of Infection Are Immaterial And Impertinent, And Must Be Stricken .......... 21

VII. CONCLUSION ...................................................................... 22

16909751.7

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4
*Abbott Laboratories v. Gardner*,
5       387 U. S. 136, 87 S.Ct. 1507, 18 L. Ed. 2d 681 (1967) .............................................11

6
*Arbaugh v. Y&H Corp.*,
        546 U.S. 500, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006) .......................................9
7

8
*Ashcroft v. Iqbal*,
        556 U.S. 662 (2009) ....................................................................................................10
9

*Babu, et al. v. County of Alameda, et al.*,
10      Case No. 5:18-cv-07677-NC .....................................................................................5, 6

11
*Balistreri v. Pacifica Police Dept.*,
        901 F.2d 696 (9th Cir. 1990).......................................................................................10
12

13
*Bassilios v. City of Torrance*,
        166 F.Supp.3d 1061 (C.D. Cal. 2015).........................................................................18
14

*Bell Atlantic Corp. v. Twombly*,
15      500 U.S. 554 (2007) ....................................................................................................10

16
*Black v. Dep't of Mental Health*,
        83 Cal. App. 4th 739, 100 Cal. Rptr. 2d 39 (2000) .....................................................18
17

18
*Ernst & Young v. Depositors Econ. Prot. Corp.*,
        45 F.3d 530 (1st Cir.1995) ..........................................................................................11
19

*Gonzalez, et al. v. Ahern, et al.*,
20      Case No. 19-cv-07423-JSC .......................................................................................5, 6

21
*Hunt v. Washington State Apple Advert. Comm'n*,
        432 U.S. 333, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977) .............................................15
22

23
*Johnson v. DTBA, LLC*,
        424 F. Supp. 3d 657 (N.D. Cal. 2019) ........................................................................10
24

*Lee v. City of Los Angeles*,
25      250 F.3d 668 (9th Cir. 2001)........................................................................................10

26
*Lujan v. Defenders of Wildlife*,
        504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) .....................................15, 16
27

*Mack v. South Bay Beer Distrib.*,
28      798 F.2d 1279 (9th Cir.1986).......................................................................................10

DEFT. ALAMEDA HEALTH SYSTEM'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S
COMPLAINT AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*McInnis-Misenor v. Maine Med. Ctr.*,
  319 F.3d 63 (1st Cir. 2003) ...............................................................11, 15

*Ohio Forestry Assn. v. Sierra Club*,
  523 U.S. 726, 118 S. Ct. 1665, 140 L. Ed. 2d 921 (1998) .........................11

*Olmstead v. L.C. ex. rel. Zimring*,
  527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999) ................................. *passim*

*Oregon Advocacy Ctr. v. Mink*,
  322 F.3d 1101 (9th Cir. 2003) .............................................................15

*Prescott v. Rady Children's Hosp.-San Diego*,
  265 F. Supp. 3d 1090 (S.D. Cal. 2017) ..................................................17

*Rodriguez v. City of New York*,
  197 F.3d 611 (2d Cir. 1999) ...............................................................21

*Sidney-Vinstein v. A.H. Robins Co.*,
  697 F.2d 880 (9th Cir. 1983) ..............................................................21

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) ...........................................10

*Townsend v. Quasim*,
  328 F.3d 511 (9th Cir. 2003) ..............................................................18

**Statutes**

29 U.S.C. § 794(a) ..............................................................................17

42 U.S.C. § 12131, *et seq.* ................................................................17

Cal. Code Regs., tit. 9, § 1810.205 ...................................................9, 14

Cal. Code Regs., tit. 9, § 1810.226 .......................................................14

Cal. Code Regs. tit. 9, § 1810.228 ..........................................................9

Cal. Code Regs., tit. 9, § 1810.305 .......................................................14

Cal. Code Regs., tit. 9, § 1810.405 .......................................................14

Cal. Code Regs., tit. 9, § 1810.405(a) ...................................................13

Cal. Code Regs. tit. 9, § 1820.219 ..........................................................9

Cal. Code Regs. tit. 9, § 1820.220 ..........................................................9

Cal. Gov't Code § 11135 .............................................................5, 17, 18

Case No.  20-cv-05256 JCS

16909751.7

1  Cal. Gov't Code § 11139 ................................................................................................17

2  Cal. Health & Safety Code § 101850 ...............................................................................6

3  Cal. Health & Safety Code § 101850(ak) ...................................................................7, 14

4  Cal. Health & Safety Code § 101850(j) .......................................................................7, 14

5  Cal. Welf. & Inst. Code § 5150 ......................................................................7, 8, 12, 13

6  Cal. Welf. & Inst. Code § 5150(g)-(i) .............................................................................8

7  Cal. Welf. & Inst. Code § 5152 ...............................................................................12, 13

8  Cal. Welf. & Inst. Code § 5152(a) ................................................................................13

9  Cal. Welf. & Inst. Code § 5250 ................................................................................8, 13

10  Cal. Welf. & Inst. Code § 5254 .....................................................................................8

11  Cal. Welf. & Inst. Code § 5254.1 ..................................................................................8

12  Cal. Welf. & Inst. Code § 5254.2 ..................................................................................8

13  Cal. Welf. & Inst. Code § 10720 ...................................................................................9

14  Cal. Welf. & Inst. Code § 14000, *et seq.* .......................................................................9

15  Cal. Welf. & Inst. Code § 14680 ...................................................................................9

16  Cal. Welf. & Inst. Code § 14682.1 ...........................................................................9, 14

17  Cal. Welf. & Inst. Code § 14684 .............................................................................13, 16

18  Cal. Welf. & Inst. Code § 14684(a)(3) ...........................................................................9

19  Cal. Welf. & Inst. Code § 14714 .............................................................................9, 14

20  Cal. Welf. & Inst. Code § 14718 ..................................................................................13

21  Cal. Welf. & Inst. Code § 14726 .............................................................................9, 14

**Other Authorities**

22 C.C.R. § 50000, *et seq.* ................................................................................................9

28 C.F.R. § 35.130(b)(7)(i) ............................................................................................18

28 C.F.R. § 35.310(d) ....................................................................................................19

28 C.F.R. § 41.53 ..........................................................................................................18

16909751.7

Fed. R. Civ. P. 12(b)(1) ..................................................................................3, 4, 9, 10

Fed. R. Civ. P. 12(b)(6) ........................................................................................ *passim*

Fed. R. Civ. P. 12(f) ..................................................................................................4, 21

Jonathan Sherin and Darrell Steinberg, *Op-Ed: Mentally ill people in desperate need of treatment often don't get it because of an antiquated law*, Los Angeles Times (Aug. 20, 2020) ........................................................................................21

U.S. Const. art. III, § 2 ..........................................................................................10, 16

16909751.7

<u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

**TO PLAINTIFF AND ITS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 20, 2020, at 9:30 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Joseph C. Spero, located in the United States Courthouse, Courtroom F, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant ALAMEDA HEALTH SYSTEM ("AHS") will and hereby does move this Court to dismiss all causes of action against it in Plaintiff Disability Rights California's ("Plaintiff" or "DRC") Complaint for Damages ("the Complaint").

