1  Kimberly Swain (SBN 100340)
   Kim.Swain@disabilityrightsca.org
2  Aaron Fischer (SBN 247391)
   Aaron.Fischer@disabilityrightsca.org
3  Jennifer Stark (SBN 267062)
   Jennifer.Stark@disabilityrightsca.org
4  Samuel Jain (SBN 295739)
   Samuel.Jain@disabilityrightsca.org
5  Sarah Gregory (SBN 303973)
   Sarah.Gregory@disabilityrightsca.org
6  DISABILITY RIGHTS CALIFORNIA
   1330 Broadway, Suite 500
7  Oakland, CA 94612
   Tel:   (510) 267-1200
8  Fax:   (510) 267-1201

9  Linda M. Dardarian (SBN 131001)
   ldardarian@gbdhlegal.com
10 Andrew P. Lee (SBN 245903)
   alee@gbdhlegal.com
11 Raymond A. Wendell (SBN 298333)
   rwendell@gbdhlegal.com
12 GOLDSTEIN, BORGEN, DARDARIAN & HO
   155 Grand Avenue, Suite 900
13 Oakland, CA 94612
   Tel:   (510) 763-9800
14 Fax:   (510) 835-1417

15 Attorneys for Plaintiff
   *(Additional Counsel for Plaintiff listed on following page)*

16

17                    **UNITED STATES DISTRICT COURT**

18                    **NORTHERN DISTRICT OF CALIFORNIA**

19

20 DISABILITY RIGHTS CALIFORNIA, a          Case No. 5:20-cv-05256-CRB
   California nonprofit corporation,
21                                          **PLAINTIFF'S OPPOSITION TO**
         Plaintiff,                         **DEFENDANT ALAMEDA HEALTH**
                                            **SYSTEM'S MOTION TO DISMISS**
22 vs.                                      **PLAINTIFF'S COMPLAINT AND MOTION**
                                            **TO STRIKE**
23 COUNTY OF ALAMEDA; ALAMEDA COUNTY
   BEHAVIORAL HEALTH CARE SERVICES; and     Date:     December 10, 2020
24 ALAMEDA HEALTH SYSTEM,                   Time:     10:00 a.m.
                                            Ctrm:     6 – 17th Floor
25       Defendants.                        Before:   Hon. Charles R. Breyer

26                                          Trial Date:   None Set

27

28

791653.14

1   Ira A. Burnim (SBN 406154) (*pro hac vice*)
    irabster@gmail.com
2   Jennifer Mathis (SBN 444510) (*pro hac vice*)
    jenniferm@bazelon.org
3   Lewis Bossing (SBN 227492)
    lewisb@bazelon.org
4   BAZELON CENTER FOR MENTAL HEALTH LAW
    1101 15th Street NW, Suite 1212
5   Washington, DC 20005
    Tel:    (202) 467-5730
6   Fax:    (202) 223-0409

7   Claudia Center (SBN 158255)
    ccenter@dredf.org
8   Sydney Pickern (SBN 303908)
    spickern@dredf.org
9   DISABILITY RIGHTS EDUCATION AND DEFENSE FUND
    3075 Adeline Street Suite 210
10  Berkeley, CA 94703
    Tel:    (510) 644-2555
11  Fax:    (510) 841-8645

12  Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.  INTRODUCTION & STATEMENT OF ISSUES .................................................................. 1

II.  RELEVANT BACKGROUND .............................................................................................. 3

III.  ARGUMENT ........................................................................................................................ 6

   A.  Plaintiff Has Associational Standing to Sue on Behalf of the Significant Number of DRC Constituents Who Have Been Injured by AHS's Unlawful Actions. .............. 6

      1.  Defendant AHS's Practices Cause DRC Constituents to Suffer Ongoing Injuries. ..................................................................................................................... 7

      2.  The Injuries that AHS Causes Are Redressable by a Favorable Decision. ........ 9

   B.  DRC's Complaint States Ripe. Justiciable Claims Against AHS, and Is Not Subject to Dismissal Under Rule 12(b)(1) or (b)(6). .................................................... 10

      1.  Plaintiff's Complaint States Claims Against Defendant AHS that Are Fit for Adjudication. ..................................................................................................... 11

         a.  Plaintiff's Complaint Alleges Ample Facts That Defendant AHS Is Currently Violating the Rights of DRC Constituents. ...................... 11

         b.  Plaintiff's Complaint States Legal Claims Against Defendant AHS Under Federal and State Laws, Including That Defendant AHS's Unlawful Policies and Practices Are Currently Causing the Risk of Unnecessary Institutionalization. ........................................ 15

      2.  DRC Constituents Would Experience Hardship Were AHS Dismissed. ......... 17

   C.  The Court Should Deny AHS's Motion to Strike Because Allegations Related to Racial Disparities and Pandemic-Related Harms Bear Directly on Issues in the Litigation. ............................................................................................................................ 18

   D.  Defendant AHS's Documents Are Not Properly Considered on a Motion to Dismiss; Even If Considered, They Provide No Basis for Dismissing Plaintiff's Claims or for Striking Any Allegations. ............................................................................ 19

IV.  CONCLUSION ................................................................................................................... 20

791653.14

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Abbott Labs. v. Gardner*,
5
    387 U.S. 136 (1967) ...................................................................................................... 11, 17

6

*Alexander v. Choate*,
    469 U.S. 287 (1985) ............................................................................................................ 15

7

*Babu et al. v. County of Alameda et al.*,
8
    No. 5:18-cv-07677-NC (N.D. Cal.) ..................................................................................... 3

9

*Bragdon v. Abbott*,
    524 U.S. 624 (1998) ............................................................................................................ 16

10

11

*Brown v. District of Columbia*,
    928 F.3d 1070 (D.C. Cir. 2019) ......................................................................................... 16

12

*BrowserCam Inc. v. Gomez, Inc.*,
13
    No. 3:08-cv-02959-WHA, 2008 U.S. Dist. LEXIS 82159 (N.D. Cal. Sept. 26, 2008) .......... 14

14

*Civil Rights Educ. & Enf't Ctr. v. Hospitality Prop. Trust*,
    867 F.3d 1093 (9th Cir. 2017) .............................................................................................. 9
15

16

*Comm. for Immigrant Rights of Sonoma Cty. v. County of Sonoma*,
    644 F. Supp. 2d 1177 (N.D. Cal. 2009) ................................................................................ 7

17

*Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Connecticut*,
18
    706 F. Supp. 2d 266 (D. Conn. 2010) .................................................................................. 6

19

*CONRAIL v. Darrone*,
    465 U.S. 624 (1984) ............................................................................................................ 15
20

21

*Doran v. 7-Eleven, Inc.*,
    524 F.3d 1034 (9th Cir. 2008) .............................................................................................. 7

22

*Dunn v. Dunn*,
23
    219 F. Supp. 3d 1163 (M.D. Al. 2016) ................................................................................. 6

24

*Ernst & Young v. Depositors Econ. Prot. Corp.*,
    45 F.3d 530 (1st Cir. 1995) .......................................................................................... 11, 14
25

26

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ....................................................................................................... 7, 10

27

28

*Fusion IV Pharms., Inc. v. Herold*,
   No. 2:19-cv-01127-PA-FFM, 2019 U.S. Dist. LEXIS 106283 (C.D. Cal. June 21,
   2019) ......................................................................................................................... 20

*Harrison v. Milligan*,
   No. 3:09-cv-04665-SI, 2012 U.S. Dist. LEXIS 70592 (N.D. Cal. May 21, 2012) ................ 19

*Hsu v. Puma Biotech., Inc.*,
   213 F. Supp. 3d 1275 (C.D. Cal. 2016) ................................................................................ 20

*Hunt v. Wash. State Apple Adver. Comm'n*,
   432 U.S. 333 (1977) ................................................................................................................ 7

*Joseph S. v. Hogan*,
   561 F. Supp. 2d 280 (E.D.N.Y. 2008) .................................................................................... 6

