HANSON BRIDGETT LLP
KURT A. FRANKLIN, SBN 172715
kfranklin@hansonbridgett.com
GYMMEL M. TREMBLY, SBN 327236
gtrembly@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:    (415) 777-3200
Facsimile:    (415) 541-9366

Attorneys for Defendant
ALAMEDA HEALTH SYSTEM

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| DISABILITY RIGHTS CALIFORNIA, a California nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF ALAMEDA; ALAMEDA COUNTY BEHAVIORAL HEALTH CARE SERVICES; and ALAMEDA HEALTH SYSTEM,<br><br>Defendants. | Case No. 20-cv-05256-CRB<br><br>**DEFENDANT ALAMEDA HEALTH SYSTEM'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**<br><br>Judge:    Hon. Charles R. Breyer<br>Date:     December 10, 2020<br>Time:     10:00 a.m.<br>Ctrm.:    6 - 17th Floor |

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ............................................................................................................1

II.    ARGUMENT ..............................................................................................................3

    A.    Without Legal Authority, DRC Attempts To Expand *Olmstead* ADA Title II Liability To A Hospital That Supports The County And Thus Fails To Plead A Case Or Controversy .................................................................................3

        1.    DRC's causes of action against AHS are not fit for adjudication..................4

            a.    DRC can cite to no legal authority holding a hospital that supports a county liable under *Olmstead*. ..........................................4

            b.    AHS does not institutionalize DRC Constituents; rather, it provides short term emergency mental health treatment..................6

            c.    AHS does not provide, administer, nor fund community-based programming. ..........................................................................7

        2.    DRC would not suffer hardship if its case against AHS is dismissed............8

    B.    DRC Lacks Article III Standing Because As Pled, DRC Cannot Attribute Any Risk Of Unjustified Institutionalization To AHS................................................8

        1.    The hospital's short term treatment of patients does not support an ADA Title II claim. ...........................................................................................9

        2.    DRC attempts to expand *Olmstead* ADA Title II liability to dictate patient care and supplant the opinions of medical professionals. ................10

            a.    DRC seeks to supplant the medical opinions of  John George service providers for its own judgment of when to release patients. ...................................................................................................10

            b.    DRC seeks to supplant the medical opinions of John George service providers for its own judgment of where to release patients. ...................................................................................................12

    C.    DRC Fails To State A Claim of Title II Discrimination Against AHS And Its Complaint Should Be Dismissed.........................................................................12

    D.    This Court Should Strike Related To Racial Disparities And COVID-19..............13

    E.    DRC's Exhibits May Not Be Considered In Support Of Its Opposition To AHS's Motion To Dismiss.......................................................................................14

III.   CONCLUSION ..........................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Labs. v. Gardner,*
   387 U.S. 136 (1967) ...........................................................................................................3

*Balistreri v. Pacifica Police Dep't,*
   901 F.2d 696 (9th Cir. 1990) ...........................................................................................12

*Black v. Dep't of Mental Health,*
   83 Cal. App. 4th 739 (2000) .......................................................................................3, 10

*Brown v. District of Columbia,*
   928 F.3d 1070 (D.C. Cir. 2019) ........................................................................................7

*Dunakin v. Quigley,*
   99 F. Supp. 3d 1297 (W.D. Wash. 2015) ..........................................................................9

*Frederick L. v. Dep't of Pub. Welfare of Com. of Pennsylvania,*
   364 F.3d 487 (3d Cir. 2004) ..............................................................................................9

*Gerritsen v. Warner Bros. Entm't Inc.,*
   112 F. Supp. 3d 1011 (C.D. Cal. 2015) ..........................................................................14

*Hunt v. Washington State Apple Advert. Comm'n,*
   432 U.S. 333 (1977) ...........................................................................................................9

*Kenneth R. ex rel. Tri-Cty. CAP, Inc./GS v. Hassan,*
   293 F.R.D. 254 (D.N.H. 2013) ......................................................................................5, 6

*L.C., by Zimring v. Olmstead,*
   No. 1:95-CV-1210-MHS, 1997 WL 148674, at *1 (N.D. Ga. Mar. 26, 1997),
   aff'd 138 F.3d 893 (11th Cir. 1998), aff'd in part, vacated in part, remanded sub
   nom ....................................................................................................................................5

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001) ...........................................................................................15

*Martin v. Taft,*
   222 F. Supp. 2d 940 (S.D. Ohio 2002) ..............................................................................4

*McInnis-Misenor v. Maine Med. Ctr.,*
   319 F.3d 63 (1st Cir. 2003) ................................................................................................3

*Mireskandari v. Daily Mail & Gen. Tr. PLC,*
   No. CV1202943MMMFFMX, 2013 WL 12129642 (C.D. Cal. July 31, 2013) ...............14

*Olmstead v. L.C. ex rel. Zimring,*
   527 U.S. 581 (1999) ................................................................................................ *passim*

*Pennsylvania Prot. & Advocacy, Inc. v. Pennsylvania Dep't of Pub. Welfare,*
   402 F.3d 374 (3d Cir. 2005) ..............................................................................................5

-ii-

*Sch. Bd. of Nassau Cty., Fla. v. Arline,*
    480 U.S. 273 (1987) ........................................................................................................10

*Shaw v. Lindgren,*
    No. CV 19-2700-DMG (AGR), 2020 WL 4455087 (C.D. Cal. Aug. 3, 2020) ........................15