This Motion is made upon the following grounds:

Under Federal Rule of Civil Procedure, Rule 12(b)(1), this Court lacks subject matter jurisdiction because there is no case or controversy as to Defendant AHS. By its enabling legislation, AHS stands separate from the County of Alameda ("the County"). AHS consists of five hospitals, four wellness centers, and over 800 beds. Its psychiatric hospital, which is the subject of DRC's allegations against it, is John George Psychiatric Hospital ("John George" or "the hospital"). Unsurprisingly, as a hospital, AHS does not arrest persons, nor seek to involuntarily bring patients to John George. Moreover, it is not AHS that has the power or resources to oversee patients in community-based programing, nor does it fund such programming. This is up to the County. Thus, DRC lacks Article III standing against AHS, as DRC constituents cannot suffer a risk of unjustified institutionalization caused by AHS. Nor, can the Court order a hospital like AHS to create community-based programming.

Further, DRC lacks statutory standing to pursue its federal claims as the relief that DRC seeks – community-based treatment of mental health conditions – is provided by the County. As pled, there is no available equitable relief against AHS. Until the County makes community-based treatment readily available, equitable relief that requires that AHS coordinate with the County on programming that does not yet exist is premature.

Under Rule 12(b)(6), DRC fails to state a valid claim upon which relief can be granted. Piecing together a cause of action, DRC blends its allegations as to the County's detention, administration and funding of community-based programming with AHS's limited function in

1   administering the hospital.  But, in doing so, DRC has failed to plead with sufficient particularity

2   any causal connection between AHS's conduct and any alleged risk of unjustified

3   institutionalization.  Thus, on its face, the Complaint falls short of the pleading standard sufficient

4   to state a claim against AHS.

5          Under Rule 12(f), allegations in the Complaint referencing racial disparities in patient care

6   and risk of COVID-19 infection should be stricken as redundant, impertinent, and immaterial.

7   These allegations are superfluous, inflammatory, and distract from the central issues of this case.

8   This is neither an inadequate medical care case more common in prison litigation, nor is it a case

9   based on racial inequities.  DRC is no better off having pled these facts, than had it chosen a more

10  focused approach to litigate this case for efficient resolution.  Accordingly, this Court should grant

11  AHS's motion to strike these allegations.

12         This Motion is based on this Notice of Motion, the attached Memorandum of Points and

13  Authorities, and Request for Judicial Notice filed concurrently herewith, all of the pleadings, files,

14  and records in this proceeding, all other matters of which the Court may take judicial notice, and

15  any argument or evidence that may be presented to or considered by the Court prior to its ruling.

16  DATED:  October 13, 2020                        HANSON BRIDGETT LLP

17

18                                                           By: _____/s/ Gymmel M. Trembly_____

19                                                                  KURT A.  FRANKLIN
                                                                     GYMMEL M.  TREMBLY
20                                                                  Attorneys for Defendant
                                                                     ALAMEDA HEALTH SYSTEM
21

22

23

24

25

26

27

28

16909751.7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Disability Rights California ("DRC" or "Plaintiff") has framed its complaint as an *Olmstead*-based claim of disability discrimination resulting from the alleged segregation of persons with mental health disabilities in psychiatric facilities and risk of continued unjustified institutionalization.  Importantly, this case is not a case of discrimination in public accommodations against persons with disabilities.  It is also not a case of lack of medical care brought typically in prison litigation.  Instead, DRC blames AHS – a hospital – for its alleged failure to coordinate and refer patients to County services that do not yet exist.

For the following reasons, each of the DRC's claims fail at the pleading stage and this Court should grant AHS's motion to dismiss under Federal Rule of Civil Procedure, Rule 12(b)(1) and Rule 12(b)(6):

First, this Court lacks subject matter jurisdiction and should dismiss this action under Rule 12(b)(1) because there is no case or controversy for the Court to decide.  DRC asks this Court to adjudicate a cause of action based on a future risk of harm that may be created by AHS and may never materialize, as patients are discharged from the hospital when it is safe to do so given the hospital's medical assessment of the individual.

But by its enabling statute, AHS has a strictly limited function – the management of five hospitals and four wellness centers in Alameda County, including John George Psychiatric Hospital.  At John George, a patient either voluntarily seeks psychiatric care, or he or she is brought to the hospital by the County after having made a determination with probable cause that the patient is a danger to himself or herself, or others, or is gravely disabled.  AHS does not arrest, detain, nor place individuals in unjustified segregated facilities.  Neither does AHS fund community-based programs or regulate the quality of care provided by those community-based programs.  Those functions are the job of the County.  Because AHS does not perform these functions, any alleged risk of future harm cannot be attributed to AHS.  Moreover, no hardship results to DRC if its claims as to Defendant AHS are not heard in federal court because DRC can obtain the remedy is seeks from the County.

1    Second, this Court should also dismiss DRC's complaint under Rule 12(b)(1) because

2    DRC lacks associational standing to bring this action.  No DRC constituent can allege a risk of

3    future harm that can be traced to any alleged unlawful conduct by AHS.  And, DRC's sought after

4    relief requiring Defendant AHS to refer DRC constituents to services under the County's

5    operation and control – when it also claims that the County does not yet provide sufficient

6    community-based programming – is premature.

7    Third, DRC has failed to state a claim upon which relief can be granted and this Court

8    should dismiss the Complaint under Rule 12(b)(6).  On its face, DRC's Complaint conflates the

9    County's alleged failures in providing, administering and funding for community-based care for

10   DRC constituents, with AHS's statutory mandate to provide individualized emergency psychiatric

11   care at John George.  In short, DRC blames AHS for the County's funding-based inabilities to

12   make community-based programs available and seeks to remedy that failure by requiring AHS to

13   discharge patients to non-existent community-based services.

14   Fourth, DRC has failed to state a claim that any DRC constituent face risk of

15   institutionalization based AHS's alleged unlawful conduct.  Indeed, DRC's allegation that DRC's

16   exemplars face a risk of unjustified institutionalization results from the County's failure to provide

17   community-based programming; not from AHS's hospital administrative procedures.  DRC's

18   claim that AHS's practices present a risk of harm to DRC constituents of unjustified

19   institutionalization are conclusory and based on speculation and surmise given the current status of

20   community-based programming.

21   Finally, this Court should also grant Defendant AHS's motion to strike under Rule 12(f) as

22   to DRC's allegations of racial disparities in patient care and risk of COVID-19 infection should be

23   stricken as redundant, impertinent, and immaterial.  These allegations are superfluous,

24   inflammatory, and unnecessary to establish a cause of action under the statutory framework of

25   Title II of the ADA, the Rehabilitation Act, and State public accommodation law, and serve only

26   to distract from the central issues of this case.  Accordingly, this Court should grant AHS's motion

27   to strike these allegations.