*Kenneth R. v. Hassan*,
   293 F.R.D. 254 (D.N.H. 2013) ............................................................................................. 16

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................................................ 20

*Kirola v. City & County of San Francisco*,
   860 F.3d 1164 (9th Cir. 2017) .............................................................................................. 10

*L.C., by Zimring v. Olmstead*,
   No. 95-CV-1210-MHS, 1997 U.S. Dist. LEXIS (N.D. Ga. Mar. 26, 1997) .................... *passim*

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ................................................................................................ 20

*M.R. v. Dreyfus*,
   697 F.3d 706 (9th Cir. 2012) ................................................................................................ 15

*McInnis-Misenor v. Me. Med. Ctr.*,
   319 F.3d 63 (1st Cir. 2003) .................................................................................................. 14

*McRee v. Goldman*,
   No. 3:11-cv-00991-EDL, 2012 U.S. Dist. LEXIS 36793 (N.D. Cal. Mar. 19, 2012) ............ 18

*Nat'l Fed'n of the Blind of Cal. v. Uber Techs., Inc.*,
   103 F. Supp. 3d 1073 (N.D. Cal. 2015) .................................................................................. 7

*Olmstead v. L. C. by Zimring*,
   527 U.S. 581 (1999) .......................................................................................................... 1, 15

*Or. Advocacy Ctr. v. Mink*,
   322 F.3d 1101 (9th Cir. 2003) ............................................................................................ 6, 7

791653.14

*Ortuño v. Jennings*,
  No. 3:20-cv-02064-MMC, 2020 U.S. Dist. LEXIS 62030 (N.D. Cal. Apr. 8, 2020) ............ 19

*Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare*,
  402 F.3d 374 (3d Cir. 2005) ................................................................................... 16

*Pickern v. Holiday Quality Foods Inc.*,
  293 F.3d 1133 (9th Cir. 2002) ................................................................................. 7

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
  352 F. Supp. 2d 1048 (N.D. Cal. 2004) ................................................................. 18

*Sch. Bd. of Nassau Cty. v. Arline*,
  480 U.S. 273 (1987) .............................................................................................. 15

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ................................................................................... 11, 14

*Texas v. United States*,
  523 U.S. 296 (1998) .............................................................................................. 11

*Trueblood v. Wash. Dep't of Soc. & Health Serv.*,
  101 F. Supp. 3d 1010 (W.D. Wash. 2015) .............................................................. 6

*United Food and Commercial Workers Union v. Brown Group, Inc.*,
  517 U.S. 544 (1996) ........................................................................................ 7, 16

*United States v. County of Los Angeles*,
  No. 2:15-cv-05903-DDP-JEM, 2016 U.S. Dist. LEXIS 65049 (C.D. Cal. May 17,
  2016) ..................................................................................................................... 9

*US W. Comm'cs, Inc. v. MFS Intelenet, Inc.*,
  193 F.3d 1112 (9th Cir. 1999) ............................................................................... 17

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) ................................................................................. 18

**Federal Statutes**

42 U.S.C.
  § 10801(b)(1) .......................................................................................................... 3
  § 10801(b)(2)(A) ..................................................................................................... 3
  § 10805(a)(1)(B) .................................................................................................. 3, 6
  § 12201(a) ............................................................................................................. 16

Americans with Disabilities Act of 1990 Title II, 42 U.S.C. § 12131 *et seq.*
  § 504 of the Rehabilitation Act of 1973 .................................................................. 7

Protection and Advocacy for Individuals with Mental Illness Act
  42 U.S.C. § 10801 *et seq.* ..................................................................................... 3

791653.14

**State Statutes**

Cal. Code Regs. tit 2, § 11154(i) ........................................................................... 11, 15

Cal. Health & Safety Code
    § 101850 ................................................................................................................. 20
    § 101850(a) ......................................................................................................... 4, 17
    § 101850(b) ................................................................................................................ 4
    § 101850(c) ................................................................................................................ 4
    § 101850(j) ................................................................................................................. 4
    § 101850(kk) .............................................................................................................. 4

Cal. Welf. & Inst. Code
    § 4900 *et seq.* .......................................................................................................... 3
    § 4902 ........................................................................................................................ 3

California Government Code
    § 11135 .............................................................................................................. 1, 17

**Rules**

Fed. R. Civ. P.
    12(b)(1) .................................................................................................................. 10
    12(f) ........................................................................................................................ 18

Fed. R. Evid.
    201 ......................................................................................................................... 19

**Regulations**

28 C.F.R.
    § 35.130(b)(3) ................................................................................................... 11, 15
    § 35.130(d) ........................................................................................................ 10, 15
    § 41.51(b)(3) ..................................................................................................... 11, 15
    § 41.51(d) .......................................................................................................... 10, 15

45 C.F.R.
    § 84 ......................................................................................................................... 15

**Other Authorities**

Editorial Board, *Psychiatric hospitals, like jails, require releases in the COVID era*,
    L.A. Times, Aug. 13, 2020 ....................................................................................... 6

New Hampshire Department of Health and Human Services:
    https://www.dhhs.nh.gov/about/organization.htm ................................................... 16

791653.14

U.S. Dep't of Health and Human Services, Substance Abuse and Mental Health
 Services Administration (SAMHSA), Considerations for the Care and Treatment of
 Mental and Substance Use Disorders in the COVID-19 (revised May 7, 2020),
 *available at* https://www.samhsa.gov/sites/default/files/considerations-care-
 treatment-mental-substance-use-disorders-covid19.pdf ........................................................... 6

791653.14

## I.    INTRODUCTION & STATEMENT OF ISSUES

The Complaint filed by Plaintiff Disability Rights California ("Plaintiff") contains detailed allegations that Defendants County of Alameda and Alameda County Behavioral Health Care Services ("ACBHCS") (collectively, "County Defendants") as well as Defendant Alameda Health System ("AHS") violate the rights of DRC Constituents under federal and state disability law through their distinct and overlapping failures to comply with the integration mandate as set forth in *Olmstead v. L. C. by Zimring*, 527 U.S. 581 (1999).  Plaintiff alleges that "Defendants Alameda County, ACBHCS, and AHS are the primary and interconnected sources of mental health services for DRC Constituents[.]"  Complaint for Declaratory and Injunctive Relief ("Compl.") ¶ 110.  "AHS serves as a critical component in Alameda County's mental health system, including with respect to patient intake, assessment, referral, admission, and discharge."  *Id.* at ¶ 132.  Together, Defendants AHS and Alameda County are responsible for DRC Constituents' unnecessary institutionalization and/or serious risk of institutionalization, and for the unlawful failure to ensure that DRC Constituents receive mental health services in the most integrated setting appropriate.  *Id.* ¶ at 110.

In its Motion to Dismiss and Motion to Strike Plaintiff's Complaint ("Mot."), Defendant AHS seeks to improperly shirk its legal duties by ignoring these allegations and instead insisting that it has no role in causing the harm that Plaintiff seeks to remedy through this action.  Downplaying its role in the County's mental health system and its impacts on DRC Constituents, Defendant AHS frames the issues raised by its Motion as follows: (1) Does this Court lack subject matter jurisdiction to hear DRC's claims against a hospital when DRC's concern is based on County-provided community-based programming that does not yet exist? (2) Can an *Olmstead*-based discrimination claim under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and California Government Code Section 11135 ("Section 11135"), be raised against a hospital that provides emergency psychiatric care and has no means to provide community-based programming?  Mot. at 5.  As discussed below, when viewed through the lens of the actual allegations of the Complaint, it is clear that the Court has subject matter jurisdiction over Plaintiff's claims against Defendant AHS.  Moreover, Plaintiffs' claims against Defendant AHS are supported by applicable disability law and Supreme Court precedent.