*Shaw v. Lingen,*
    No. CV 19-2700-DOG (AGR), 2020 WL 4456661 (C.D. Cal. Apr. 21, 2020) ........................15

*Simmons v. Navajo Cty., Ariz.,*
    609 F.3d 1011 (9th Cir. 2010) ....................................................................................3, 10

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ......................................................................................................8

*SST Sterling Swiss Tr. 1987 AG v. New Line Cinema, Corp.,*
    No. CV05-2835 DSF(VBKX), 2005 WL 6141290 (C.D. Cal. Oct. 31, 2005) ....................14

*State of Connecticut Office of Prot. & Advocacy for Persons with Disabilities v.*
    *Connecticut,*
    706 F. Supp. 2d 266 (D. Conn. 2010) ................................................................................7

*United States Am. v. Cty. of Los Angeles,*
    No. CV1505903DDPJEMX, 2016 WL 2885855 (C.D. Cal. May 17, 2016) ..........................7

*Wilkerson v. Butler,*
    229 F.R.D. 166 (E.D. Cal. 2005) ......................................................................................14

**Statutes**

29 U.S.C. § 794(a) ....................................................................................................................4

42 U.S.C. § 12131, *et seq.* ........................................................................................................4

Cal. Gov't Code § 11135 ..........................................................................................................1

Cal. Welf. & Inst. Code § 5150 .............................................................................................6, 9

Cal. Welf. & Inst. Code § 5150(a) ..........................................................................................11

Cal. Welf. & Inst. Code § 5150.05 ...........................................................................................6

Cal. Welf. & Inst. Code § 5151 .................................................................................................6

Cal. Welf. & Inst. Code § 5152(a) ..........................................................................................11

Cal. Welf. & Inst. Code § 5250 ..............................................................................................11

Cal. Welf. & Inst. Code § 5254 ..............................................................................................11

Cal. Welf. & Inst. Code §14680 ................................................................................................7

Cal. Welf. & Inst. Code §14684(a)(3) ...................................................................................7, 8

Cal. Welf. & Inst. Code §14714 ............................................................................................7, 8

Case No. 20-cv-05256-CRB

DEFENDANT ALAMEDA HEALTH SYSTEM'S REPLY TO PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS

**Other Authorities**

28 C.F.R. § 35.130(d).................................................................................................4

28 C.F.R. § 41.51(d)..................................................................................................4

Fed. R. Civ. P. Rule 12(b)(6).....................................................................................12

Fed. R. Civ. P. Rule 12(f)..........................................................................................13

Fed. R. Civ. P. 12(f)..................................................................................................13

U.S. Const. art. III, § 2 ...............................................................................................3

DEFENDANT ALAMEDA HEALTH SYSTEM'S REPLY TO PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS

17042317.13

# I.      INTRODUCTION

In its opposition, Plaintiff Disability Rights California ("DRC") continues to conflate the defendants. But Defendant Alameda Health System ("AHS") is a separate and distinct legal entity from the County of Alameda ("the County").  AHS is a health care system of five hospitals and four wellness centers with over 800 beds and 1,000 physicians.  In short, AHS treats patients.  It's not law enforcement, a jail, prison, nor is it designed as a long-term state mental health hospital that institutionalizes persons.

One of AHS's five hospitals is John George Psychiatric Hospital ("John George" or "the hospital"), which provides psychiatric care for patients with severe mental illness.  John George's care of psychiatric patients falls into two categories:  (1) Psychiatric Emergency Services ("PES") that allows for up to a 24-hour stay; or (2) Inpatient Services ("inpatient unit") in one of its 80 licensed beds (69/80 available for use), which by Plaintiff's allegation have a treatment period on average of 9-days.  Patients come to John George by ambulance/law enforcement (about 1,200/month) or walk in (about 230/month).

The Americans with Disabilities Act ("ADA") Title II, Section 504 of the Rehabilitation Act ("Section 504"), and Government Code section 11135 claims are based solely on the *Olmstead v. L.C. ex rel. Zimring*[1] integration mandate – which requires that persons with mental health disabilities not be shunted aside, ignored, or segregated from society but are instead placed so that they have the most possible community access.  In bringing its *Olmstead* claim against a local hospital, DRC attempts to expand *Olmstead* ADA Title II liability to a hospital that supports the County.  In doing so, DRC asserts that AHS "contributes" to unnecessary institutionalization. This expansion that second guesses decisions by medical providers, attempts to expand a hospital's services, and drags a hospital into litigation for "contributing" to a state or county's integration mandate obligations is not supported.

First, Plaintiff's claim is not ripe for adjudication. Like its complaint in this matter, DRC's opposition continues to conflate the roles of AHS and that of the County.  But AHS does not

---

[1] *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999).

DEFENDANT ALAMEDA HEALTH SYSTEM'S REPLY TO PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS

17042317.13

1   arrest, detain, or otherwise bring people to John George – instead, it treats them medically if they

2   present a danger to themselves, or others, or if they are gravely disabled.  Moreover, Plaintiff's

3   complaint against the County is that there is insufficient community based treatment.  AHS cannot

4   coordinate discharge of patients to community-based programs that do not exist.  Without the

5   community-based programming in place, DRC's causes of action against AHS cannot be

6   addressed by a favorable decision.  But according to DRC, a hospital can be whipsawed with

7   *Olmstead* liability for releasing patients too early, releasing them too late, or releasing them when

8   there is insufficient non-hospital treatment available. Not so.