28   / / /

16909751.7

1

## II.    ISSUES PRESENTED

2    **A.    Does This Court Lack Subject Matter Jurisdiction To Hear DRC's Claims Against A**
     **Hospital When DRC's Concern Is Based On County-Provided Community-Based**
3    **Programming That Does Not Yet Exist?**

4    • An Article III court has subject matter jurisdiction to hear a case when there is a
       case or controversy for it to adjudicate.  On one hand, a case is ripe where the
5      questions are purely legal ones; on the other hand, a case is unripe if a threatened
       injury is contingent on several events which may or may not happen.
6
       Given that the County detains persons with mental health disabilities for
7      involuntary psychiatric treatment and is responsible for providing community-
       based care to such persons, and the hospital, which only provides emergency
8      psychiatric mental health care to patients to keep them from harming themselves or
       others, does not have the means to provide community-based programing, does this
9      Court have jurisdiction to hear claims against the hospital when DRC's relief is
       based on County-provided community-based programming?
10

11   **B.    Can An *Olmstead*-Based Discrimination Claim Under Title II Of The Americans**
     **With Disabilities Act, Section 504 Of The Rehabilitation Act, And Government Code**
12   **Section 11135, Be Raised Against A Hospital That Provides Emergency Psychiatric**
     **Care And Has No Means To Provide Community-Based Programming?**
13

14   • Both Title II of the Americans with Disabilities Act ("ADA") and Section 504 of
       the Rehabilitation Act ("Rehabilitation Act") forbid public entities from
15     discriminating against qualified individuals because of his or her disability.  Under
       both federal laws, discrimination results when a public entity fails to provide
16     services, programs, or activities in the most integrated setting appropriate to the
       needs of the individual.  Further, California law codifies the proscriptions against
17     discrimination in Government Code section 11135 such that a violation of ADA
       results in a violation of Section 11135.
18
       Because DRC has pled that (a) the County is responsible for providing,
19     administering, and funding community-based programming for persons with
       mental health disabilities, and (b) the County has not created enough community-
20     based programming to satisfy the needs of its residents, as to AHS (the hospital)
       does the Complaint state a claim of disability discrimination under Title II of the
21     ADA, Section 504 of the Rehabilitation Act, and California Government Code
       section 11135 based on the hospital's claimed failure to refer patients to
22     community-based programming that does not yet exist?

23   ## III.    PROCEDURAL BACKGROUND

24        Plaintiff, disability advocacy association DRC, has filed this *Olmstead*-based action

25   claiming the County and AHS discriminate against persons with mental health disabilities.  This

26   case follows recent litigation brought against the County challenging prison conditions and

27   medical care provided to prisoners in County jails; *Gonzalez, et al. v. Ahern*, *et al*. and *Babu, et*

28   / / /

DEFT. ALAMEDA HEALTH SYSTEM'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S
COMPLAINT AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

16909751.7

1   *al. v. County of Alameda, et al.*[1]  DRC sought to relate this case to the *Babu* class action, which

2   was filed in December 2018.  The *Babu* case raises constitutional challenges to the use of

3   isolation, mental health care provided to prisoners and alleged unlawful segregation of prisoners

4   with mental health needs at Santa Rita and Glenn Dyer county jails.  *Babu* also claims *Olmstead*-

5   based allegations concerning prisoners with psychiatric disabilities based on the County's alleged

6   use of punishment of prisoners because of their mental health disabilities, inadequate suicide

7   prevention, inadequate staffing, and inadequate discharge planning among other claims.[2]  The

8   *Gonzalez* class action filed against the County challenges the general facility conditions and

9   services.  Both actions include allegations that the County failed to adequately prevent individuals

10  from becoming infected with COVID-19.[3]  The *Babu* court correctly rejected DRC's motion to

11  relate the cases.[4]

12          The *Babu* Plaintiffs also ask the Court to grant an equitable remedy from the County

13  requiring that it cease discriminating against prisoners with psychiatric disabilities by housing

14  such inmates in the most integrated setting appropriate to their individual needs.  Thus, the

15  County's obligations (if any) to provide mental health programs to DRC "constituents" is already

16  being litigated.  Wrongly, DRC's lawsuit brought by lawyers and an organization that is friendly

17  to *Babu* is an effort to sweep AHS into litigation which it does not belong.

18                      **IV.    FACTUAL BACKGROUND**

19  **A.    Alameda Health System Oversees John George Psychiatric Hospital, Which Is
        Limited To Treatment Of Patients In Mental Health Crisis**

20

21          AHS is an independent hospital authority dedicated to the management, administration,

22  and control of five hospitals and four wellness centers – including John George Psychiatric

23  Hospital.[5]  At John George, patients, including the medically indigent, receive emergency or

24

25  _____

26  [1]  *Gonzalez, et al. v. Ahern, et al.*, Case No. 19-cv-07423-JSC; *Babu, et al. v. County of Alameda, et al.*, Case No. 5:18-cv-07677-NC.

27  [2]  *Babu*, First Am. Compl., ¶ 6.
    [3]  *Id.* ¶¶ 163-164; *Gonzalez* Second Am. Compl., ¶¶ 172-188.
    [4]  *Babu* Dkt. No. 193.

28  [5]  Cal. Health & Safety Code § 101850.

DEFT. ALAMEDA HEALTH SYSTEM'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S
COMPLAINT AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

16909751.7

1   inpatient psychiatric treatment.[6]

2          AHS is an entity separate and distinct from the County.[7]  And, its relationship with the

3   County is purely contractual.[8]  AHS and the County are parties to a Master Contract ("Master

4   Contract").  Under the terms of this agreement, the County purchases certain medical and health

5   services from AHS.[9]  However, the County retains the sole ability to terminate the activities of

6   AHS and can expire AHS as an entity.[10]

7   **B.     Psychiatric Treatment For Individuals With Mental Health Disabilities At John
           George Psychiatric Hospital Is Provided According To Statutory Mandates**
8

9          County residents, including Medi-Cal beneficiaries, may receive mental health services at

10  John George.  By statute, individuals are admitted to the John George for emergency services

11  when, due to a mental health disorder, he or she is a danger to himself or herself, or others, or is

12  gravely disabled as a result of the mental health disorder.[11]  An individual may seek voluntary

13  psychiatric care at John George.  Alternatively, by law enforcement, the courts, or other County

14  action, a patient may be involuntarily brought to the hospital for acute, intensive mental health

15  treatment for up to 72 hours, upon a showing of probable cause.[12]

16         To ensure the hospital can deliver high quality care, in some circumstances the hospital

17  census may be adjusted and emergency departments seeking to transfer patients to the hospital

18  may be delayed.  The hospital's census management includes an assessment of available physical

19  space in the emergency unit, staffing levels and whether adding additional staff to ensure quality

20  care is not possible due to staff unavailability, the availability of one-to-one staffing, the number

21  of patients waiting for an evaluation by a physician, and the number of patients with a confirmed

22  and available disposition.  If the hospital determines that conditions in the emergency unit exceeds

23

24  _____

[6]  Master Contract Between County of Alameda and Alameda County Medical Center, executed
25  June 23, 1998 as amended November 28, 2000, a true and correct copy attached as Ex. A to Def.'s
    Req. for Judicial Notice (hereinafter, "Ex. A") § 1.11.
    [7]  Cal. Health & Safety Code § 101850(j).
26  [8]  *Id*. §§ (k)-(l).
    [9]  Ex. A § 3.2.
27  [10]  *Id*. § 6.5; Cal. Health & Safety Code § 101850(ak).
    [11]  Cal. Welf. & Inst. Code §§ 5150; 5150.05.
28  [12]  *Id*. §§ 5150; 5151.