1

First, Plaintiff meets Article III standing requirements to sue on behalf of Alameda County residents who have serious mental health disabilities and who are unnecessarily segregated, or are at serious risk of being segregated, in Alameda County's psychiatric institutions (referred to herein and in Plaintiff's Complaint as "DRC Constituents").  Plaintiff has pled detailed facts demonstrating that individual DRC Constituents have suffered particular harms resulting from AHS's failure to meet its *Olmstead*-related obligations, including its failure to provide DRC Constituents with effective coordination of mental health care, discharge planning, and linkages to existing community-based services.  AHS's omissions significantly contribute to the unnecessary institutionalization and re-institutionalization of DRC Constituents.  These injuries are redressable by the injunctive relief Plaintiff seeks from Defendants, including AHS, through this action.

Second, Plaintiff's Complaint presents a live case and controversy as to AHS that is ripe for adjudication.  AHS incorrectly contends that Plaintiff's claims are "premature" because it cannot be held liable for failing to connect DRC Constituents to community-based mental health services that do not exist.  Defendant AHS misconstrues Plaintiff's claims.  Plaintiff alleges that AHS violates the rights of DRC Constituents by *presently* failing to ensure linkages and access to community-based services that *currently* exist.  Accordingly, this Court has subject matter jurisdiction over Plaintiff's claims against AHS.  Moreover, Plaintiff has alleged claims upon which relief can be granted.  The ADA, Section 504, and Section 11135 prohibit the unnecessary institutionalization of individuals with disabilities as a form of unlawful discrimination.  AHS plays an important role in ensuring that DRC Constituents receive mental health services in the most integrated setting appropriate.  Indeed, public hospitals and public agencies with jurisdiction over public hospitals are regularly named as defendants in *Olmstead* litigation (including in the *Olmstead* case itself).  Accordingly, Defendant AHS' Motion should be denied in its entirety.

Defendant AHS's Motion to Strike should also be denied.  Plaintiff's allegations regarding racial disparities and the risks posed by COVID-19 illustrate the harm caused by Defendants' *Olmstead* violations and bear directly on Plaintiff's requested remedies.  Accordingly, these allegations are appropriately included in Plaintiff's Complaint, and AHS provides no legal basis for any allegation to be stricken.

2

791653.14

Defendant AHS's Motion is further deficient insofar as it relies on extraneous documents in a manner improper for a Motion to Dismiss.  Even if those documents are considered, they provide no basis for dismissal of Plaintiff's claims or for striking any allegations.

## II.   RELEVANT BACKGROUND

Plaintiff filed this action on July 30, 2020[1] on behalf of Alameda County residents who are unnecessarily segregated or at serious risk of being needlessly segregated in the County's psychiatric institutions, including at John George Psychiatric Pavilion ("John George"), which is operated by AHS.  As alleged in the Complaint, Plaintiff serves as California's Protection and Advocacy ("P&A") system for individuals with disabilities pursuant to federal law, including the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), 42 U.S.C. § 10801 *et seq*.  Compl. ¶ 19; *see also* Cal. Welf. & Inst. Code § 4900 *et seq*.  Pursuant to PAIMI and California state law, Plaintiff is empowered and charged with investigating the abuse and neglect of people with mental health disabilities and "ensur[ing] the enforcement of the Constitution and Federal and State statutes" on behalf of people with mental health disabilities, including by "pursu[ing] administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State."  Compl. ¶ 20; 42 U.S.C. §§ 10801(b)(1), 10801(b)(2)(A) & 10805(a)(1)(B); Cal. Welf. & Inst. Code § 4902.  DRC Constituents have representation and influence in DRC's operations, including representation on DRC's board and its PAIMI advisory council.  Compl. ¶ 21.

In 2018, Plaintiff opened an investigation into Defendants' policies and practices regarding the unnecessary segregation of DRC Constituents in Defendants' psychiatric institutions.  *Id.* ¶ 3.

---

[1] On August 14, 2020, Plaintiff filed an administrative motion to consider whether the present matter should be related to *Babu et al. v. County of Alameda et al.*, No. 5:18-cv-07677-NC (N.D. Cal), a certified class action in which the plaintiffs allege, *inter alia*, that Alameda County discriminates against incarcerated individuals in the County's jails who have mental health disabilities, in violation of the ADA, Section 504, and Section 11135.  In *Babu*, the court certified two classes, including a "Disability Subclass," which consists of all qualified individuals with mental health disabilities who are currently, or will be in the future, incarcerated in Alameda County's jail facilities.  Order Granting Joint Mot. for Class Certification, *Babu*, No. 5:18-cv-07677-NC (N.D. Cal. Jan. 21, 2020), ECF No. 64.  *Babu* is limited to Alameda County's jail facilities.  Contrary to AHS's contention, *Babu* will not resolve Alameda County's obligation to provide mental health programs to DRC Constituents.  Mot. at 6.  The *Babu* court denied Plaintiff's administrative motion.

791653.14

1    Plaintiff's investigation found that large numbers of people with mental health disabilities in Alameda

2    County cycle in and out of psychiatric institutions, and are detained in such institutions, when they

3    could safely and appropriately be served by community-based services.  On November 1, 2019,

4    Plaintiff issued findings of probable cause that Defendants' policies and practices result in the abuse

5    and/or neglect of people with mental health disabilities—in particular, that Defendants fail to provide

6    DRC Constituents with needed services in the most integrated setting appropriate, as required by

7    federal law and the Supreme Court's *Olmstead* decision.  *Id.* ¶ 70 & Appx. A.

8         As alleged in the Complaint, Defendant AHS has specific responsibilities with respect to the

9    operation of the County's public mental health system.  *Id.* ¶¶ 52-53, 132-33.  These obligations are set

10   forth in detail in Defendant AHS's Master Contract with the County[2] and include, among others,

11   facilitating less restrictive, community-based treatment; coordinating patient care with community care

12   providers; and discharge planning upon release from John George that is designed to reduce "inpatient

13   recidivism or multiple [] admissions" to John George's Psychiatric Emergency Services ("PES") unit.

14   *See id.* ¶¶ 132-33; Pl.'s Request for Judicial Notice, Ex. A.  (specific provisions of the Master Contract,

15   describing AHS's duties relevant to this action, are set forth in Section III.B.1, *infra*.).  Defendant AHS

16   owns and operates John George as an "independent hospital authority."  Compl. ¶ 52; Cal. Health &

17   Safety Code § 101850(a), (b) & (j).  The Alameda County Board of Supervisors established AHS

18   pursuant to state law, appoints AHS's Board of Trustees, and has the authority to dissolve AHS as a

19   legal entity.  Cal. Health & Safety Code § 101850(b), (c), (kk).

20        Defendants institutionalize nearly 1,000 people at John George's PES unit every month,

21   including DRC Constituents, where they remain until they are released or placed in John George's

22   inpatient units or another facility.  Compl. ¶ 77.  Numerous DRC Constituents are detained in the PES

23   unit unnecessarily.  According to the County's own estimates, more than 75% of those detained in PES

24   do not meet medical necessity criteria for inpatient psychiatric services.  *Id.* ¶ 79.

---

[2] The Master Contracts attached as Exhibits A and B to Defendant AHS's Request for Judicial Notice have expired and are superseded in relevant respects.  A 2013 amendment to the Master Contract, which is incorporated into the current version, is referenced by Plaintiff in its Complaint (¶ 133) and attached as Exhibit A to Plaintiff's Request for Judicial Notice filed herewith.

791653.14

1      Similarly, Defendant AHS holds DRC Constituents in John George's inpatient units

2  unnecessarily.  In recent years, the average daily census and average length of stay in the inpatient

3  units have risen, with an estimated 5,000 patient visits in 2019, and an average length of stay of

4  approximately nine days.  *Id.*  ¶ 83.  Extended stays—which are considered "administrative" because

5  they are not medically necessary—last several days or more, harm DRC Constituents, and cost

6  millions of dollars in public monies.  *Id.* ¶ 85.  John George's inpatient units are institutional settings

7  where DRC Constituents are confined in locked wards, monitored continuously, afforded little privacy

8  or autonomy over their daily lives, and required to abide by rigid rules.  *Id.* ¶ 84.