9        Second, DRC lacks Article III standing because treating patients for short-term, acute

10   mental health needs does not support an ADA Title II claim.  According to Plaintiff, as alleged in

11   its complaint and opposition, the average stay at John George's inpatient unit is nine days or less

12   and DRC Constituents may spend more than one week in PES.  In contrast, the plaintiffs in

13   *Olmstead* were institutionalized for years, i.e. long-term institutionalizations.  This is the type of

14   long-term unjustified institutional isolation or confinement of persons with disabilities that might

15   support *Olmstead* discrimination.  In contrast, a local hospital's support of the County – and claims

16   concerning release of patients that are allegedly a few days too early or late, or other alleged

17   deficiencies in care, cannot support an ADA Title II claim.

18        Moreover, by complaining about AHS's judgment in treatment, omissions in treatment, or

19   treatment itself, DRC asks that DRC's judgment and that of this Court be substituted for the

20   judgment of healthcare professionals.  As a matter of law, however, any alleged failure by AHS

21   with respect to discharge planning cannot be a claim under ADA Title II.  As stated by Justice

22   Kennedy in his concurrence in *Olmstead*:  "It is of central importance, then, that courts apply

23   today's decision with great deference to the medical decisions of the responsible, treating

24   physicians and, as the Court makes clear, with appropriate deference to the program funding

25   decisions of state policymakers."[2]  Similarly, the Ninth Circuit has unequivocally held that "[t]he

26   / / /

27

28   [2] *Olmstead*, 527 U.S. at 610 (Kennedy, J., concurring).

1   ADA prohibits discrimination because of disability, <u>not</u> inadequate treatment for disability."[3]

2         Third, DRC's complaint fails because DRC makes no plausible allegations that a judgment

3   against AHS can solve the community-based placement it seeks.  Conclusory and not sufficiently

4   pled, DRC concludes that AHS is liable based on a theory that the hospital and the County are

5   "interconnected" in that they provide mental health care services to County residents.  Yet, no

6   authority supports such a theory.  In light of DRC's deficient pleading, this Court should dismiss

7   the Complaint.

8         Fourth, this Court should strike DRC's allegations of racial disparities and COVID-19 risk

9   of viral infection.  These allegations are immaterial– having nothing to do with ADA Title II or

10  other public accommodation laws.  In furthering these allegations, DRC seeks to capitalize on the

11  fears of the existing pandemic and current political climate around race.  The allegations

12  concerning Black DRC Constituents and COVID-19 are evident on the face of the complaint and

13  there can be no confusion as to which allegations the court should strike.

14  **II.**     **ARGUMENT**

15       **A.**     **Without Legal Authority, DRC Attempts To Expand *Olmstead* ADA Title II**
       **Liability To A Hospital That Supports The County And Thus Fails To Plead A**
16     **Case Or Controversy**

17        Article III courts lack federal jurisdiction where the case is not ripe for adjudication.[4]  The

18  party invoking federal jurisdiction carries the burden to allege sufficient facts to establish that the

19  case is ripe for adjudication by showing:  (1) fitness of the issues for judicial decision, and

20  (2) hardship to the parties resulting from withholding court consideration.[5]

21  / / /

22  / / /

23  / / /

24

25  ─────────────────────

[3]  *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (underlining added);
26  *Black v. Dep't of Mental Health*, 83 Cal. App. 4th 739 (2000) (in sustaining a demurrer without
     leave to amend as to the State of California, finding *Olmstead* does not create a standard of care.).
27  [4]  U.S. Const. art. III, § 2; *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967); *McInnis-Misenor v.
     Maine Med. Ctr.*, 319 F.3d 63, 73 (1st Cir. 2003).
28  [5]  *Id.* at 73.

DEFENDANT ALAMEDA HEALTH SYSTEM'S REPLY TO PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS

17042317.13

1        **1.      DRC's causes of action against AHS are not fit for adjudication.**

2            **a.      DRC can cite to no legal authority holding a hospital that**
             **supports a county liable under *Olmstead*.**
3

4            The gravamen of DRC's complaint is against the County, not AHS.  It desires more

5    community-based mental health programming. Towards this end, its claims against AHS are

6    contingent on the County having provided such programming.

7            Both Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and Title II of the ADA,

8    42 U.S.C. § 12131, *et seq.*, prohibit discrimination against an individual because of his or her

9    disability.[6]  Both Acts were intended to provide individuals with disabilities the tools necessary to

10   achieve equality of opportunity, independent living, and full inclusion and integration in society.[7]

11   Enforcement regulations of Section 504 issued by the Department of Justice require that the

12   recipient of federal funds administer programs and activities in the "most integrated setting

13   appropriate to the needs" of qualified persons with disabilities.[8]  Title II of the ADA calls for the

14   same integration mandate – "A public entity shall administer services, programs, and activities in

15   the most integrated setting appropriate to the needs of qualified persons with disabilities."[9]  As a

16   result, protections under Section 504 are interpreted in an identical manner as Title II of the ADA.