16909751.7

1  its ability to deliver high quality mental health services, area emergency departments seeking to

2  transfer patients to John George will be delayed.  However, patients arriving at John George by

3  way of ambulances, walk-in patients seeking emergency care, and patients brought to the hospital

4  by law enforcement will continue to be admitted.

5       Once at John George, the hospital may admit the patient only after having determined that

6  the individual is in need of emergency services and cannot be properly served without

7  admission.[13]  The patient is informed that he or she may request to be evaluated or treated at a

8  facility of his or her choice, and may request to be evaluated or treated by a mental health

9  professional of his or her choice.[14]  The hospital honors the patient's choice when possible.

10       Following the 72-hour admission period, the patient may continue inpatient treatment on a

11  voluntary basis.  For some patients, continued involuntary intensive treatment may be necessary.[15]

12  A person may be committed for an additional 14–day period for intensive treatment.[16]  However,

13  such detentions can be terminated before the expiration of the commitment period, and he or she

14  has the right to have a judicial determination of whether there is probable cause for the

15  commitment.[17]  Further, the person being certified also has the right to counsel and the right to

16  bring a writ of habeas corpus.[18]

17  **C.     DRC Asks This Court For Equitable Relief Against AHS Which Only The County
        Can Provide**

18

19       DRC seeks to require that AHS take immediate action to:  (1) cease the unnecessary

20  institutionalization of DRC constituents; (2) provide intensive community-based mental health

21  services; and, (3) ensure that these community-based services are provided in a manner that is

22  culturally congruent.[19]  In this lawsuit, DRC has wrongly reinvented the bounds of AHS's

23  function in disregard of the law and public contracts that limits the hospital's function.  As

24

25  [13]  *See id.*
    [14]  *Id*. § 5150(g)-(i).
26  [15]  *Id*. § 5250.
    [16]  *Id*.
27  [17]  *See id*. §§ 5254, 5254.2.
    [18]  *Id*.
28  [19]  Compl. at 39, ¶ 3.

16909751.7

1    discussed below, only the County, not AHS, can provide DRC the equitable relief it seeks.

2    **D.    Alameda County And Alameda County Behavioral Health Care Services Administer
        Mental Health Care Services For Alameda County Residents**
3

4            California participates in Medicaid through the Medi-Cal Program and has designated the

5    Department of Health Care Services as the entity responsible for its administration.[20]  The

6    Department implements and administers mental health care for Medi-Cal eligible residents of the

7    State through Mental Health Plans ("MHP").[21]  The MHP in each county is responsible for setting

8    appropriate standards relating to the quality, access, and coordination of services within a

9    managed system of care, and opportunities for Medi-Cal providers to provide services, as long as

10   the provider meets MHP standards.[22]  Medi-Cal beneficiaries receive mental health care services

11   through the County MHP, including, inpatient hospitalizations services and psychiatric health

12   facility services.[23]

13           The County provides mental health services independently and in conjunction with mental

14   health and substance abuse programs, and community hospitals and health centers.[24]  Alameda

15   County Behavioral Health Care Services ("ACBHCS"), a County entity, is the MHP in Alameda

16   County.  Accordingly, the County – not AHS – is responsible for arranging, and paying for

17   specialty mental health services for beneficiaries.[25]

18                                   **V.    LEGAL STANDARD**

19           The Court must dismiss a case when it lacks subject matter jurisdiction or when the

20   plaintiff fails to state a claim upon which relief can be granted.[26]  Federal Rule of Civil Procedure

21   12(b)(1) requires dismissal for failure to state grounds for federal subject matter jurisdiction.[27]

22   _____

23   [20] *See* Cal. Welf. & Inst. Code §§ 10720, 14000, *et seq.*; 22 C.C.R. § 50000, *et seq.*
     [21] Cal. Welf. & Inst. Code §§ 14682.1, 14726, 14714.
     [22] *Id.* §§ 14680, 14684(a)(3).
24   [23] *See* Cal. Code Regs. tit. 9, § 1810.205; *see*, § 1820.219; *see also*, § 1820.220.
     [24] Ex. A § 1.5.
25   [25] Alameda County Behavioral Health Policy & Procedure: Authorization of Specialty Mental
     Health Services, 200-2, attached as Ex. I to Def.'s Req. for Judicial Notice; *see also*, Cal. Code
26   Regs. tit. 9, § 1810.228.
     [26] Fed. R. Civ. P. 12(b)(1), 12(b)(6).
27   [27] *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506, 126 S. Ct. 1235, 1240, 163 L. Ed. 2d 1097 (2006)
     ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of
28   the subject matter, the court shall dismiss the action.").

16909751.7

1   A complaint should be dismissed for failure to state a claim under Rule 12(b)(6) when

2   there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a

3   cognizable legal theory.[28]  A complaint must state "enough facts to state a claim to relief that is

4   plausible on its face."[29]

5   In ruling on a motion to dismiss under Rule 12(b)(6), the court generally considers only the

6   pleadings, and accepts as true the allegations contained in the complaint.[30]  However, the court

7   does not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by

8   mere conclusory statements."[31]  Also, the court may take judicial notice of documents in the

9   public record.[32]

10  ## VI.    ARGUMENT

11  **A.    DRC Lacks Article III Standing Because There Is No Case Or Controversy As To
            Defendant AHS**

12

13  DRC lacks standing to pursue its claims against Defendant AHS.  A complaint is properly

14  dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks

15  constitutional authority to adjudicate the dispute.[33]

16  More specifically, Article III courts are confined to adjudicating actual "cases" and

17  "controversies," in other words, the case must be ripe for adjudication.[34]  The party invoking

18  federal jurisdiction bears the burden to establish standing, *i.e.*, carries the burden to allege

19  sufficient facts to establish that the case is ripe for adjudication based on the following:  (1) fitness

20  of the issues for judicial decision, and (2) hardship to the parties resulting from withholding court

21

22  [28] *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).
    [29] *Bell Atlantic Corp. v. Twombly*, 500 U.S. 554, 570 (2007).

23  [30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
    [31] *Id.*

24  [32] *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citing *Mack v. South Bay Beer
    Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986)) (on a motion to dismiss, a court may take judicial

25  notice on matters of public record); *Johnson v. DTBA, LLC*, 424 F. Supp. 3d 657, 662 (N.D. Cal.
    2019) (taking judicial notice of public records maintained on government websites).