9      DRC Constituents, and particularly Black DRC Constituents, are repeatedly admitted to John

10  George's PES and inpatient units.  According to the County's data, from January 2018 to June 2020,

11  AHS held more than 350 DRC Constituents in the PES over ten (10) times.  *Id.* ¶ 90.  Among this

12  group, 55% were Black, even though Black people make up only 11% of the County's population.  *Id.*

13  During that same time period, AHS institutionalized approximately eighty-four (84) people at least

14  twenty-five (25) times; close to 60% of this group were Black.  *Id.*  Six people cycled in and out of the

15  PES more than eighty-five (85) times in this two-and-half year period; five of them were Black.  *Id.*

16  The County's data further shows that at least 365 DRC Constituents have each been institutionalized in

17  John George's inpatient units four (4) or more times during this same time period.  *Id.* ¶ 91.

18  Approximately 44% of this group are Black.  *Id.*

19      Plaintiff's Complaint describes the experiences of DRC Constituents Rian Walter, Azizah

20  Ahmad, KG, and MR who were institutionalized at John George and subsequently released without

21  effective care coordination, discharge planning, follow-up appointments, or connections to existing

22  community-based services.  *Id.* ¶¶ 29-49.  AHS's failure to provide these needed linkages has denied

23  these DRC Constituents access to community-based services and caused them to cycle in and out of

24  County psychiatric institutions, thereby significantly contributing to unnecessary institutionalization

25  and the serious risk of institutionalization.  *Id.*

26      DRC Constituents face a substantial risk of COVID-19 infection each day that they are held at

27  John George, which is a congregate setting that is at high risk for a COVID-19 outbreak.  The

28

791653.14

community-based services that protect DRC Constituents from unnecessary institutionalization therefore also limit their exposure to COVID-19.[3]

## III.   ARGUMENT

**A.   Plaintiff Has Associational Standing to Sue on Behalf of the Significant Number of DRC Constituents Who Have Been Injured by AHS's Unlawful Actions.**

As California's P&A system, Plaintiff is "empowered and charged by federal law to protect the rights of California residents with mental health disabilities."  Compl. ¶ 3; *see also id.* ¶¶ 19-22; 42 U.S.C. § 10805(a)(1)(B).  DRC brings this suit to enforce the rights of DRC Constituents, including the four specific Constituents discussed in detail in the Complaint, all of whom have been harmed by Defendant AHS's unlawful practices.  Compl. ¶ 23.  Contrary to Defendant AHS's assertion, this case is *exactly* the type in which associational standing is appropriate.  As the Ninth Circuit has recognized, associational standing of a P&A system is appropriate in cases such as this one because "Congress authorized [P&A] organizations ... to sue on behalf of those suffering from mental illness."  *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1113 (9th Cir. 2003) (upholding P&A's standing to sue pursuant to its authority under federal law).[4]

Beyond Plaintiff's distinctive appropriateness as the P&A system to bring this sort of case, it also satisfies the generally applicable Article III standing requirements: (1) at least one of its members

---

[3] *See* U.S. Dep't of Health and Human Services, Substance Abuse and Mental Health Services Administration (SAMHSA), Considerations for the Care and Treatment of Mental and Substance Use Disorders in the COVID-19 (revised May 7, 2020), *available at* https://www.samhsa.gov/sites/default/files/considerations-care-treatment-mental-substance-use-disorders-covid19.pdf ("Because of the substantial risk of coronavirus spread with congregation of individuals in a limited space such as in an inpatient or residential facility, SAMHSA is advising that outpatient treatment options, when clinically appropriate, be used to the greatest extent possible."); Editorial Board, *Psychiatric hospitals, like jails, require releases in the COVID era*, L.A. Times, Aug. 13, 2020 ("It's even more urgent now, in the era of COVID-19, to reduce the institutional population in the name of better, safer care ...."); Pls.' Request for Judicial Notice, Ex. B.

[4] Other courts across the country have upheld associational standing in suits brought by P&As.  *See, e.g.*, *Trueblood v. Wash. Dep't of Soc. & Health Serv.*, 101 F. Supp. 3d 1010, 1020 (W.D. Wash. 2015) (P&A has standing to represent individuals requiring competency services), *vacated and remanded on other grounds*, 822 F.3d 1037 (9th Cir. 2016); *Dunn v. Dunn*, 219 F. Supp. 3d 1163, 1170 (M.D. Al. 2016) (P&A has standing to represent prisoners with mental illness); *Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Connecticut*, 706 F. Supp. 2d 266, 283-84 (D. Conn. 2010) (P&A has standing to represent individuals seeking community-based services); *Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 309 (E.D.N.Y. 2008) (P&A has standing to represent constituents at risk of improper discharge to nursing home).

6

791653.14

would have standing in their own right, including (a) an injury in fact caused by defendant (b) that can be redressed by a favorable decision; (2) the interests at stake are germane to the organization's purpose; and (3) participation of individual members in the lawsuit is not required. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *see also United Food and Commercial Workers Union v. Brown Group, Inc.*, 517 U.S. 544, 552 (1996) (organizations may establish standing under *Hunt* "even without a showing of injury" to the organization itself); *Mink*, 322 F.3d at 1109-13 (P&As establish standing under *Hunt* based on injuries to constituents with mental health disabilities); *Comm. for Immigrant Rights of Sonoma Cty. v. County of Sonoma*, 644 F. Supp. 2d 1177, 1194 (N.D. Cal. 2009) (standing is "particularly appropriate" where issues are "central to the purpose of the organization" and relief "will inure to the benefit" of organization's members). Courts take a "broad view of constitutional standing" in cases brought under the ADA. *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008) (citing *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972)).

Here, Defendant AHS does not dispute that Plaintiff satisfies *Hunt*'s second or third elements.[5] Defendant AHS argues only that Plaintiff fails to satisfy the first element because it "has not pled that any of its constituents, including exemplars, have standing." Mot. at 15. As set forth below, DRC has clearly satisfied *Hunt*'s first element because it has alleged, with detailed facts about individual Constituents, that (1) Defendant AHS caused DRC Constituents injuries in fact that are (2) redressable by a favorable decision. *Mink*, 322 F.3d at 1112.

### 1. <u>Defendant AHS's Practices Cause DRC Constituents to Suffer Ongoing Injuries.</u>

Plaintiff has established injury for purposes of standing by alleging that Defendant AHS caused "concrete and particularized" harm that is "actual and imminent." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Pickern v. Holiday Quality Foods*

---

[5] Nor is there any basis to challenge DRC's standing under these elements. With respect to the second element, the interests at stake are germane to DRC's purpose. Compl. ¶¶ 3-4, 18-28 (setting out DRC's mission); *see Nat'l Fed'n of the Blind of Cal. v. Uber Techs., Inc.*, 103 F. Supp. 3d 1073, 1080 (N.D. Cal. 2015) (ADA suit to ensure members' access to services germane to organization's mission). In addition, "Congress abrogated the third prong of the *Hunt* test" for P&As suing pursuant to their federal authority. *Mink*, 322 F.3d at 1113. DRC nevertheless satisfies that element as well, because it seeks only injunctive relief. *See United Food*, 517 U.S. at 546 ("[I]ndividual participation is not normally necessary when an association seeks prospective or injunctive relief for its members."); *accord Comm. for Immigrant Rights*, 644 F. Supp. 2d. at 1194.

7

*Inc.*, 293 F.3d 1133, 1137 (9th Cir. 2002). Plaintiff alleges that: (a) Defendant AHS has failed to meet its obligations to "develop individualized treatment and discharge plans" for DRC Constituents and to "coordinate" their care with the County and community service providers, instead discharging DRC Constituents without adequate connections to services, Compl. ¶¶ 131, 135; *see also id.* ¶¶ 133-34; and (b) AHS's failures threaten DRC Constituents' health and safety such that they are at risk of "decompensating soon after being discharged from John George, leading to additional institutionalizations." *Id.* ¶ 136; *see also id.* ¶¶ 103, 140.