17           In *Olmstead v. L.C. ex rel. Zimring*, Justice Ginsburg, writing for the plurality, found that

18   unjustified isolation of persons with disabilities is a form of discrimination based on disability that

19   violates the ADA Title II integration mandate.[10]  There, plaintiffs with mental health disabilities,

20   L.C. and E.W., were voluntarily admitted to Georgia Regional Hospital ("GRH").  This is a state

21   hospital designed for long-term institutionalization.  Both plaintiffs spent several years at GRH

22   before filing suit against the Commissioner of the Georgia Department of Human Resources, the

23   Superintendent of Georgia Regional Hospital, and the Executive Director of the Fulton County

24   Regional Board challenging their continued isolation. [11]  The Court interpreted the failure to place

25   _____

26   [6]  29 U.S.C. § 794(a) (Rehabilitation Act); 42 U.S.C. § 12131, *et seq.* (Title II of the ADA).
     [7]  *Martin v. Taft*, 222 F. Supp. 2d 940, 966 (S.D. Ohio 2002).
27   [8]  28 C.F.R. § 41.51(d).
     [9]  28 C.F.R. § 35.130(d).
28   [10]  *Olmstead*, 527 U.S. at 597.
     [11]  *Id.* at 593.

17042317.13

1   the individuals with disabilities in community-based programs to be unjustified institutionalization

2   in violation of Title II of the ADA when:

> the State's treatment professionals have determined that community placement is
> appropriate, the transfer from institutional care to a less restrictive setting is not
> opposed by the affected individual, and the placement can be reasonably
> accommodated, taking into account the resources available to the State and the
> needs of others with mental disabilities.[12]

6   Contrary to DRC's interpretation of the case, *Olmstead* does not hold a local public

7   hospital liable for alleged "contributing" to unjust institutionalization of plaintiffs nor does it allow

8   plaintiffs to second guess decisions by medical professionals.  And, of course, there cannot be

9   liability when the theory of liability against a local hospital is contingent upon action of the

10  County.  Rather, in *Olmstead*, in matters of long-term institutionalization in a state hospital, the

11  state was responsible for the failure to place the individuals in community-based programming

12  when such programs were appropriate to the needs of the plaintiffs.  Here, DRC has failed to cite

13  to a single case that holds a local public hospital responsible as a defendant for either

14  "contributing" to a county or state's alleged long term institutionalization of patients, for alleged

15  mistakes in treatment, or for releasing patients from short-term institutionalization.  Moreover, no

16  case holds that a hospital that is separate from the state or county, may be liable under *Olmstead*

17  for providing services in support of the state or county.[13]  Without any legal support, DRC aims to

18  stretch *Olmstead* to question the judgment of medical professionals and reach a hospital that

19  provides emergency mental health care to patients in support of the County.

20  / / /

21  / / /

22

---

23  [12]  *Id.* at 587.

24  [13]  *L.C., by Zimring v. Olmstead*, No. 1:95-CV-1210-MHS, 1997 WL 148674, at *1 (N.D. Ga. Mar. 26, 1997), aff'd 138 F.3d 893 (11th Cir. 1998), aff'd in part, vacated in part, remanded sub nom. *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999) (challenging the continued institutionalization of Plaintiffs at Georgia State Hospital-Atlanta, a long-term state mental institution); *Pennsylvania Prot. & Advocacy, Inc. v. Pennsylvania Dep't of Pub. Welfare*, 402 F.3d 374, 376–78 (3d Cir. 2005) (challenging the failure to include in integrated treatment programs residents of Sonoma Mountain Restoration Center, a long-term nursing-type facility); *Kenneth R. ex rel. Tri-Cty. CAP, Inc./GS v. Hassan*, 293 F.R.D. 254, 260 (D.N.H. 2013) (challenging unnecessary institutionalization of putative class members institutionalized in long-term state treatment facilities—New Hampshire Hospital and Glencliff Home.).

Case No. 20-cv-05256-CRB

DEFENDANT ALAMEDA HEALTH SYSTEM'S REPLY TO PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS

17042317.13

1

b.    **AHS does not institutionalize DRC Constituents; rather, it provides short term emergency mental health treatment.**

2

3    DRC's opposition continues to conflate the roles of AHS and that of the County.[14]  But

4    AHS does not arrest, detain, or otherwise bring people to John George – instead, it treats them

5    medically if they present a danger to themselves, to others, or if they are gravely disabled.[15]  As

6    DRC recognizes in its complaint, the decisions on who to arrest or detain are a function of the

7    County.[16]

8    An individual may seek voluntary psychiatric care at John George – and a small percentage

9    of patients do so.  Alternatively, by law enforcement, the courts, or by other County action, a

10    patient may be involuntarily brought to the hospital for acute (short in duration, but severe),

11    intensive mental health treatment.[17]  Thus, it is the function of the County to institutionalize

12    patients by detaining them and bringing them to John George, not AHS.

13    When appropriate to the medical needs of the patient and when he or she is no longer a

14    danger to himself, herself, or others, John George staff  discharges the patient.  The Supreme

15    Court in deciding *Olmstead* did not proscribe as an ADA Title II violations the  "discharge" or

16    "release" of persons with disabilities from hospitals. Instead, ADA Title II prohibits forcing the

17    continued segregation of persons with disabilities in institutions when release to community-based

18    services was appropriate for the medical needs of the individual.[18]  Plaintiffs have cited  no case

19    before or after *Olmstead* that suggests releasing a person from any institution – let alone a local

20    hospital – is a violation of ADA Title II .  Accordingly, AHS does not violate *Olmstead* by

21    discharging or releasing individuals from the hospital.