26  [33] *See* Fed. R. Civ. P. 12(b)(1).
    [34] U.S. Const. art. III, § 2; *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635

27  (2016), as revised (May 24, 2016) (The irreducible constitutional minimum of Article III standing
    consists of three elements, as the plaintiff must have:  (1) suffered an injury in fact, (2) that is

28  fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by
    a favorable judicial decision).

16909751.7

1   consideration.[35]  On one hand, a case may be ripe where the questions are purely legal ones; on the

2   other hand, a case is unripe if a threatened injury is contingent on several events which may or

3   may not happen.[36]

4        "Federal courts cannot—and should not—spend their scarce resources on what
         amounts to shadow boxing.  Thus, if a plaintiff's claim, though predominantly legal
5        in character, depends on future events that may never come to pass, or that may not
         occur in the form forecasted, then the claim is unripe."[37]

6

7        Here, DRC's prayer for relief seeks to have the Court declare AHS's actions unlawful.

8   Beyond this declaratory relief, its demand is solely equitable in nature.  But as to AHS, DRC's

9   Complaint is premature because it asks the Court for remedies that are entirely dependent on the

10  County creating community-based mental health services and remedies that are beyond AHS's

11  reach.[38]

12        **1.      As pled, the issues before this Court are not fit for adjudication because AHS
                 does not detain patients, nor does it have the means to provide community-**
13               **based programming.**

14        DRC's Complaint asserts that individuals with mental health disabilities will be exposed to

15  risk of unjustified institutionalization by Defendant AHS unless it immediately "(a) [c]ease[s] the

16  unnecessary institutionalization of DRC constituents; (b) [p]rovide[s] intensive community-based

17  services to prevent unnecessary institutionalization; and (c) [e]nsure[s] that these intensive

18  services are provided in a manner that is culturally congruent and responsive."[39]  But as to AHS,

19  the Complaint states a threatened injury that may never come to pass since DRC's concern is

20  _____

21  [35] *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 73 (1st Cir. 2003).
    [36] See *Ohio Forestry Assn. v. Sierra Club*, 523 U.S. 726, 118 S. Ct. 1665, 140 L. Ed. 2d 921
22  (1998) (citing to *Abbott Laboratories v. Gardner*, 387 U. S. 136, 148-149, 87 S.Ct. 1507, 18 L.
    Ed. 2d 681 (1967); *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 537 (1st
23  Cir.1995) ("Even when the 'legal' emphasis of a particular claim is sufficient to mask gaps in the
    factual record, a court will find ripeness lacking if the anticipated events and injury as simply too
24  remote to justify contemporaneous adjudication").
    [37] *Ernst & Young*, 45 F.3d at 537 (1st Cir.1995).
25  [38] DRC seeks declaratory judgment that would find "a.  failing to provide DRC Constituents with
    services in the most integrated setting and needlessly institutionalizing them in a psychiatric
26  hospital or other institution or putting them at serious risk of such institutionalization;
    b.  discriminating against DRC Constituents on the basis of disability by utilizing methods of
27  administration, adopting and applying policies, failing to make reasonable modifications to
    programs and policies, and engaging in practices that result in unnecessary segregation and
28  institutionalization or subjecting them to risk of institutionalization."  Compl. at 39, ¶ 1.
    [39] Compl. at 39, ¶ 3.

1    based on County-provided community-based programming.

2          **a.    AHS does not arrest, detain, take into custody, nor institutionalize**
           **patients.**

3

4          AHS treats patients, it does not and cannot institutionalize them.  It does not arrest, detain,

5    nor "take" into custody any patient.  By legislative mandate and contract, its charge is limited.

6    Persons are treated at John George on an involuntary basis only if they present a danger to

7    themselves or others, or are gravely disabled.  Patients are either brought to the hospital by the law

8    enforcement, the County mobile crisis team, or designated County professional.

9          DRC's Complaint recognizes that it is the County that detains individuals for

10   commitment – "[u]nder California commitment laws, a DRC Constituent can be detained for up to

11   72 hours based on a statement by certain County staff that they have reason to believe that the

12   person, due to a mental health disability, is gravely disabled or a danger to themselves or others."[40]

13   And, "the County detains vast numbers of Constituents at John George."[41]  Thus, only the County

14   detains, arrests, takes into custody, and institutionalizes patients – not AHS.

15         Further, only after patients are at the hospital are AHS's statutory obligations to administer

16   appropriate mental health care services triggered.  John George staff may admit a patient in severe

17   psychiatric crisis based on their assessment.[42]  Once the patient is admitted to the hospital, as soon

18   as possible, in light of staffing and other patient needs, a hospital professional evaluates and

19   assesses the care appropriate for the needs of the individual.[43]  For some patients, his or her

20   emergency psychiatric condition may require that he or she is admitted to the hospital for up to 72

21   hours; for others, treatment may require up to 14 days of care.[44]  In any case, to prevent

22   inappropriate, indefinite commitments of patients, such treatment is implemented incrementally by

23   statute and patients may be discharged before the expiration of their 72-hour or 14-day care.[45]

24         There is no controversy as to Defendant AHS because by statute the hospital's function is

25   _____

26   [40]  Compl. at 17, ¶ 72.
     [41]  *Id.* at 17, ¶ 74.
     [42]  Cal. Welf. & Inst. Code § 5150.
27   [43]  *Id.* §§ 5150, 5152.
     [44]  *Id.* §§ 5150, 5250.
28   [45]  *Id.*

16909751.7

Case 3:20-cv-05256-CRB   Document 17   Filed 10/13/20   Page 20 of 29

1   to treat and care for the mental health needs of patients, not to detain, arrest, take into custody, nor

2   institutionalize patients.  That later is a function of the County.

3              **b.      AHS does not place, provide, nor fund community-based services**

4              AHS does not place patients in intensive community-based services; rather, its purpose is

5   strictly to provide patients psychiatric care.[46]  Instead, it is the County that is responsible for the

6   administration of community-based programming.  Based upon appropriate medical

7   recommendations, the hospital can discharge patients.[47]  Indeed, an individualized medical

8   assessment prior to discharge is an essential part of the care provided to John George patients such

9   that the Legislature codified specific procedural requirements that must be followed prior to

10  release.  For instance, if a dispute arises between the psychiatrist and other professional

11  concerning whether to terminate the 72-hour treatment of a patient early, a psychiatrist must make

12  the decision.[48]  Discharge occurs "only if, the psychiatrist directly responsible for the person's

13  treatment believes, as a result of his or her personal observations, that the person no longer

14  requires evaluation or treatment."[49]

15             In contrast, for a patient who is not in crisis, the County through its MHP, ACBHCS,

16  provides community-based programming and sets standards for quality of the care provided by

17  these services.[50]  ACBHCS is responsible for ensuring that persons with mental health disabilities

18  have access to specialty mental health care services.[51]  The Complaint states that Defendant

19  ACBHCS is required to, and can provide the intensive community services constituents need to

20  stop unnecessary institutionalization.[52]  Moreover, ACBHCS designate[s] which facilit[y] to use

21  for evaluation and treatment of individuals.[53]  And, it is "responsible for providing mental health

22  _____

23  [46] Ex. A at § 1.7.
    [47] *See* Cal. Welf. & Inst. Code §§ 5150, 5250.
    [48] *See id.* § 5152.
24  [49] *Id*. § 5152(a).
    [50] *See* Ca1. Welf. & Inst. Code §§ 14684, 14718; Compl. at 15, ¶ 66 ("ACBHCS is the agency
25  responsible for implementing Alameda County's mental health system").
    [51] *See* Cal. Code Regs., tit. 9, § 1810.405(a).
26  [52] Compl. at 25, ¶¶ 116-117 (noting the specific services that DRC constituents need to stop
    unnecessary institutionalization can be provided as an integrated part of the FSP model and
27  ACBHCS is required to provide all of these services through Medi-Cal and Mental Health
    Services Act).
28  [53] *See id*. at 17, ¶ 72.