To illustrate the harms Defendant AHS causes DRC Constituents, and for which DRC seeks a remedy, DRC sets forth detailed allegations regarding four specific DRC Constituents, all of whom would have standing in their own right. For example, Plaintiff alleges that AHS "consistently failed to provide [DRC Constituent Rian Walter] with effective discharge planning," releasing him to homelessness without linking him to community supports, follow-up appointments, or other care coordination. *Id.* ¶¶ 37, 100, 136. As a result of AHS's actions, Mr. Walter became trapped in a cycle of institutionalization in which he "was institutionalized at John George on forty-three (43) occasions" in a recent two-year period. Defendant AHS discharged Mr. Walter without sufficient coordination with community providers, causing him on at least one occasion to be re-institutionalized at John George the very same day. *Id.* ¶¶ 98, 100, 136 (emphasis added).

Similarly, Plaintiff alleges that Constituent KG has cycled in and out of homelessness, jail, and psychiatric institutions, including "approximately 50 psychiatric hospitalizations, mostly at John George, since 1995," and "at least five" admissions to John George "during 2019 alone." *Id.* ¶ 41. Defendant AHS "exacerbated" KG's mental health symptoms through "poor discharge planning from ... [AHS's] John George" facility, including a specific example where she was discharged "without any connection to mental health services or housing supports." *Id.* ¶¶ 42, 109; *see also id.* ¶ 127.

As another example, Plaintiff alleges that Constituent Azizah Ahmad was institutionalized at John George multiple times in one summer. *Id.* ¶ 30. Each time, Defendant AHS discharged her without providing "a treatment plan" or arranging for "follow-up appointments" or "community-based crisis services." *Id.* ¶¶ 31, 33. Defendant AHS left Ms. Ahmad "on [her] own"; if Defendant AHS

791653.14

had provided appropriate discharge planning, "she could have avoided being institutionalized multiple times ...." *Id.* ¶¶ 31-32, 137-38.

Plaintiff further alleges that Constituent MR, who was hospitalized at John George on two occasions in late 2019, was released from John George "with no discharge plan whatsoever" and was "simply given a thirty-day supply of medication and instructed to seek care from a psychotherapist," putting her at "serious risk of re-institutionalization." *Id.* ¶¶ 45-48.[6]

Mr. Walter, Ms. Ahmad, KG, and MR are not alone. Defendant AHS institutionalized more than 350 DRC Constituents *over ten times* from January 2018 to June 2020, eighty-four of whom were admitted *twenty-five times* or more. *Id.* ¶ 90. Defendant AHS's practices cause a "concrete" and "imminent" injury to DRC Constituents by putting them at serious risk of unnecessary institutionalization. *See United States v. County of Los Angeles*, No. 2:15-cv-05903-DDP-JEM, 2016 U.S. Dist. LEXIS 65049, at *10-11 (C.D. Cal. May 17, 2016) (standing to seek relief for *Olmstead* violations because inadequate discharge planning aggravated mental health disabilities and led to "repeated incarcerations"). Plaintiff and its Constituents have a profound stake in the outcome of this case sufficient to satisfy Article III's injury and causation requirements. *Civil Rights Educ. & Enf't Ctr. v. Hospitality Prop. Trust*, 867 F.3d 1093, 1098 (9th Cir. 2017).

## 2.   <u>The Injuries that AHS Causes Are Redressable by a Favorable Decision.</u>

Defendant AHS asserts that Plaintiff's injuries cannot be redressed by the relief Plaintiff seeks because "it is up to the County," not Defendant AHS, "to add additional community-based programming." Mot. at 16. Defendant AHS misconstrues both the relief requested and the standard Plaintiff must satisfy. By focusing on the *County Defendants'* obligation to provide community services, Defendant AHS improperly ignores Plaintiff's request for a remedy addressing *AHS's* ongoing failure to provide discharge planning and to ensure "coordination and provision of *existing* community-based services." Compl. ¶ 148 (emphasis added); *see also id.* ¶¶ 131-35, Prayer for Relief ¶¶ 3(a)-(c). While it is true that Plaintiff seeks relief that includes increased community-based services provided by County Defendants, it is just as true that Plaintiff seeks relief that includes

---

[6] AHS's failures have also caused DRC Constituents, including Mr. Walter, MR, and KG, to lose economic, educational, and housing opportunities. Compl. ¶¶ 48, 139-40.

791653.14

1    adequate steps by Defendant AHS to coordinate care and ensure proper linkages to those community-

2    based services, both those that exist now and that will exist in the future.

3          Here, an injunction requiring Defendant AHS to comply with its obligations would redress

4    Plaintiff's injuries by abating deleterious health effects and cycles of institutionalization.  *See Kirola v.*

5    *City & County of San Francisco*, 860 F.3d 1164, 1175-76 (9th Cir. 2017) (injuries redressable because

6    court had authority under ADA to enter injunction that "would benefit [plaintiff] in a tangible way")

7    (citation omitted).  Plaintiff thus satisfies the redressability element of standing.  *Friends of the Earth*,

8    528 U.S. at 185-86.

9          Because Plaintiff has met all of the relevant Article III standing requirements, Defendant

10   AHS's motion to dismiss on this basis should be denied.

11   **B.    DRC's Complaint States Ripe. Justiciable Claims Against AHS, and Is Not Subject to**
         **Dismissal Under Rule 12(b)(1) or (b)(6).**
12

13         Defendant AHS's motion incorrectly construes Plaintiff's allegations as being limited to the

14   County Defendants' failure to maintain a community-based mental health system that is adequate with

15   respect to capacity and scope of service.  Plaintiff's Complaint, however, also alleges that each

16   Defendant including Defendant AHS is *presently* failing to ensure linkages and access to the

17   community-based services that *currently* exist.  Compl. ¶¶5, 13, 85.  Specifically, Plaintiff alleges that

18   Defendant AHS fails to provide discharge and treatment planning, or to coordinate with the Alameda

19   County community service providers.  *Id.* at ¶¶ 6, 31, 33, 37, 46, 47, 107, 131, 134-36.  These are

20   functions that AHS is undisputedly responsible for performing under its contract with County

21   Defendant ACBHCS.  *Id.* ¶ at 133.  Plaintiff also alleges that Defendant AHS "hold[s] people in

22   institutions longer than clinically appropriate," *id.* at ¶ 6; *accord id.* at ¶¶ 76, 81, causing *Olmstead*

23   violations.  AHS thereby significantly contributes to DRC Constituents' institutionalization and risk of

24   institutionalization.

25         These failures state justiciable claims against Defendant AHS under Title II of the ADA,

26   Section 504, and Section 11135.  First, they violate the integration mandate as construed by the U.S.

27   Supreme Court.  *See* 28 C.F.R. § 35.130(d); 28 C.F.R. § 41.51(d); Compl. ¶ 155(b).  Second, they

28

791653.14

constitute unlawful "criteria or methods of administration" that have the effect of disability discrimination, or that perpetuate disability discrimination by another covered entity. *See* 28 C.F.R. § 35.130(b)(3); 28 C.F.R. § 41.51(b)(3); Cal. Code Regs. tit. 2 § 11154(i); Compl. ¶¶ 57, 63, 155(c), 162(b), 173. Such prohibited discrimination includes practices conducted through "contractual or other arrangements." *Id.* Accordingly, Plaintiff's claims against AHS are ripe for adjudication.

### 1. Plaintiff's Complaint States Claims Against Defendant AHS that Are Fit for Adjudication.

A challenge based on ripeness requires the Court "to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). Plaintiff's claims against Defendant AHS are fit for judicial decision, as Plaintiff's Complaint alleges that Defendant AHS is currently violating the rights of DRC Constituents, causing injury. Further, withholding consideration would impose hardship on the Plaintiff and DRC constituents.