22

---

23    [14]  Dkt. No. 33 at 4:20 ("Defendants institutionalize nearly 1,000 people at John George PES unit every month"); 5:13-14 ("AHS institutionalized approximately eighty-four (84) people at least

24    twenty-five (25) times"); 9:7-8 ("Defendant AHS institutionalized more than 350 DRC Constituents over ten times from January 2018 to June 2020.").

25    [15]  *Id.* §§ 5150, 5150.05.

26    [16]  Compl.  ¶ 74 ("the County detains vast numbers of Constituents at John George"); ¶72 ("Under California's civil commitment laws, DRC Constituents can be detained for up to 72 hours based on a statement by certain County staff that they have reason to believe that the person, due to a

27    mental disability, is gravely disabled or a danger to themselves or others.").

[17]  Cal. Welf. & Inst. Code §§ 5150, 5151(West).

28    [18]  *Olmstead*, 527 U.S. 581.

DEFENDANT ALAMEDA HEALTH SYSTEM'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

c.     **AHS does not provide, administer, nor fund community-based programming.**

DRC's opposition clarifies that the alleged harm AHS causes is that:

> Defendant AHS has failed to meet its obligations to develop individualized treatment and discharge plans for DRC Constituents and to coordinate their care with the County and community service providers, instead discharging Constituents without adequate connections to services.[19]

Plaintiff's cited legal authority finds that a county or state may liable for any deficiencies in discharge planning by county or state institutions designed to hold people long-term, e.g. a prison or jail, or state mental health detainment.[20]  It is undisputed that AHS does not hold persons long-term.  And, it is undisputed that the County provides, administers, and funds community-based care.[21]  The County, through its Mental Health Plan – Alameda County Behavioral Health Care Services ("ACBHCS"), is responsible for setting appropriate standards relating to the quality, access, and coordinating of services for Alameda County residents.[22]  Accordingly, the County, not AHS, is responsible for ensuring the availability of community-based programming.

Toward this end, the County, through ACBHCS, is responsible for ensuring that persons with mental health disabilities have access to specialty mental health care services.  AHS, however, simply treats patients who have acute mental health needs.  DRC argues that any alleged extended treatment – by a few days – is "due to the lack of available community-based services."[23]

---

[19]  Dkt. No. 33 at 8:1-7 (quotations omitted).

[20]  *Brown v. District of Columbia*, 928 F.3d 1070, 1083-87 (D.C. Cir. 2019) (considering whether the District of Columbia had an effective *Olmstead*-plan of placing individuals with disabilities in less restrictive settings over time); *United States Am. v. Cty. of Los Angeles*, No. CV1505903DDPJEMX, 2016 WL 2885855, at *5 (C.D. Cal. May 17, 2016) (finding sufficient allegations that the county denied persons with disabilities in county jail meaningful access to discharge planning services); *State of Connecticut Office of Prot. & Advocacy for Persons with Disabilities v. Connecticut*, 706 F. Supp. 2d 266, 275-78 (D. Conn. 2010) (finding sufficient to survive a motion to dismiss allegations that the state systematically failed to inform the Proposed class of their right to community services, and failed to provide services with reasonable promptness.).

[21]  *Id.* ¶ 66 ("ACBHCS is the agency responsible for implementing Alameda County's mental health system, including executing the County's Medi-Cal Mental Health Plan and overseeing its Mental Health Services Act ("MHSA") planning and spending.").

[22]  *See* Cal. Welf. & Inst. Code §§ , 14714, 14680, 14684(a)(3) (West).

[23]  Compl. ¶ 85.

DEFENDANT ALAMEDA HEALTH SYSTEM'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

17042317.13

1   Indeed, it admits that "Plaintiff seeks relief that includes increased community-based services

2   provided by County Defendants."[24]  However, this Court cannot require AHS to develop such

3   programming and, AHS cannot coordinate discharge of patients to community-based programs

4   that do not exist.

5        Given this, as to AHS, DRC alleges a threatened injury that may never come to pass in

6   light of the hospital's limited function to treat patients, i.e., until the County creates additional

7   community-based programming, than there is no additional coordination to community-based

8   programming that AHS can complete.  Therefore, as pled, the issues before this Court are not fit

9   for adjudication.

10       **2.     DRC would not suffer hardship if its case against AHS is dismissed.**

11       Neither DRC nor DRC Constituents will suffer hardship if Plaintiff's complaint against

12   Defendant AHS is dismissed.  As to the County, DRC is not prevented from presenting its claims

13   in federal court to obtain community-based programming, nor is it otherwise prevented from

14   having its claims heard.

15       Here, the County provides, administers, and funds community-based mental health

16   services.  It designates which facility or service provider to use for evaluation and treatment of

17   individuals.[25]  The County also sets standards for the quality of care provided by these service

18   providers.[26]  Thus, a favorable decision against the County would result in granting DRC the

19   precise relief it seeks.

20       **B.     DRC Lacks Article III Standing Because As Pled, DRC Cannot Attribute Any
         Risk Of Unjustified Institutionalization To AHS**

21

22       A court has no subject matter jurisdiction to hear a claim if plaintiffs lack Article III

23   standing. [27]  DRC lacks associational standing because none of its members would otherwise have

24   / / /

25   / / /

26

27   [24] Dkt. No. 33, 9:22-26.
    [25] *See* Compl. ¶ 72.
    [26] *See* Cal. Welf. & Inst. Code §§ 14684(a)(3), 14714 Compl. ¶ 66.
28   [27] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016).