DEFT. ALAMEDA HEALTH SYSTEM'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S
COMPLAINT AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

16909751.7

1 treatment in County jail."[54]

2     Therefore, taking the facts of the Complaint as true, any risk of unnecessary

3 institutionalization cannot be placed upon AHS because it is not responsible for placing,

4 providing, nor funding community-based programs, nor dictating that the programs provide a

5 service in a culturally congruent manner.  Instead, the County does so by contracting with specific

6 service providers to ensure that residents with mental health disabilities have services available to

7 them, including emergency care, urgent care, and routine care that meets the individual's mental

8 health needs.[55]

9     AHS is simply a service provider.[56]  AHS is an entity separate and apart from the County;

10 it is not "governed by, nor [] subject to, the charter of the county and shall not be subject to

11 policies or operational rules of the county, including, but not limited to, those relating to personnel

12 and procurement."[57]  The County, in seeking to fulfill its commitment to the medically indigent,

13 special needs, and general population of its residents entered into an agreement with AHS to

14 provide psychiatric hospital services to County residents.[58]  And, under its Master Contract, the

15 County retains the ability to terminate the activities of AHS and expire AHS as an entity.[59]

16 Accordingly, only the County can provide the relief that DRC seeks.  It is up to the County to fund

17 community-based services, or cut them.  Moreover, the County maintains a system to monitor

18 compliance with its designated standard of care, and makes compliance required in order for a

19 provider to receive funding for its services.

20     In contrast, AHS provides necessary, individualized treatment for emergency psychiatric

21 conditions on an incremental basis and discharges patients based upon a medical assessment of the

22 particular needs of the individual.  Because AHS does not institutionalize patients and cannot

23 provide community-based programs, nor can it dictate to these programs that they provide services

---

24

25 [54] *Id.* at 23, ¶ 107.
[55] *See* Cal. Code Regs., tit. 9, §§ 1810.205, 1810.226, 1810.305, 1810.405; Cal. Welf. & Inst.
26 Code § 14714.
[56] *See* Compl. at 15, ¶ 66.
27 [57] Cal. Health & Safety Code § 101850(j).
[58] Ex. A § 1.11.
28 [59] Cal. Health & Safety Code § 181850(ak); Ex. A § 6.5.

DEFT. ALAMEDA HEALTH SYSTEM'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S
COMPLAINT AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

16909751.7

1   in a culturally congruent and responsive manner, there is no presently available remedy to DRC

2   based on an action that the Court could require of AHS.  Therefore, the issues before this Court as

3   to Defendant AHS are not fit for adjudication.

4           **2.      DRC does not suffer direct hardship if its claims as to Defendant AHS are not
                       heard in federal court.**

5

6           DRC faces no hardship if its complaint against Defendant AHS is dismissed.  Hardship

7   focuses on the direct and immediate harm.[60]  As pled, DRC is not prevented from presenting their

8   claims in federal court, nor is it prevented from having its claims heard as to the County.  If

9   appropriate, the County has the authority, conferred upon it by legislation, to grant DRC's relief

10  sought if the Court were to find a violation of Title II of the ADA and Section 504 of the

11  Rehabilitation Act.  As alleged by DRC, given that the County has not yet created the additional

12  community-based programming that DRC seeks, John George professionals cannot take the action

13  that DRC asks this Court to require.

14  **B.    DRC Lacks Article III Associational Standing Because DRC Has Not Pled That Any
           DRC Constituent In His Or Her Own Right Can Claim A Risk Of Unjust
15         Institutionalization Resulting From Any Conduct By AHS**

16          DRC lacks associational standing to bring claims on behalf of its members.  To have

17  associational standing, DRC must establish:  (1) its members would otherwise have standing to

18  sue in their own right; (2) the interests it seeks to protect are germane to the organization's

19  purpose; and (3) neither the claim asserted nor the relief requested requires participation of

20  individual members in the lawsuit.[61]

21          DRC has not pled that any of its constituents, including exemplars, have standing to sue in

22  his or her own right.  Because DRC seeks injunctive-relief, it must also plead that any DRC

23  constituent risks a real threat of repeated injury that is more than conjecture.[62]

24          A person with a mental health disability claiming discrimination must have standing to sue

25  _____

[60]  *McInnis-Misenor* , 319 F.3d at 73.
26  [61]  *Hunt v. Washington State Apple Advert. Comm'n,* 432 U.S. 333, 343, 97 S. Ct. 2434, 2441,
    53 L. Ed. 2d 383 (1977); *Oregon Advocacy Ctr. v. Mink,* 322 F.3d 1101, 1110 (9th Cir. 2003)
27  (finding that "PAMII—although relevant to the standing analysis—does not definitively answer
    the question" whether an advocacy organization has standing).
28  [62]  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

                                                -15-                        Case No. 20-cv-05256 JCS

at each stage of the litigation.[63]  To invoke jurisdiction a DRC constituent must (1) have suffered an injury-in-fact, (2) the injury must be traceable to the challenged conduct, and (3) a favorable decision must redress the injury.[64]

As discussed above, taking the facts of the Complaint as true, any risk of unnecessary institutionalization cannot be placed upon AHS because it is not responsible for placing, providing, nor funding community-based programs, nor dictating that the programs provide a service in a culturally congruent manner.  AHS provides necessary, individualized treatment for emergency psychiatric treatment on an incremental basis and discharges patients based upon a medical assessment of the particular needs of the individual.  Because the County is responsible for detaining individuals, funding and administering a system of care that provides Alameda County residents with mental health disabilities access to community-based programs, the remedy that DRC seeks can only be obtained from the County.

As pled, DRC's prayer for relief leads to the result of forcing AHS to rely on the actions of another entity before it can be in compliance with the Act.  Here, it is up to the County to add additional community-based programming so that AHS will be able to refer patients to these services.  If required, for example, it would be up to the County to provide care for its homeless residents suffering from mental health disabilities.[65]  And, even if such programs are created, there is no way for AHS to control whether those programs will be the "most integrated setting" for individuals with disabilities.  The County, not AHS, is responsible for the quality of each program and to maintain a mechanism for monitoring the effectiveness of, and evaluating accessibility and quality of, services available.[66]  Thus, at this stage, until out-of-hospital remedies are available, as to AHS, DRC's complaint is a hypothetical that is not ripe for judicial review.  Therefore, DRC

---

[63] *See* U.S. Const. art. III, § 2.
[64] *Lujan*, 504 U.S. at 560-61.
[65] Compl. at 29, ¶ 125 ("Recent data show that there were approximately 300 permanent supported housing slots in Alameda County dedicated to people with serious mental health disabilities, even though the number of homeless adults with serious mental health disabilities in the County is estimated to exceed 2,500").
[66] *See* Cal. Welf. & Inst. Code § 14684.