### a. Plaintiff's Complaint Alleges Ample Facts That Defendant AHS Is Currently Violating the Rights of DRC Constituents.

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted); *accord Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 537 (1st Cir. 1995) (if a plaintiff's claim "depends upon future events that may never come to pass, or that may not occur in the form forecasted, then the claim is unripe"); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical.") (citation omitted).

As set forth above in the discussion of Plaintiff's standing, Plaintiff alleges that Defendant AHS is *currently* violating the rights of DRC Constituents by failing to provide DRC Constituents with discharge and treatment planning and coordination with regard to *existing* community services. The Complaint specifically alleges the following:

> Defendants Alameda County and ACBHCS operate *existing services* in a manner and amount that is insufficient to meet DRC Constituents' needs,

11

1    *including systemic failures in the linkages to* and the delivery of *services*.
     …
2    Defendant AHS, which owns and operates John George, *subjects* DRC
     Constituents to unnecessary institutionalization and a serious risk of
3    unnecessary institutionalization ... by failing to develop *individualized*
     treatment and discharge plans for DRC Constituents detained at John
4    George, and by failing to ensure timely and effective implementation and
     coordination with the County, ACBHCS, and community-based service
5    providers ....

6    DRC Constituents *are often released without being linked* to adequate
     intensive   community-based   services,   resulting   in   their   re-
7    institutionalization.

8    Compl. ¶¶ 5, 6, 85 (emphases added); *see also id.* ¶ 13 ("In order to prevent DRC Constituents'

9    unnecessary institutionalization, Plaintiff seeks an order from this Court directing Defendants to

10   provide … effective linkages to ensure meaningful access to such [community-based] services.").

11       Defendant AHS contends that there is no "controversy" as to it because it is not responsible for

12   the provision of community-based services. Mot. at 12-15. Defendant AHS also disclaims

13   responsibility for "detaining" or "institutionalizing" patients – but acknowledges, as it must, that its

14   staff admits, evaluates, treats, and discharges DRC Constituents. Mot. at 12-13. As detailed above,

15   Plaintiff, however, does not contend that Defendant AHS is responsible for providing community-

16   based services. Instead, Plaintiff alleges that AHS is responsible for the discharge, treatment planning,

17   and coordination that link DRC Constituents to community-based services. Compl. ¶¶ 6, 31, 33, 37,

18   46, 47, 107, 131, 134, 135, 136. These functions occur—or should occur—while DRC Constituents

19   are at AHS facilities. That is the controversy.

20       Defendant AHS's role and responsibilities with respect to the operation of this mental health

21   service system are set forth in an amendment to the Master Contract between Defendant ACBHCS and

22   AHS. The contract provides that Defendant AHS is responsible for, among other things:

23   • "Facilitating a patient's ability to return to less restrictive treatment in the community."

24   • "Evaluation of continuity and coordination of care."

25   • "Active inclusion and collaboration with other system of care providers in the admission,
     diversion, treatment, and discharge of system patients."

26

27   • "Initiating or rapidly responding to communications with Service Team case managers and
     physicians in optimizing treatment, discharge planning, and mediation regiments for service
28   team patients."

---

12

791653.14

- "[E]xtensively review[ing] clinical and treatment history and communicat[ing] with community services providers to ... optimize treatment and discharge planning and reduce the likelihood of inpatient recidivism or multiple PES admissions."

- "[A]rrang[ing] for transportation at the time of discharge to the next level of care appropriate to the patient's clinical condition and destination."

- "[C]onsult[ing] and actively coordinat[ing] assessment, treatment and disposition efforts with BHCS case managers and physicians, service teams, Crisis Response Program, Sausal Creek, Villa Short-Stay, and other BHCS providers of mental health and substance abuse services."

- "[C]ollaborat[ing] with BHCS's Community Placement Specialist and other system administrators in the development and/or implementation of a discharge or system-wide care plan for selected patients needing special management and coordination."

- "[P]rovid[ing] discharge summary information regarding the clinical and pharmacological management of system patients to the discharge referral resource that receives them."

- "[P]articipat[ing] in BHCS' comprehensive analysis to assess and recommend changes in the administration, management, policies, operations, relationships and accountability of Information and Referral, Crisis and Emergency Services which serve as entry points to BHCS's System of Care.  It is imperative that there be designated a responsible administrative contact person at the John George Psychiatric Pavilion with whom BHCS can communicate and in whom BHCS can rely to address quality of care issues and all other aspects of this Agreement."

Compl. ¶ 133; Pl's. Request for Judicial Notice, Ex. A.

Despite these obligations, Defendant AHS fails "to develop individualized treatment and discharge plans, to ensure their timely and effective implementation, and to coordinate with the County, ACBHCS, and community-based services providers."  Compl. ¶ 131.  This current and ongoing deficiency compounds the failure of County Defendants to operate sufficient community-based services to meet the need of DRC Constituents.  *Id.*  Specifically, "Defendant AHS fails to adequately consult and coordinate with community providers and ACBHCS case managers, physicians, and other personnel in the admission, diversion, referral, treatment, and discharge of patients." *Id.* ¶ 134.  Further, Defendant AHS's discharge plans for DRC Constituents are "frequently boilerplate and disconnected from what DRC Constituents need in order to live successfully in the community." *Id.* at 135.  Many DRC Constituents are discharged to insecure housing or homelessness and are not adequately connected to mental health care.  *Id.*

The Complaint further alleges that DRC Constituents who are detained in AHS's Psychiatric Emergency Services (PES) unit often languish until they are released or referred to one of John

791653.14

1    George's inpatient units or another facility.  A significant number of DRC Constituents remain in the

2    PES for multiple days and some remain for more than a week.  Compl. ¶ 81.  One Alameda County

3    Mental Health Board report noted a "vicious cycle of overcrowding" at the PES, and "patients being

4    discharged and being readmitted when they fail to function outside the hospital setting." *Id.* ¶ 82.  The

5    majority of DRC Constituents detained in the PES are released without adequate community-based

6    services in place, resulting in their re-institutionalization, often repeatedly. *Id*. ¶ 82.  The County itself

7    has found that the majority of people discharged from PES are "not linked to planned services and

8    continue to over-use emergency services." *Id.* ¶ 92.

9        Additionally, despite state law and policy that discourages discharging people from psychiatric

10   institutions to the streets or emergency shelters, Defendant AHS frequently discharges DRC

11   Constituents from John George to homelessness. *Id.* ¶ 95.  By discharging DRC Constituents into

12   homelessness, Defendant AHS increases their risk of re-institutionalization. *Id*. ¶ 98.

13       In summary, Plaintiff alleges that AHS's practices significantly contribute to DRC

14   Constituents' institutionalization and have led to DRC Constituents decompensating soon after being

15   discharged from John George, leading to additional institutionalizations.  As such, Plaintiff's

16   Complaint clearly delineates Defendant AHS's role in the unnecessary institutionalization and risk of

17   institutionalization of DRC Constituents, and alleges that AHS causes concrete injuries that are

18   occurring *now*.  Plaintiff's Complaint thus describes "an invasion of a legally protected interest" that is

19   "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *See Spokeo*,

20   136 S. Ct. at 1548.  These allegations state a controversy as to Defendant AHS.  *See BrowserCam Inc.*

21   *v. Gomez, Inc*., No. 3:08-cv-02959-WHA, 2008 U.S. Dist. LEXIS 82159, at *19 (N.D. Cal. Sept. 26,

22   2008) ("Such alleged breaches are not 'contingent future events that may not occur as anticipated.'

23   …They have occurred.") (citation omitted).  They are not dependent upon any future chain of events.

24   *Cf. McInnis-Misenor v. Me. Med. Ctr.*, 319 F.3d 63, 72-73 (1st Cir. 2003) (finding claim unfit for

25   review where threatened injury was contingent on multiple future events); *Ernst & Young,* 45 F.3d at

26   538 (declining to rule on constitutional challenge to state law where harm to plaintiff depended upon a

27   lengthy chain of six future events).