1  standing to sue in their own right.[28]  Its members would have standing to sue if he or she shows

2  "(1) injury-in-fact, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2)

3  causation in form of a 'fairly traceable' connection between the asserted injury-in-fact and the

4  alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the

5  injury can be remedied by the requested relief."

6  **1.     The hospital's short term treatment of patients does not support an
            ADA Title II claim.**

7

8  John George staff may admit, evaluate and assess the care appropriate for the needs of the

9  individual.[29]  Treatment is short-term and emergent.  By its own admission, DRC acknowledges

10  that "[m]any DRC Constituents spend fewer than twenty-four hours at the [hospital]."[30]  For those

11  transferred to the hospital's inpatient unit, the average stay is  nine days or less.[31]

12  DRC's challenge to 9-days of treatment at John George is not the long-term unjust

13  institutionalization that the Supreme Court contemplated in *Olmstead*. Instead, *Olmstead* ADA

14  Title II form of discrimination is characterized by long-term unjustified institutional isolation or

15  confinement of persons with disabilities for several years.[32]  Therefore, DRC fails to allege a Title

16  II *Olmstead* discrimination claim based on long-term unjustified institutional isolation or

17  confinement.

18  / / /

19  / / /

20  
---

21  [28]  *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (an association has
      standing to bring claims on behalf of its members if:  (1) its members would otherwise have

22  standing to sue in their own right; (2) the interests it seeks to protect are germane to the
      organization's purpose; and (3) neither the claim asserted nor the relief requested requires

23  participation of individual members in the lawsuit.).

24  [29]  Cal. Welf. & Inst. Code § 5150 (West).
     [30]  Compl. ¶ 81.

     [31]  Dkt. No. 33 at 5:2-4.

25  [32]  *Olmstead*, 527 U.S. at 593 (Plaintiffs were receiving long-term care at the state hospital for

26  years before filing ADA Title II claim); *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1319 (W.D.
     Wash. 2015) (nursing home resident was institutionalized for eight years prior to filing a claim of

27  discrimination under Olmstead ADA Title II); *Frederick L. v. Dep't of Pub. Welfare of Com. of
     Pennsylvania*, 364 F.3d 487 (3d Cir. 2004) (*Olmstead*-based class action in which class members

28  were patients at the State hospital admitted for a short-stay lasting 10 months and long-stays
     lasting over 12 years).

-9-                                    Case No. 20-cv-05256-CRB

1

2.   **DRC attempts to expand *Olmstead* ADA Title II liability to dictate patient care and supplant the opinions of medical professionals.**

2

3

a.   **DRC seeks to supplant the medical opinions of John George service providers for its own judgment of when to release patients.**

4

5      DRC attempts to expand *Olmstead* to create liability that has never existed before –

6   expanding ADA Title II to second guess patient care decisions and the opinions of medical

7   professionals.  In *Olmstead*, the Supreme Court warned against failing to consider the

8   recommendations of medical professionals.[33]  ADA Title II does not require community-based

9   programing for persons unable to handle or benefit from the community-based program.[34]  Rather,

10  it allows the public agency to "rely on the reasonable assessments of its own professionals in

11  determining whether an individual 'meets the essential eligibility requirements' for habitation in a

12  community-based program."[35]  As Justice Kennedy in concurrence writes, ***It is of central***

13  ***importance, then, that the courts apply today's decision with great deference to the medical***

14  ***decisions of the responsible, treating physicians and, as the Court makes clear, with appropriate***

15  ***funding to the program funding decisions of the state policy makers.***"[36]

16      Similarly, the Ninth Circuit has unequivocally held that "[t]he ADA prohibits

17  discrimination because of disability, ***not*** inadequate treatment for disability."[37]  While a medical

18  decision may be incorrect or inappropriate, it does not result in an ADA Title II violation.[38]  Under

19  ADA Title II and other public accommodation laws, it is not the province of DRC or the courts to

20  second guess medical and budgeting decisions, and to run a local hospital.

21      DRC claims that, on the one hand, it is an ADA Title II violation to treat patients at John

22

---

23  [33]  *Olmstead*, 527 U.S. at 602 (citing to *Sch. Bd. of Nassau Cty., Fla. v. Arline*, 480 U.S. 273, 288 (1987) ("[C]ourts normally should defer to the reasonable medical judgments of public health
24  officials.").
    [34]  *Id.* at 601.
25  [35]  *Id.* at 602.
    [36]  *Olmstead*, 527 U.S. at 610 (Kennedy, J., concurring) (emphasis added).
26  [37]  *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010); *Black v. Dep't of Mental Health*, 83 Cal. App. 4th 739 (2000) (in sustaining a demurrer without leave to amend as to the
27  State of California, finding *Olmstead* does not create a standard of care.) (emphasis and underlining added).
28  [38]  *See Black v. Dep't of Mental Health*, 83 Cal. App. 4th at 755.