Case No. 20-cv-05256 JCS

16909751.7

1    does not presently have standing to bring its claim against AHS. [67]

2    **C.    DRC's Fails To State A Claim of Disability Discrimination Upon Which Relief Can**
     **Be Granted**
3

4         A complaint is properly dismissed per Rule 12(b)(6) if DRC "fail[s] to state a claim upon

5    which relief can be granted."[68]

6         **1.    DRC has not alleged facts to make a regular disability accommodation claim**
               **under the ADA or Rehabilitation Act and limits itself to an *Olmstead***
7              ***integration* claim.**

8         Framed as an *Olmstead* case, DRC's complaint is that AHS statutorily mandated

9    emergency psychiatric care of patients with mental health disabilities is unlawful under the ADA

10   and Rehabilitation Act, and the federal laws' respective implementing regulations.  But DRC's

11   allegations are insufficient to satisfy the elements of an *Olmstead* integration mandate claim.

12        Section 504 of the Rehabilitation Act of 1973 makes it unlawful for any program or

13   activity that receives federal funding to discriminate against an individual solely because of his or

14   her disability.[69]  Similarly, Title II of the ADA forbids public entities from denying qualified

15   persons with a disability the opportunity to participate or benefit from the public entity's services,

16   programs, or activities, or subjecting such persons to discrimination by reason of his or her

17   disability.[70]  The Supreme Court determined in *Olmstead v. L.C. ex rel. Zimring*, that the

18   unjustified institutionalization of persons with disabilities is a form of discrimination under Title II

19   of the ADA.[71]

20        This is not a case of discrimination in public accommodations under the ADA or the

21   Rehabilitation Act.  DRC's complaint is devoid of facts supporting a claim that DRC or its

22

23   [67]  A finding that DRC's claims against AHS cannot be remedied by the equitable relief it seeks
     from the hospital, should also result in the dismissal of the state claim under Government Code
24   sections 11135 and 11139 under which the only remedy available is equitable relief.  *Prescott v.
     Rady Children's Hosp.-San Diego*, 265 F. Supp. 3d 1090, 1102 (S.D. Cal. 2017) (finding in the
25   context of the Affordable Care Act, Plaintiff's failure to establish standing due to a failure to
     establish future harm or how an injunction would remedy the alleged discrimination, Plaintiff
26   cannot support a claim based on alleged discrimination under Government Code section 11135.)
     [68]  Fed. R. Civ. P. 12(b)(6).
27   [69]  29 U.S.C. § 794(a).
     [70]  42 U.S.C. § 12131, *et seq.*
28   [71]  *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999).

16909751.7

1  constituents were denied participation in or benefit from government service, programs, or

2  activities because of his or her disability.  Instead, DRC's Complaint is limited to an *Olmstead*

3  claim of discrimination based on the alleged unjustified institutionalization of persons with

4  disabilities by a psychiatric hospital.  DRC "challenges Defendants' needless and illegal

5  segregation of adults with serious mental health disabilities into Alameda County's psychiatric

6  institutions" as a form of discrimination under *Olmstead*.[72]

7          **2.      Because courts interpret the ADA and Rehabilitation Act's integration
                  requirement in an identical manner, DRC's failure to state a claim under the
8                  ADA necessarily results in a failure to state a claim under the Rehabilitation
                  Act, and the derivative claim under state law also fails.**
9

10         When viewed together, the ADA and the Rehabilitation Act impose identical integration

11 obligations upon public entities.  Moreover, both mandates are similarly qualified.  A public entity

12 that is otherwise required to make a reasonable modification to avoid discrimination can avoid

13 making such modifications when doing so would "fundamentally alter the nature of the service,

14 program or activity." [73]

15         As a result, courts interpret the integration mandate under the ADA and Rehabilitation Act

16 in an identical manner.[74]  Accordingly, should this Court find that DRC has failed to state a claim

17 of discrimination under the ADA, it must find that the same is true under Section 504 of the

18 Rehabilitation Act.

19         Similarly, DRC's claim of discrimination under California law derives from the

20 proscription against discrimination of persons with disabilities under the ADA.[75]  Therefore, a

21 finding that dismissal of the Complaint is warranted because DRC has failed to state a claim for

22

23 [72]  Compl. at 1-4, ¶¶ 1-13; *see also*, Compl. at 12-15, ¶¶ 54-63.

24 [73]  28 C.F.R. § 35.130(b)(7)(i) (ADA) (requiring reasonable modifications unless fundamental
    alteration to the public entity's services, program, or activity results); 28 C.F.R. § 41.53
25 (Rehabilitation Act) (requiring reasonable accommodations, except if undue hardship on the
    operation of the public entity's program results).
   [74]  *Townsend v. Quasim*, 328 F.3d 511, 518 (9th Cir. 2003); *Black v. Dep't of Mental Health*, 83
26 Cal. App. 4th 739, 749, 100 Cal. Rptr. 2d 39, 45 (2000).
   [75]  Cal. Gov. Code § 11135; *Bassilios v. City of Torrance*, 166 F.Supp.3d 1061, 1084 (C.D. Cal.
27 2015) (finding Government Code section 11135 claim identical to a claim of discrimination under
    Section 504 of the Rehabilitation Act and coextensive with Title II of the ADA such that liability
28 based on either the Rehabilitation Act or the ADA, results in liability under Section 11135).

16909751.7

1  relief under federal law, must necessarily result in dismissal of DRC's state law claim.

2        **3.**     **DRC fails to state that AHS's statutorily mandated patient care is not in accordance with the prescriptions of the ADA and Rehabilitation Act.**

3

4        DRC takes issue with AHS's allegedly deficient consultation and coordination with

5  community providers, ACBHCS case managers, physicians, and others in connecting patients to

6  the community-based programming they need – which it claims does not sufficiently yet exist.[76]

7  This, allegedly, results in unjustified institutionalization of persons with mental health

8  disabilities – a form of unlawful discrimination under both the ADA and the Rehabilitation Act.[77]

9  As articulated below, how can AHS violate a statutorily mandated care of patients and patient

10 discharge practices when DRC also alleges that the County does not provide programs for AHS to

11 discharge patients?