28

14

791653.14

**b.**   **Plaintiff's Complaint States Legal Claims Against Defendant AHS Under Federal and State Laws, Including That Defendant AHS's Unlawful Policies and Practices Are Currently Causing the Risk of Unnecessary Institutionalization.**

Plaintiff's claims against Defendant AHS fall squarely within disability law and Supreme Court precedent.  In 1999, the U.S. Supreme Court held that the unnecessary institutionalization of individuals with disabilities is a form of discrimination prohibited under Title II of the ADA. *Olmstead,* 527 U.S. at 596-97 (construing 28 C.F.R. § 35.130(d), the ADA's "integration regulation"). Plaintiff properly alleges that AHS is an important component of a mental health system that, together with County Defendants, is responsible for DRC Constituents' unnecessary institutionalization and/or serious risk of institutionalization, and for the unlawful failure to ensure that DRC Constituents receive mental health services in the most integrated setting appropriate, in violation of the integration mandate of disability civil rights law.  *Id.* at 597; *M.R. v. Dreyfus*, 697 F.3d 706, 720, 734 (9th Cir. 2012) (state's actions placing people with disabilities at serious risk of institutionalization violate ADA Title II and Section 504); 28 C.F.R. § 35.130(d); 28 C.F.R. § 41.51(d).

Defendant AHS's failures, as alleged, are also unlawful "criteria or methods of administration" that have the effect of disability discrimination, or that perpetuate disability discrimination by another covered entity.  28 C.F.R. § 35.130(b)(3); 28 C.F.R. § 41.51(b)(3); Cal. Code Regs. tit 2, § 11154(i); *cf. Alexander v. Choate*, 469 U.S. 287, 304 (1985) (construing "criteria or methods of administration" standard in context of Medicaid benefit design).  These claims precisely follow ADA Title II and Section 504 regulations.

The ADA regulations implementing Title II build on and track in large measure the regulations implementing Section 504.  *See* 45 C.F.R. Part 84.  The Section 504 regulations are entitled to particular deference because they were drafted with the oversight and approval of Congress.[7]  And the

_____

[7] *CONRAIL v. Darrone*, 465 U.S. 624, 634 (1984) ("The [1977] regulations particularly merit deference in the present case: the responsible congressional Committees participated in their formulation, and both these Committees and Congress itself endorsed the regulations in their final form."); *Alexander*, 469 U.S. at 304 n.24 ("We have previously recognized these regulations as an important source of guidance on the meaning of § 504.  *See Consolidated Rail Corporation v. Darrone*, 465 U.S. 624 (1984) (holding that 1978 Amendments to the Act were intended to codify the regulations enforcing § 504)[.]"); *Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 279 (1987) ("these regulations were drafted with the oversight and approval of Congress" and "provide an important

15

standards contained in these regulations are codified as the minimum standard for the construction of the ADA. *See* 42 U.S.C. § 12201(a). Defendant AHS must come into compliance with the law to ensure that DRC Constituents are able to access existing community-based services.[8]

In disclaiming any potential liability under *Olmstead* for the unnecessary institutionalization and risk of institutionalization of DRC Constituents, AHS repeatedly points to the fact that it operates hospitals and wellness centers and does not create or provide community based services. This argument is a red herring. Consistently, public hospitals and public agencies with jurisdiction over public hospitals are regularly named as defendants in *Olmstead* litigation (including in the *Olmstead* litigation itself). *See, e.g., L.C., by Zimring v. Olmstead*, No. 95-CV-1210-MHS, 1997 U.S. Dist. LEXIS, at *2-3 (N.D. Ga. Mar. 26, 1997), *aff'd* 138 F.3d 893 (11th Cir. 1998), *aff'd in part, vacated in part, remanded sub nom. Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999) ("L.C. named as defendants the Commissioner of the Georgia Department of Human Resources, the Superintendent of GRH-A [Georgia Regional Hospital at Atlanta], and the Executive Director of the Fulton County Regional Board, which is responsible for the provision of mental health and mental retardation services to residents of Fulton County."); *Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare*, 402 F.3d 374, 376-78 (3d Cir. 2005) (describing complaint and defendants, including Superintendent of South Mountain Restoration Center, a psychiatric nursing facility); *Kenneth R. v. Hassan*, 293 F.R.D. 254, 260 (D.N.H. 2013) (describing claims against defendants, including governor and officials of the New Hampshire Department of Health and Human Services [the agency which operates the two state hospitals at issue, *see* https://www.dhhs.nh.gov/about/organization.htm]).

It may be true, as Defendant AHS suggests, that it is fully controlled by Defendant Alameda County.[9] However, if true, the County's ultimate control over AHS does not preclude AHS, as well as

---

source of guidance on the meaning of § 504") (citation omitted); *Bragdon v. Abbott*, 524 U.S. 624, 632 (1998) ("The [1977] regulations are of particular significance because, at the time, HEW was the agency responsible for coordinating the implementation and enforcement of § 504.").

[8] In *Brown v. District of Columbia*, 928 F.3d 1070, 1079 (D.C. Cir. 2019), the D.C. Circuit reversed a judgment in favor of the District of Columbia in a case brought by residents of D.C. Medicare-funded nursing homes who wished to move to a community-based setting and complained about a lack of adequate transition services, including discharge planning. As *Brown* underscores, failure to engage in adequate discharge planning can be a basis for an *Olmstead* claim.

[9] *See* Mot. at 7 ("[T]he County retains the sole ability to terminate the activities of AHS and can expire AHS as an entity.") *id.* at 14 ("[U]nder its Master Contract, the County retains the ability to terminate

16

the County, from being a defendant in this case.  AHS is a proper defendant because, as described

above, its actions contribute to DRC Constituents' unnecessary institutionalization and being at high

risk of unnecessary institutionalization.  AHS is "a legal entity separate and apart from the county,"

Cal. Health & Safety Code § 101850(a), (b), (j), that, as Plaintiff alleges, fails to comply with the

terms of its contract with Defendant ACBHCS, causing unnecessary institutionalization and risk of

institutionalization for DRC Constituents.  Compl. ¶¶ 133-36.  Inclusion of AHS in this case is wholly

appropriate.

In sum, Plaintiff's Complaint states justiciable claims that Defendant AHS's unlawful policies

and practices are causing DRC Constituents unnecessary institutionalization and the risk of

unnecessary institutionalization in violation of Section 504, the ADA, and Section 11135.

## 2.   DRC Constituents Would Experience Hardship Were AHS Dismissed.

"To meet the hardship requirement [of the ripeness doctrine], a litigant must show that

withholding review would result in direct and immediate hardship and would entail more than possible

financial loss." *US W. Comm'cs, Inc. v. MFS Intelenet, Inc*., 193 F.3d 1112, 1118 (9th Cir. 1999)

(citation omitted); *see also Abbott Labs*, 387 U.S. at 152-53.  Plaintiff's Complaint easily meets this

standard because it alleges non-financial injuries to its Constituents that are being caused by

Defendant AHS, and which cannot be remedied without Defendant AHS's participation in this action.

Allegations of harm include Defendant AHS's failure to provide DRC Constituents with treatment and

discharge planning and linkages to community-based services.  In particular, Plaintiff's Complaint

alleges:

- [AHS] [s]taff did not provide [Ahmad] with a treatment plan, and did not arrange for any follow-up appointments.  Ms. Ahmad felt that she was "on [her] own….  Upon discharge, AHS staff … did not provide [Ahmad] with a treatment plan.  Compl. ¶¶ 31, 33.

- Over the course of Mr. Walter's multiple psychiatric institutionalizations, Defendants have consistently failed to provide him with effective discharge planning.  *Id*. ¶ 37.

- MR was released from John George with no discharge plan whatsoever ….  MR again left [John George] without a meaningful discharge plan.  *Id*. ¶¶ 46, 47.