DEFENDANT ALAMEDA HEALTH SYSTEM'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

George for up to 9-days, which it contends is too long.[39]  On the other hand, it claims that it is an *Olmstead* violation to discharge patients too early.[40]  Whipsawing a local hospital – it faces ADA Title II risk for treating patients a day or two long or releasing patients a day or two early – DRC asks this Court to enjoin AHS to "comply with its legal obligations."[41]  But to do so, DRC seeks from this Court that it supplant on a patient-by-patient basis the medical opinions of John George medical providers for the medical opinions of DRC.  Under DRC's theory, it and the Court should run John George and be the final arbiter of medical decisions for mental health patients needing short-term crisis treatment.

Presently, any decision to continue the treatment of a patient is made by John George medical professionals.  This must remain.  Individuals are admitted to the hospital for up to 72-hours for emergency mental health treatment when due to a mental health disorder, he or she is a danger to themselves or others, or is gravely disabled as a result of the mental health disorder.[42]  Following the 72-hour admission period, the patient may continue inpatient treatment on a voluntary basis.  For some patients, continued involuntary intensive treatment may be necessary.[43]  A person may be committed for an additional 14–day period for intensive treatment.[44]

The decision to discharge must also follow an assessment of the medical needs of the individual.  To further illustrate the importance of the medical assessment of medical professionals, if a dispute arises between the treating psychiatrist and other professional regarding whether to discharge the patient before the expiration of the 72-hour treatment period, only a psychiatrist can discharge the patient if he or she believes that the patient no longer requires evaluation or treatment. [45]

Because both admission to the hospital and subsequent discharge are dependent on the

---

[39]  Compl. ¶ 88.
[40]  Dkt. No. 33 at 5:19-25 (alleging that discharging DRC Constituents Rian Walter, Azizah Ahmad, KG, and MR were released without adequate or effective discharge.).
[41]  Dkt. No. 33 at 10:3-8.
[42]  Cal. Welf. & Inst. Code § 5150(a) (West).
[43]  *See* Cal. Welf. & Inst. Code § 5250 (West).
[44]  Cal. Welf. & Inst. Code § 5254 (West).
[45]  Cal. Welf. & Inst. Code § 5152(a) (West).

1    evaluation and assessment of treating medical professionals, it is not an ADA Title II violation, or

2    question of any other public accommodation law, if their assessment of any patient's length-of-

3    crisis treatment may be questioned by one or two days.  On the pleadings, this Court should heed

4    the warnings of the Supreme Court and reject DRC's invitation to supplant medical opinions by

5    the treating medical professionals.

6              **b.       DRC seeks to supplant the medical opinions of John George
                           service providers for its own judgment of where to release
7                          patients.**

8         DRC seeks to require that John George staff discharge patients to community-based

9    services.  DRC concludes that AHS violates ADA Title II by discharging DRC Constituents into

10   "homelessness."[46]  But DRC's allegations – releasing a patient for care back to the public – do not

11   support an *Olmstead* ADA Title II discrimination claim.  Indeed, Plaintiff does not cite to a single

12   case that holds a local public hospital liable under Title II for discharging a patient – whether the

13   patient is housing insecure or not – to his or her existing communities.

14        In fact, in his concurrence in *Olmstead*, Justice Kennedy writes "it is not the ADA's

15   mission to drive States to move institutionalized patients into an inappropriate setting, such as a

16   homeless shelter. . ."[47]

17        Accordingly, in discharging patients to a non-institutional setting, John George service

18   providers are exercising their medical judgment.

19        **C.       DRC Fails To State A Claim of Title II Discrimination Against AHS And Its
                      Complaint Should Be Dismissed**

20

21        A complaint should be dismissed for failure to state a claim under Rule 12(b)(6) when

22   there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a

23   cognizable legal theory. [48]  DRC has pled that AHS violates the integration mandate as set forth in

24   *Olmstead*," by "fail[ing] to provide discharge and treatment planning, or to coordinate with

25

---

26   [46]  Dkt. No. 33 at 14:11-12 ("Defendant AHS frequently discharges DRC Constituents from John
      George to homelessness."), 14:9-11 ("[b]y discharging DRC Constituents into homelessness,
27   Defendant AHS increases their risk of re-institutionalization.").
     [47]  *Olmstead*, 527 U.S. at 610.
28   [48]  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

17042317.13

1  Alameda County service providers."[49]  But as discussed above, John George medical providers

2  make decisions on admission and discharge according to the individual needs of the patient.

3  Because *Olmstead* does not mandate a standard of care, AHS cannot be liable for the judgment of

4  medical providers in prescribing mental health care treatment, nor any omission in treatment or the

5  treatment itself.

6         Moreover, missing from its complaint are plausible claims that a judgment against AHS

7  will solve the community-based placement it seeks.  DRC recognizes AHS cannot provide DRC

8  Constituents community-based programming and therefore seeks increased community-based

9  services from the County.[50]  But though it pleads that community-based programs do not

10  sufficiently yet exist and AHS cannot provide additional community-based services, it asks that

11  this Court require AHS to coordinate to services that "will exist in the future."[51]

12         Further, DRC's pleads, without legal support, that AHS violates the integration mandate

13  simply because it is an "interconnected" source of mental health services for DRC Constituents.

14  As noted above, DRC's opposition fails to cite to a single case holding a local hospital liable under

15  *Olmstead*  because it  provides mental health services.  DRC's claim that AHS, "together" with the

16  County is responsible to ensure that DRC Constituents receive mental health services in the most

17  integrated setting appropriate is conclusory and unsupported.