12       DRC's theory is that AHS violated the integration mandate under the ADA and

13 Rehabilitation Act.  The ADA's implementing regulations requires that a public entity provide

14 services to qualified individuals in the most integrated setting appropriate to the patient's needs.[78]

15 In *Olmstead,* the Court held that a violation of the integration mandate occurs when (1) treatment

16 professionals have determined that community placement is appropriate, (2) the transfer from

17 institutional care to a less restrictive setting is not opposed by the affected individual, and (3) the

18 placement can be reasonably accommodated, taking into account the resources available to the

19 State and the needs of others with mental disabilities.[79]

20       DRC fails to state with sufficient particularity that Defendant AHS's conduct violates the

21 integration mandate because community-based treatment placement is an obligation of the

22 County – not AHS.  Moreover, DRC does not plead a plausible claim that AHS's administration

23 of the hospital had a discriminatory effect because there is no alleged unlawful conduct by AHS

24 that results in AHS placing DRC constituents at risk of institutionalization.

25       By DRC's own pleading, AHS does not place patients into community-based

26

---

27 [76] Compl. at 32, ¶¶ 134-136.
   [77] *Id*. at 17, ¶ 71; *id*. at 31, ¶¶ 131-136.
   [78] 28 C.F.R. § 35.310(d).

28 [79] *Olmstead*, 527 U.S. 581 at 607.

Case No. 20-cv-05256 JCS

16909751.7

1  programming.  Yet DRC conflates its allegations as to Defendant AHS with the County and

2  ACBHCS in an effort to manufacture a cause of action.  DRC has alleged no facts, even as to its

3  four exemplars, that AHS is responsible for the risk of unjustified institutionalization of its

4  constituents.

5          First, with regard to Ms. Ahmad, DRC states, "Defendants did not take steps to provide

6  Ms. Ahmad with community-based crisis services, even though Ms. Ahmad would have strongly

7  preferred such care."[80]  But, again, AHS does not place, provide, nor fund community-based

8  programs.

9          Second, DRC alleges that Defendants failed to connect Mr. Walter with the community-

10  based mental health services he needed.[81]  Two paragraphs later, DRC states that the County

11  recently assisted him in re-connecting him with a community-based program and in securing

12  housing.[82]  Once, again, connecting Mr. Walter to the community-based programming he needed

13  is a job for the County.

14          Third, DRC alleges that KG's mental health symptoms have been made worse by, among

15  other reasons, "poor discharge planning from psychiatric institutions such as John George."[83]

16  DRC claims that KG is homeless and lacks community services and "without access to the needed

17  intensive community services, KG is at serious risk of further unnecessary institutionalization."[84]

18  Thus, as alleged, it is the County's inability to connect KG to community-based programming

19  results in the alleged risk of unjustified institutionalization to KG, not conduct by AHS.

20          Fourth, MR was allegedly released from John George without a discharge plan.[85]

21  However, DRC claims MR's lack of medical insurance and inability to access community-based

22  mental health care services resulted in her subsequent treatment at John George.[86]  Because the

23  hospital does not provide medical insurance, nor does it have the responsibility or means to

24  _____

25  [80] Compl. at 8, ¶ 33.
   [81] Id. at 9, ¶ 37.
26  [82] Id.
   [83] Id. at 10, ¶ 42
27  [84] Id.
   [85] Id. at 10, ¶ 46
28  [86] Id.

DEFT. ALAMEDA HEALTH SYSTEM'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S
COMPLAINT AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

16909751.7

1    provide community-based services, once again, DRC identifies a job for the County.

2            Moreover, the ADA's prohibition against discrimination does not require that public

3    agencies provide persons with disabilities with the opportunity to remain out of institutions.[87]

4    Indeed, the statute is not intended to prevent institutionalization.  For some who are unable to

5    handle or benefit from community setting, a hospital may be the best care option.[88]  For others,

6    even though a hospital setting may be the best option, they lack access.  "Any person who has

7    been homeless due to profound mental illness of years and will not accept shelter when offered is,

8    by any commonsense definition, gravely disabled.  Yet the protection intended by the [gravely

9    disabled] standard is clearly not working.  If it were, we wouldn't have thousands of homeless

10   people living on the streets."[89]  To fully satisfy the mental health needs of County residents

11   legislative action is required, not court intervention which risks second guessing the medical

12   assessments of hospital medical professionals.[90]

13           As pled, DRC cannot make an *Olmstead* claim against AHS and its claim must be

14   dismissed.

15   **D.      DRC's Allegations Of Racial Disparities In Treatment, And COVID-19 Risk Of
             Infection Are Immaterial And Impertinent, And Must Be Stricken**
16

17           Rule 12(f) of the Federal Rules of Civil Procedure provides that the "court may strike from

18   a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

19   matter."[91]  A Rule 12(f) motion serves to avoid spending time and money on "litigating spurious

20   issues by dispensing with those issues before trial."[92]

21           DRC raises several allegation concerning the disproportionate number of Black patients

22

23   _____

[87]  *Rodriguez v. City of New York*, 197 F.3d 611 (2d Cir. 1999) (finding that the Supreme Court's
24   decision in *Olmstead* only requires adherence to the ADA's nondiscrimination requirement as to
     the services a public entity actually provides).

[88]  *See, Olmstead*, 527 U.S. at 601-602.
25   [89]  Jonathan Sherin and Darrell Steinberg, *Op-Ed:  Mentally ill people in desperate need of
     treatment often don't get it because of an antiquated law*, Los Angeles Times, (Aug. 20, 2020),
26   https://www.latimes.com/opinion/story/2020-08-20/op-ed-mentally-ill-people-often-dont-get-
     treatment-because-of-antiquated-law.

27   [90]  *See id.*
     [91]  Fed R. Civ. P. 12(f).
28   [92]  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

16909751.7

1  treated at the hospital and increased risk of COVID-19 infection at the hospital.  However, these

2  are immaterial to the Court's determination of liability on a discrimination action based in unjust

3  institutionalization.  DRC's inclusion of such facts serve to detract from the issues before the

4  Court, and inflame and capitalize on the current political and social climate.  Accordingly, this

5  Court should strike such allegations as immaterial and impertinent.

6                                    **VII.    CONCLUSION**

7         DRC asks the Court to declare that AHS is in violation of public accommodation laws

8  under *Olmstead* for failing to coordinate the release of patients to community-based programming

9  that does not exist.  Next, DRC asks the Court to order AHS to coordinate with the County on the

10  programming that the County controls and does not exist.  While it may ask that the County

11  increase its programming, DRC cannot ask this Court to find that AHS is failing to release patients

12  to programs that do not exist.  Requiring AHS to coordinate or refer patients to services not yet

13  available is premature.  Moreover, this Court should not be placed in the position of second

14  guessing the medical assessments of medical professionals that would in essence cede hospital

15  operations to DRC and the Court.

16         For these reasons, Defendant AHS asks this Court to grant this motion to dismiss DRC's

17  complaint against AHS in its entirety.

18  DATED:  October 13, 2020                          HANSON BRIDGETT LLP

19

20                                                     By:     */s/ Gymmel M. Trembly*
21                                                           KURT A.  FRANKLIN
22                                                           GYMMEL M.  TREMBLY
                                                            Attorneys for Defendant
23                                                           ALAMEDA HEALTH SYSTEM

24

25

26

27

28

16909751.7