- DRC Constituents are often released without being linked to adequate intensive community-based services, resulting in their re-institutionalization.  *Id*. ¶ 85.

---

the activities of AHS and expire AHS as an entity.").

- Defendant AHS's practices significantly contribute to DRC Constituents' institutionalization and has led to numerous DRC Constituents decompensating soon after being discharged from John George, leading to additional institutionalizations. *Id.* ¶ 136.

Defendant AHS continues to engage in the practices causing the injuries alleged by Plaintiff despite its contractual and statutory relationship with Defendant ACBHCS. Because Plaintiff alleges present harms, and because a remedy requiring Defendant AHS to comply with disability rights laws would serve to ameliorate those harms, Plaintiff would experience hardship were Defendant AHS to be dismissed. As such, Plaintiff's claims are ripe for adjudication. Defendant AHS' motion to dismiss must therefore be denied.

**C.** **The Court Should Deny AHS's Motion to Strike Because Allegations Related to Racial Disparities and Pandemic-Related Harms Bear Directly on Issues in the Litigation.**

Defendant AHS's motion to strike allegations related to the disproportionate impact of Defendants' actions on Black DRC Constituents and the risks posed by COVID-19 has no merit. Mot. at 21-22. Motions to strike under Federal Rule of Civil Procedure 12(f) "are generally disfavored" because of "the strong policy favoring resolution on the merits." *McRee v. Goldman*, No. 3:11-cv-00991-EDL, 2012 U.S. Dist. LEXIS 36793, at *8 (N.D. Cal. Mar. 19, 2012). Therefore, "[i]f there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (rule intended to avoid litigating "spurious" issues).

Defendant AHS fails to identify a single paragraph of the Complaint that should be stricken, making only conclusory statements that "several allegations" are "immaterial." Mot. at 21-22. Denial of AHS's motion is warranted on this ground alone. *McRee*, 2012 U.S. Dist. LEXIS 36793, at *19-20. Nor does AHS cite any applicable case law supporting its position.

Moreover, Plaintiff's allegations regarding racial disparities and the COVID-19 pandemic are proper because they illustrate how DRC Constituents are injured by Defendants' *Olmstead* violations. In addition, they are relevant to Plaintiff's requested remedies, which include intensive community services that are provided in a culturally congruent manner and address the racial disparities impacting Black DRC Constituents. Compl. ¶¶ 128-30; Request for Relief ¶ 3(c). Far from "inflam[ing]" the

18

current political and social climate as Defendant AHS suggests, Mot. at 22, Plaintiff raises issues

relevant to both the injuries complained of here and remedies needed to address them.  Similarly,

allegations related to the COVID-19 pandemic are relevant both to the harms caused by unnecessary

institutionalization and to the remedies that Plaintiff seeks.  Plaintiff alleges that Defendants' practices

cause DRC Constituents to cycle between mental health facilities, jail, and the community, and that

this cycling puts them at heightened risk of COVID-19 infection, which is further exacerbated by the

conditions in these facilities.  Compl. ¶¶ 141-46.  Moreover, any remedy involving Defendants'

treatment of high-risk Constituents (including Black DRC Constituents) and their discharge to

community services will necessarily consider COVID-19, so long as the virus remains a risk to the

community.  *See Ortuño v. Jennings*, No. 3:20-cv-02064-MMC, 2020 U.S. Dist. LEXIS 62030, at \*4-6

(N.D. Cal. Apr. 8, 2020) (discussing heightened risks of COVID-19 in locked facilities for people with

certain health conditions).

Accordingly, Plaintiff's race- and pandemic-related allegations bear directly on issues in this

litigation and the motion to strike should be denied.

**D.**      **Defendant AHS's Documents Are Not Properly Considered on a Motion to Dismiss; Even If Considered, They Provide No Basis for Dismissing Plaintiff's Claims or for Striking Any Allegations.**

Federal Rule of Evidence 201 provides that a court "may judicially notice a fact that is not

subject to reasonable dispute because it: (1) is generally known within the trial court's territorial

jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot

reasonably be questioned."  "The party requesting judicial notice bears the burden of persuading the

court that the particular fact is [judicially noticeable]."  *Harrison v. Milligan*, No. 3:09-cv-04665-SI,

2012 U.S. Dist. LEXIS 70592, at \*2-3 (N.D. Cal. May 21, 2012).

Defendant AHS asks the Court to take judicial notice of eight documents, attached as Exhibits

A through H to its Request for Judicial Notice.  (ECF No. 18.)  An Exhibit I is also attached to the

Request for Judicial Notice, but it is not referenced in the Request.  (*Id.* at 154.)  The Request for

Judicial Notice characterizes these documents as describing Defendant AHS's role within Alameda

County's mental healthcare system.  Exhibits A-C and E are agreements between Defendant AHS and

Alameda County, Exhibit D is a state statute, and Exhibits F-H are other policy-related documents.

791653.14

1    Defendant AHS seeks judicial notice of these documents in an attempt to show that its role in Alameda

2    County's mental health system is limited to certain functions.  Plaintiff objects to AHS's request

3    because the documents are either subject to dispute or are not judicially noticeable.

4         A court may take judicial notice of the existence of publicly available documents, but it may

5    not take judicial notice of facts contained in these documents that are subject to reasonable dispute.

6    *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[A] court cannot take

7    judicial notice of disputed facts contained in ... public records."); *Lee v. City of Los Angeles*, 250 F.3d

8    668, 689-90 (9th Cir. 2001) (judicial notice appropriate for existence of public records, but not for "the

9    truth of facts recited therein") (citation omitted).  Here, Plaintiff disputes Defendant AHS's

10   characterization of its documents, including whether they comprise the relevant contract.

11        In particular, Plaintiff's claims against Defendant AHS are based in part on a later-dated Master

12   Contract that attributes to AHS more extensive—and highly relevant—responsibilities, and it is that

13   Master Contract that Plaintiff references in its Complaint.  *See* Pl.'s Request for Judicial Notice, Ex. A;

14   Compl. ¶ 133.  Plaintiff contends that the later contract supersedes the earlier ones in relevant respects.

15   However, it would be premature to resolve this factual dispute on a motion to dismiss.  *See, e.g.*, *Hsu v.*

16   *Puma Biotech., Inc.*, 213 F. Supp. 3d 1275, 1280-82 (C.D. Cal. 2016) (warning against expanded use

17   of judicial notice to dismiss cases in which plaintiffs had no opportunity to conduct discovery).

18        Defendant AHS also seeks judicial notice of section 101850 of the California Health and

19   Safety Code, but statutes are not judicially noticeable.  *See, e.g.*, *Fusion IV Pharms., Inc. v. Herold*,

20   No. 2:19-cv-01127-PA-FFM, 2019 U.S. Dist. LEXIS 106283, at *7 (C.D. Cal. June 21, 2019).

21   Defendant AHS' request for judicial notice should therefore be denied.

22                          **IV.    <u>CONCLUSION</u>**

23        For the foregoing reasons, Plaintiff Disability Rights California respectfully requests that the

24   Court deny Defendant Alameda Health System's Motion to Dismiss and Motion to Strike in their

25   entirety, and reject Defendant AHS' request for judicial notice.

26

27

28

791653.14

Dated:  November 10, 2020

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

*/s/ Andrew P. Lee*
Andrew P. Lee

DISABILITY RIGHTS CALIFORNIA

*/s/ Sarah Gregory*
Sarah Gregory

BAZELON CENTER FOR MENTAL HEALTH LAW

*/s/ Ira A. Burnhim*
Ira A. Burnim

DISABILITY RIGHTS EDUCATION AND DEFENSE FUND

*/s/ Claudia Center*

Claudia Center

*Attorneys for Plaintiff*

## SIGNATURE ATTESTATION

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the signatories on this e-filed document.

Dated:  November 10, 2020

*/s/ Andrew P. Lee*
Andrew P. Lee

21

791653.14