18         **D.      This Court Should Strike Related To Racial Disparities And COVID-19**

19         Rule 12(f) of the Federal Rules of Civil Procedure provides that the "court may strike from

20  a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

21  matter."[52]  Here, in an ADA Title II matter, Plaintiff's provocative allegations concerning COVID-

22  19 and raced-based disparities, as to disability discrimination, are immaterial as to the causes of

23  / / /

24  / / /

25

26  ─────────────────────

27  [49] *See* Dkt. No. 33 at 1:2-7, 10:17-19.
    [50] Dkt. No. 33 at 9:25-26.
    [51] *Id*. at 10:2.

28  [52] Fed. R. Civ. P. 12(f).

1    action against AHS.[53]  Evident from the face of the Complaint, they should be stricken.[54]

2         **E.      DRC's Exhibits May Not Be Considered In Support Of Its Opposition To**
             **AHS's Motion To Dismiss**
3

4         A court may decline to consider exhibits submitted in support of or opposition to a motion

5    to dismiss if they are not a proper subject of judicial notice.[55]

6         DRC asks this Court to take judicial notice of an unauthenticated Community-Based

7    Organization Master Contract between the County of Alameda and Alameda Health System.  Yet,

8    in its opposition, Plaintiff contends that "it would be premature to resolve any factual dispute" as

9    to the relevance of each contract.[56]  Thus, by DRC's own reasoning,  it would be improper for this

10   Court to take judicial notice of Plaintiff's Exhibit 1.

11        DRC also asks this Court to take judicial notice of a publication by the Substance Abuse

12   and Mental Health Services Administration, "Considerations for the Care and Treatment of Mental

13   and Substance Use Disorders in the COVID-19."  The publication is irrelevant to the matter at

14   hand as DRC seeks additional community-based programming from the County – not AHS.

15   Moreover, with this publication DRC seeks to prove that community-based services limit a

16   person's exposure to COVID-19.  The Court may take notice that this document was publically

17   available, but <u>not</u> whether the contents on the publication is true or any inferences drawn from it.[57]

18        This Court should also overrule DRC's objections to AHS's Request for Judicial Notice.

19   Specifically, this Court should overrule DRC's objection concerning Exhibits D, F-I.  Exhibit D,

20

21   [53]  *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005) (striking from the pleading
22   "immaterial" matter has no essential or important relationship to the claim for relief or defenses
     pleaded.).
23   [54]  *SST Sterling Swiss Tr. 1987 AG v. New Line Cinema, Corp.*, No. CV05-2835 DSF(VBKX),
     2005 WL 6141290, at *5 (C.D. Cal. Oct. 31, 2005) (granting motion to strike as allegations race-
24   based discrimination because none of the claims Plaintiffs bring against Defendants rely on or are
     supported by discriminatory treatment); *Mireskandari v. Daily Mail & Gen. Tr. PLC*, No.
25   CV1202943MMMFFMX, 2013 WL 12129642, at *5 (C.D. Cal. July 31, 2013) (granting motion
     to strike on the grounds that the allegations of criminal blackmail were immaterial and impertinent
26   because plaintiff does not allege a cause of action based on this purported conduct.).
     [55]  *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1021 (C.D. Cal. 2015).
27   [56]  Dkt. No. 33 at 20:11-17.
     [57]  *Gerritsen*, 112 F. Supp. 3d at 1029 (declining to take judicial notice of SEC filings to prove the
28   substance of Plaintiff's claims.).

17042317.13

AHS's enabling legislation, is not subject to reasonable dispute and is the proper subject of judicial notice.[58]  Next, Exhibits F-I are documents available on the Alameda County Behavioral Health Care Services' website and are not in dispute.[59]  Accordingly, the Court may take judicial notice of these documents.

### III.    CONCLUSION

DRC asks this Court to second guess and supplant the medical assessments of John George's medical staff for DRC's judgment.  According to DRC, under *Olmstead,* AHS violates ADA Title II if (a) the County (a different entity) fails to have sufficient community-based mental health programming, (b) if John George medical staff decisions differ from those of DRC, or (c) if by a few days, John George medical staff release patients too early, or too late.  DRC's legal position and attempted expansion of *Olmstead* liability are not supported.

For these reasons, Defendant AHS asks this Court to grant this motion to dismiss DRC's complaint against AHS in its entirety.

DATED:  November 24, 2020                          HANSON BRIDGETT LLP


                                                   By:      */s/ Gymmel M. Trembly*
                                                         KURT A. FRANKLIN
                                                         GYMMEL M. TREMBLY
                                                         Attorneys for Defendant
                                                         ALAMEDA HEALTH SYSTEM

---

[58]  *Shaw v. Lingen*, No. CV 19-2700-DOG (AGR), 2020 WL 4456661, at *1 fn. 1 (C.D. Cal. Apr. 21, 2020), report and recommendation adopted sub nom. *Shaw v. Lindgren*, No. CV 19-2700-DMG (AGR), 2020 WL 4455087 (C.D. Cal. Aug. 3, 2020) (taking judicial notice of Los Angeles County Ordinance establishing the Local Initiative Health Authority for Los Angeles County.)
[59]  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); DRC erroneously states that Exhibit I is not referenced in AHS's Request. *See* Dkt. No. 18 ¶ 9.

17042317.13