1  JORDAN KEARNEY (State Bar No. 305483)
   E-Mail:        jkearney@health-law.com
2  KATRINA A. PAGONIS (State Bar No. 262890)
   E-Mail:        kpagonis@health-law.com
3  **HOOPER, LUNDY & BOOKMAN, P.C.**
   101 Montgomery Street, 11th Floor
4  San Francisco, California 94104
   Telephone:     (415) 875-8500
5  Facsimile:     (415) 986-2157

6  LINDA RANDLETT KOLLAR (State Bar No. 126850)
   E-Mail:        lkollar@health-law.com
7  **HOOPER, LUNDY & BOOKMAN, P.C.**
   1875 Century Park East, Suite 1600
8  Los Angeles, CA 90067
   Telephone:     (310) 551-8194
9  Facsimile:     (310) 551-8181

10

11 Attorneys for COUNTY OF ALAMEDA and
   ALAMEDA COUNTY BEHAVIORAL
   HEALTH CARE SERVICES
12

13               **UNITED STATES DISTRICT COURT**

14               **NORTHERN DISTRICT OF CALIFORNIA**

15

16 DISABILITY RIGHTS CALIFORNIA, a      Case No. 3:20-cv-05256-CRB
   California nonprofit corporation,
17                                      **NOTICE AND MOTION TO DISMISS;**
              Plaintiff,                **MEMORANDUM IN SUPPORT**
18                                      **THEREOF**
       vs.
19                                      Judge:    Hon. Charles R. Breyer
   COUNTY OF ALAMEDA; ALAMEDA           Date:
20 COUNTY BEHAVIORAL HEALTH CARE        Time:
   SERVICES; and ALAMEDA HEALTH         Dept.:
21 SYSTEM,
                                        Trial Date:        None Set
22            Defendants.

23

24               <u>**NOTICE OF MOTION AND MOTION**</u>

25       PLEASE TAKE NOTICE that on January 28, 2021, at 10:00 a.m., or as soon thereafter as

26 the matter can be heard, in the courtroom of the Honorable Charles R. Breyer located at 450 Golden

27 Gate Avenue, 17th Floor, San Francisco, CA 94102, courtroom 6, Defendants County of Alameda

28 and Alameda County Behavioral Health Care Services ("County Defendants") will, and hereby

**HOOPER, LUNDY & BOOKMAN, P.C.**
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1  move to dismiss Plaintiff's claims against the County Defendants.

2      By this Motion, County Defendants seek an order dismissing Plaintiff's Complaint (ECF

3  No. 1) in the above-captioned action pursuant to Federal Rules of Civil Procedure 12(b)(1) and

4  12(b)(6). This Motion is based on this notice of motion and motion, the memorandum of points and

5  authorities below, the request for judicial notice filed herewith, the pleadings and papers on file in

6  this action, such other further evidence and argument as may be presented prior to, and at, the

7  hearing on this Motion.

8

9  Dated: December 23, 2019          HOOPER, LUNDY & BOOKMAN, P.C.

10

11                                  By:  _____/s/ Jordan Kearney_____

12                                           JORDAN KEARNEY
                                             KATRINA A. PAGONIS
13                                           LINDA RANDLETT KOLLAR

14                                  Attorneys for COUNTY OF ALAMEDA and
                                    ALAMEDA COUNTY BEHAVIORAL HEALTH
15                                  CARE SERVICES

16

17

18

19

20

21

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

7001633.6

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

NOTICE OF MOTION AND MOTION ........................................................................1

SUMMARY OF THE ARGUMENT.............................................................................6

STATEMENT OF THE ISSUES TO BE DECIDED .....................................................8

STATEMENT OF THE RELEVANT FACTS (PLAINTIFF'S ALLEGATIONS).........8

ARGUMENT .............................................................................................................9

I.      This Complaint Is Miscast As An *Olmstead* Action And Should Be Dismissed
        Under Rule 12(b)(6) For Failure To State A Claim. .........................................11

        A.      Plaintiff's Requested "Systemwide Assessment" Seeks To Fundamentally
                Alter Alameda County's Behavioral Health System..............................12

                1.      Plaintiff's Complaint Demands A Fundamental Alteration Of The
                        County's Behavioral Health System. .........................................12

                2.      Alameda's "Genuine, Comprehensive and Reasonable"
                        Commitment to Deinstitutionalization Should Not Be Disturbed. .............13

        B.      Plaintiff Presents No Qualified Individual With A Disability. ................14

        C.      Plaintiff Has Pleaded No Exemplar Of An Undue Institutionalization...................16

                1.      No Identified Constituent Face a Serious Risk of Institutionalization.........16

                2.      Necessary Inpatient Care Does Not Implicate *Olmstead*. ...........................16

        D.      Plaintiff Does Not Allege That Any Requested Service Is Available To
                Institutionalized Patients. ......................................................................17

II.     Plaintiff Has Not Established Standing To Pursue Injunctive Relief....................17

        A.      None Of The Exemplars Suffered An Injury-In-Fact That ADA Remedies............18

        B.      Any Alleged Harm Cannot Be Remedied By This Action. .....................20

III.    The Complaint Presents A Non-Justiciable Political Question Rather Than A Claim
        Of Unlawful Discrimination...............................................................21

IV.     County Defendants Are Not Liable For Defendant AHS's Conduct. ....................22

V.      Conclusion..............................................................................................22

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

7001633.6

1

## **TABLE OF AUTHORITIES**

2

**Page**

3

## **CASES**

4

*Arc of Wash. State Inc. v. Braddock*, 427 F.3d 615 (9th Cir. 2005).....................................10, 12, 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................................11

*Baker v. Carr* , 369 U.S. 186 (1962) ...............................................................................................21

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ...........................................................................15

*Brantley v. Maxwell-Jolly*, 656 F. Supp. 2d 1161 (N.D. Cal. 2009) ...................................11, 14, 16

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .......................................................................20

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ....................................................................18

*L.A. v. Lyons*, 461 U.S. 95, 107 n.8 (1983) ....................................................................................20

*Lujan v. Defs. of Wildlife*, 504 U.S. 561 (1992) ........................................................................19, 20

*M.R. v. Dreyfus*, 697 F.3d 706 (9th Cir. 2012)...........................................................................11, 16

*Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59 (2d Cir. 2012) ...............................................................18

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873 (9th Cir. 2009).........18

*Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032  (9th Cir. 2015) ...........................................18

*Olmstead v. L.C.*, 527 U.S. 581 (1999) .....................................................................................passim

*Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101 (9th Cir. 2003) .......................................................7, 18

*Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888  (N.D. Cal. 2015) ........................................18

*Sanchez v. Johnson*, 416 F.3d 1051 (9th Cir.2005)..................................................................10, 13

*Spence v. Clinton*, 942 F. Supp. 32 (D.D.C. 1996) ........................................................................21

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009).................................................................18, 20

*Townsend v. Quasim*, 328 F.3d 511 (9th Cir. 2003) ..................................................................passim

*Yazzie v. Hobbs*, 977 F.3d 964 (9th Cir. 2020) ..............................................................................19

*Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189 (2012) ......................................................21

**HOOPER, LUNDY & BOOKMAN, P.C.**
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**STATUTES**

2  28 Code of Federal Regulations section 35.130(d) ............................................................ 10

3  42 United States Code section 12131(2) ........................................................................... 15

4  Americans with Disabilities Act, Title II ................................................................... 6, 10

5  California Health and Safety Code section 101850(j) ..................................................... 22

6  California Welfare & Institutions Code section 5150 ......................................................... 9

7

8

**RULES**

9  28 Code of Federal Rules section 35.130(b)(7) ............................................................... 12

10  Federal Rules of Civil Procedure 12(b)(1) ............................................................ 7, 8, 18

11  Federal Rules of Civil Procedure 12(b)(6) ............................................................ 7, 8, 11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*HOOPER, LUNDY & BOOKMAN, P.C.*
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

7001633.6

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

## MEMORANDUM OF POINTS AND AUTHORITIES

## SUMMARY OF THE ARGUMENT

Defendants Alameda County (the "County") and Alameda County Behavioral Health Care Services ("ACBHCS") (collectively, the "County Defendants") provide behavioral health treatment and services to Alameda County residents, and ACBHCS administers specialty mental health services to Medi-Cal beneficiaries in the county. *See* Compl. ¶¶50-51, 66. ACBHCS's mission is to maximize the recovery, resilience, and wellness of all eligible residents who are developing or experiencing serious mental health, alcohol, or drug concerns.

Despite these efforts, Plaintiff Disability Rights California ("Plaintiff"), alleges that the burden of mental illness continues to be impossibly heavy, is made even more difficult by high levels of homelessness in the county, and is disproportionately experienced by Black residents. *Id.* ¶¶ 94-99. Most notably, Alameda County residents are placed on involuntary holds at a rate significantly above the state average. *Id.* ¶73. Many of these civil commitments occur at Defendant Alameda Health System's ("AHS") John George Psychiatric Hospital, where Plaintiff alleges conditions are poor and care coordination efforts at discharge are inadequate. *Id.* ¶80. Based on the high use of psychiatric hospitalizations (particularly involuntary holds), Plaintiff argues that the County Defendants have violated the integration mandate under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.*, as articulated in *Olmstead v. L.C.*, 527 U.S. 581 (1999). In other words, Plaintiff concludes from the high level of involuntary holds that the County offers insufficient community-based services and that such insufficiency is discriminatory.

Discrimination, however, cannot be pleaded at the societal level. It is an individualized issue that requires pleading that a person was qualified for a service, yet excluded from it based on disability. *Townsend v. Quasim*, 328 F.3d 511, 518 (9th Cir. 2003). Plaintiff attempts to make such a showing by presenting four exemplar constituents, each of whom has suffered through repeated involuntary holds and hospitalizations.

The facts pleaded as to these exemplars, however, neither state a claim for discrimination nor establish that the individuals would have standing in their own right to bring an *Olmstead*

7001633.6

1    action, as is required for Plaintiff to establish its associational standing. *Or. Advocacy Ctr. v. Mink*,

2    322 F.3d 1101, 1112 (9th Cir. 2003). None of the four exemplars is institutionalized. All have

3    been connected to community-based services, including two to the high-intensity Full Service

4    Programs ("FSPs") that Plaintiff indicates are the gold standard for community-based services.

5    There is no allegation that any of these patients' services will be reduced. Though Plaintiff alleges

6    more services are "needed," there is no factual support or medical opinion for that conclusion.

7    Neither is there any basis to conclude that any additional requested services are unavailable to

8    these patients or that, if requested, they have or would be refused to them based on scarcity. If this

9    Court were to grant the broad, mandatory injunction Plaintiff seeks, it is not even clear it would in

10   any way impact the services these patients are receiving.

11         Plaintiff's apparent goal, though, is not to redress discrimination against these exemplars;

12   it is to enlist this Court to create a new behavioral health system in the county. Putting aside the

13   question of whether the expanded behavioral health system it proposes has merit as a matter of

14   public policy, this Court is not the appropriate venue for these policy decisions. *Olmstead* does not

15   allow a plaintiff to demand a "fundamental alteration" to a public entity's healthcare system. The

16   long list of new and expanded services Plaintiff requests is a paradigmatic example of a

17   fundamental alteration. Further, County Defendants have demonstrated a "genuine, comprehensive

18   and reasonable" commitment to deinstitutionalization, including by increasing the budget for

19   behavioral health services by 55% last year, and by adding homelessness and housing supports,

20   new crisis programming, increased capacity in FSPs, seven new board and care homes, and

21   increased culturally-responsive services.

22         The County Defendants work tirelessly to alleviate the hardships Plaintiff identifies. The

23   policy decisions about just how they should allocate scarce resources are not best handled by the

24   courts. "It is not reasonable to read the ADA to permit court intervention in these decisions."

25   Olmstead, 527 U.S. at 612–13 (Kennedy, J., concurring). This Court should dismiss for lack of

26   standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

DEFENDANT ALAMEDA COUNTY & ACBHCS MOTION TO DISMISS

7001633.6

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

## STATEMENT OF THE ISSUES TO BE DECIDED

1.     Whether Plaintiff's Complaint must be dismissed for failure to state a claim under Federal Rules of Civil Procedure, Rule 12(b)(6) ("Rule 12(b)(6)")?

2.     Whether Plaintiff's Complaint must be dismissed for lack of subject matter jurisdiction under Federal Rules of Civil Procedure, Rule 12(b)(1) ("Rule 12(b)(1)")?

## STATEMENT OF THE RELEVANT FACTS (PLAINTIFF'S ALLEGATIONS)

Plaintiff serves as California's Protection and Advocacy ("P&A") system for individuals with disabilities, and filed this action on July 30, 2020 on behalf of Alameda County residents with serious mental health disabilities that are unnecessarily institutionalized or are at serious risk of being unnecessarily institutionalized. Compl. ¶¶19, 23. Plaintiff alleges that Alameda County residents are placed on involuntary holds at a rate significantly above the state average. *Id.* ¶73. Many of these civil commitments occur at Defendant AHS's John George Psychiatric Hospital, where Plaintiff alleges conditions are poor and care coordination efforts at discharge are inadequate. *Id.* ¶80. Plaintiff alleges that the County is responsible for providing mental health services to county residents, either directly or through contracted providers, and that ACBHCS implements the County's mental health system. *Id.* ¶50, 66.

Plaintiff does not allege that the County has or is planning to reduce any community-based mental health services. Rather, Plaintiff seeks a "systemwide assessment of the community-based service needs of DRC Constituents" (Compl. ¶148) and injunctive relief that would include the expansion or creation of multiple programs and service lines. The requested services include:

- Full Service Partnership ("FSP") programs, which provide "whatever it takes" to help high needs individuals, including many of the services listed below, *id.* ¶115;

- Assertive Community Treatment ("ACT") services 24 hours per day, 7 days a week, and "whatever services [constituents] need for as long as they need them," *id.* ¶116(a);

- Rehabilitative mental health services, which is a "broad category" of services, that include assessment and plan development, medication management, individual and group therapies, and education, *id.* ¶116(b);

- Intensive case management services, *id.* ¶116(c);

- Crisis services, including mobile crisis services and community-based residential crisis services, *id.* ¶¶116(d), 120;

- Substance use disorder outpatient and residential treatment, including, intensive case management, and dual-diagnosis and mobile treatment programs, *id.* ¶¶116(e), 121;

- Peer support services, *id.* ¶116(f);

- Supported employment and independent placement services, *id.* ¶116(g);

7001633.6

- Supported housing, including rental subsidies, assistance finding and securing housing, and services to support successful tenancy (*e.g.*, case management, independent living skills training, medication management, and home health aides), *id.* ¶122;

- Improvements in providing culturally competent care, *id.* ¶¶128-130; and

- Enhancements to linkages between John George Psychiatric Hospital and community services and the provision of additional care coordination services, *id.* ¶¶131-137.

Plaintiff's standing turns on allegations concerning four, non-party exemplar constituents, Rian Walter, Azizah Ahmad, KG, and MR. Compl. ¶¶11, 29-50, 100, 109, 127, 136, 138-40. All four exemplar constituents have received or are receiving community-based services. Mr. Walter has suffered a devastating series of involuntary commitments, psychiatric hospitalizations, and incarcerations. *Id.* ¶36. Mr. Walter is connected to an FSP program that "assisted him in securing housing," but Plaintiff alleges that "his shared housing situation does not meet his substance use disorder needs," and he has "been unable to get supported employment services from the County." *Id.* ¶39. Ms. Ahmad has been detained at John George under California Welfare & Institutions Code section 5150 ("Section 5150"). *Id.* ¶31. She fears a potential future involuntary admission if her condition deteriorates. *Id.* ¶34. Ms. Ahmad receives services at "an outpatient clinic in Alameda County," but Plaintiff alleges these are not "the intensive community services that she needs to help her manage her disability, such as day-program services, peer supports, and social services." *Id.* Like Mr. Walter, KG has a difficult and extensive history of involuntary commitments and psychiatric hospitalizations. *Id.* ¶41. KG received FSP services and had Section 8 housing, but lost her housing because "her FSP provider failed to engage and assist her." *Id.* ¶127. Plaintiff alleges she needs "adequate case management services and supportive housing." *Id.* ¶43. Lastly, MR has been detained twice at John George under Section 5150.  She has private health care coverage and is "receiving care from a psychologist and a psychiatrist." *Id.* ¶44-49.

## ARGUMENT

The goal of Plaintiff's Complaint is not to rectify discrimination that any identified person has suffered; it is to establish an entirely new behavioral health system for a population of people who are *already* receiving community-based services. This is a noble goal – and one that the County Defendants, who strive daily to provide and grow a network of providers notwithstanding significant financial and structural hurdles, certainly share. But in the end, this case presents a

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

7001633.6

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1   public policy debate and is not a *discrimination* suit under *Olmstead* and its progeny. For this

2   reason, Plaintiff fails to plead a cause of action, lacks standing to assert a claim, and presents non-

3   justiciable political questions that should be resolved by the political branches of government.

4         To state a claim under Title II of the ADA,[1] including under *Olmstead*, "a plaintiff must

5   show (1) he is a qualified individual with a disability; (2) he was either excluded from

6   participation in or denied the benefits of a public entity's services, programs, or activities or was

7   otherwise discriminated against by the public entity; (3) such exclusion, denial of benefits, or

8   discrimination was by reason of his disability." *Townsend*, 328 F.3d at 516 (internal quotation

9   marks and citation omitted). In *Olmstead*, the Supreme Court held that the unjustified isolation of

10  disabled persons can constitute a form of recognized discrimination in certain circumstances. 527

11  U.S. 581; *see also* 28 C.F.R. § 35.130(d) ("A public entity shall administer services . . . in the

12  most integrated setting appropriate to the needs of qualified persons with disabilities."). Under this

13  "integration mandate," "states are required to provide care in integrated environments for as many

14  disabled persons as is reasonably feasible, so long as such an environment is appropriate to their

15  mental-health needs." *Arc of Wash. State, Inc. v. Braddock*, 427 F.3d 615, 618 (9th Cir. 2005).

16        The integration mandate "has its own limitations." *Id.* A state is not required to make

17  "modifications [that] would fundamentally alter the nature of the service, program, or activity." *Id.*

18  "The Supreme Court has instructed courts to be sympathetic to fundamental alteration defenses,

19  and to give states 'leeway' in administering services for the disabled." *Id.* (*citing Olmstead,* 527

20  U.S. at 605). As a result, Courts "will not tinker with" comprehensive, effective programs for

21  providing care to the disabled. *Sanchez v. Johnson*, 416 F.3d 1051, 1067–68 (9th Cir.2005). Public

22  entities "are not required to create new programs that provide heretofore unprovided services to

23

24        [1] Because the elements of Plaintiffs' causes of action under Section 504 of the

25  Rehabilitation Act (29 U.S.C. §§ 794 *et seq.*), and California Government Code sections 11135
    and 11139 do not differ in relevant respects from those under Title II of the ADA (42 U.S.C.

26  §§ 12131 *et seq.*), Defendants arguments apply to all three causes of action with equal force. *See
    Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135. (9th Cir. 2001) (ADA and Rehabilitation Act);

27  *Thayer v. Marin Cty. Superior Court*, No. 18-CV-01505-SI, 2018 WL 5733653, at *3 n.2 (N.D.
    Cal. Oct. 30, 2018) (ADA and Cal. Gov't Code § 11135); *Cota v. Maxwell-Jolly*, 688 F. Supp. 2d

28  980 (N.D. Cal. 2010) (ADA and Cal. Gov't Code § 11139).

7001633.6

1    assist disabled persons." *Townsend*, 328 F.3d at 518.

2    **I.      This Complaint Is Miscast As An *Olmstead* Action And Should Be Dismissed Under**

3          **Rule 12(b)(6)[2] For Failure To State A Claim.**

4          Though styled as an *Olmstead* action, the Complaint does not fit within the *Olmstead*

5    framework because it does not seek to rectify a harm to specific persons by assuring access to

6    specific services their physicians have certified are necessary to keep them in the community. *See,*

7    *e.g., id.* at 1165. *Olmstead* actions remedy the inequity of requiring people with disabilities to live

8    in institutions so that they can receive medical care, when that same treatment could be provided

9    in the community. 527 U.S. at 601. The prototypical case – such as *Olmstead* itself – is brought by

10   an individual living in an institution. Others challenge cuts to programs that allow plaintiffs to

11   remain in the community. *See, e.g., M.R. v. Dreyfus*, 697 F.3d 706 (9th Cir. 2012); *Brantley v.*

12   *Maxwell-Jolly*, 656 F. Supp. 2d 1161 (N.D. Cal. 2009).

13         In contrast to the narrow-issued, person- or class-specific cases that fit under *Olmstead*,

14   this action seeks to turn the county's behavioral health system on its head, requesting the vast

15   implementation of multiple new and expanded programs. *See, infra,* Part I.A.1. Plaintiff's four

16   exemplar constituents are neither institutionalized nor at serious risk of institutionalization. All

17   four are or have been engaged in community-based services, and there is no allegation that any is

18   facing a reduction in services. The Complaint does not (1) identify *which* unavailable services are

19   required to prevent a hypothetical institutionalization (though seemingly different for each

20   constituent), (2) allege whether those services currently exist in Alameda, or (3) allege whether the

21   exemplar plaintiffs were ever denied those services. And it does not plead that any of the exemplar

22   constituents would qualify for any of the new services Plaintiffs argue should be offered.

23         ///

24         ///

25

26         ―――――――――――――――
         [2] To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient
27   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*
     *Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). When deciding a Rule 12(b)(6) motion, the
28   Court must accept the facts pleaded in the complaint as true. However, pleadings that "are no more
     than conclusions . . . are not entitled to the assumption of truth." *Id.* at 679.

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

**A.** **Plaintiff's Requested "Systemwide Assessment" Seeks To Fundamentally Alter Alameda County's Behavioral Health System.**

The integration mandate requires public entities make "reasonable modifications in policies, practices, or procedures" that are "necessary to avoid discrimination." *Arc of Wash*, 427 F.3d at 618 (*citing* 28 C.F.R. § 35.130(b)(7)). A public entity is *not* expected to make "modifications [that] would fundamentally alter the nature of the service, program, or activity" provided. 28 C.F.R. § 35.130(b)(7). Whether a modification is a fundamental alteration depends on "the cost of providing community-based care to the litigants…the range of services the State provides others with mental disabilities, and the State's obligations to mete out those services equitably." *Olmstead*, 527 U.S. at 597. Courts consider these factors "in view of the resources available." *Id*. When the public entity demonstrates a "genuine, comprehensive and reasonable" commitment to deinstitutionalization, courts do not interfere. *Arc of Wash.*, 427 F.3d at 620 (citation omitted).

1. Plaintiff's Complaint Demands A Fundamental Alteration Of The County's Behavioral Health System**.**

On the face of the Complaint, it is clear that the wide-ranging relief Plaintiff seeks would constitute a fundamental alteration of Alameda's behavioral health system. Plaintiff demands a "systemwide assessment of the community-based service needs of DRC Constituents" (Compl. ¶148) and the vast expansion of a range of existing services (*e.g.*, FSP programs and ACT services) or the creation of new programs and services lines, as detailed on pages 8 and 9, *supra*. Plaintiff's requested injunction would charge this Court with developing and prioritizing a menu of appropriate behavioral health services, supplanting the County's role in developing behavioral health policy. But *Olmstead* does not allow this. Instead, *Olmstead* recognizes that public entities must be able to "maintain a range of facilities for the care and treatment of persons with diverse mental disabilities," and "to administer services with an even hand." 527 U.S. at 597.

Rather than alleging disability discrimination, Plaintiff seeks to put the County's entire mental and behavioral health system on trial. The practical implications of adjudicating Plaintiffs' claims are insurmountable. For example, the impossibly broad discovery this case would require would divert resources from the provision of health care services, while the County is the primary

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1   local authority for responding to the COVID-19 pandemic and the associated financial crisis.

2   Where, as here, the Complaint seeks a remedy that would be so comprehensive as to constitute a

3   fundamental alteration, the Court should dismiss before subjecting Defendant to discovery.

4           2.     Alameda's "Genuine, Comprehensive and Reasonable" Commitment to

5                Deinstitutionalization Should Not Be Disturbed.

6         Courts "will not tinker with" a public entity's behavioral health delivery system where its

7   "commitment to deinstitutionalization is genuine, comprehensive and reasonable." *Arc of Wash.*,

8   427 F.3d at 621 (citations omitted). The Ninth Circuit has considered whether a public entity is

9   "genuinely and effectively in the process of deinstitutionalizing disabled persons with an even

10  hand." *Arc of Wash.*, 427 F.3d at 620 (citation omitted). The *Sanchez* Court refused to require the

11  state to increase funding to a program where the state had increased expenditures for individuals in

12  community settings over 10 years, reduced its institutionalized population over four years, and

13  applied for increases in the size of its waiver program. 416 F.3d at 1067. Similarly, in *Arc of*

14  *Washington*, plaintiffs sought to increase enrollment in Washington's waiver program. The Court

15  refused to modify the state's program because Washington's program was large and had increased

16  over the past 20 years, was full, allowed eligible persons to enroll as slots became available, and

17  had significantly reduced the size of the state's institutionalized population, and because its budget

18  increased at the same rate or more than other state agencies. 427 F.3d at 621–22. Like in *Arc of*

19  *Washington* and *Sanchez*, ACBHCS has increased expenditures for and expanded community

20  services. Here, judicially-noticeable documents demonstrate that the County Defendants have

21  satisfied this standard.

22        First, the California Department of Health Care Services ("DHCS") has certified that

23  ACBHCS maintains and monitors an adequate network of providers to deliver specialty

24  behavioral health services. RJN, Ex. A, pp.3, 35. DHCS made this determination after

25  "conduct[ing] a comprehensive review of [ACBHCS's] provider network" pursuant to federal

26  regulations and considering compliance areas including network composition and capacity, system

27  infrastructure, and language assistance capacity. *Id*. at 3. And, ACBHCS's network is growing.

28  For State Fiscal Year 2020-21, ACBHCS set aside $136,071,268 in budget authority, a nearly

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1   55% increase over the previous three-year plan budget. RJN, Ex. B, p.11. The budget increase

2   directly responds to "additional homelessness and housing supports, new crisis programming,

3   increased capacity in [FSP programming], additional school-based supports and increased

4   culturally responsive services." *Id*.

5       ACBHCS increased community-based programming and services. In Fiscal Year 2019–20,

6   100 additional slots became available in the FSP program to assist individuals who are homeless

7   and struggling with severe mental illness. RJN, Ex. C, p.8. Six additional licensed board and care

8   homes have been brought on (with a seventh site pending) to provide services and stable housing

9   for people with disabilities. *Id*., p.9. Moreover, ACBHCS is building the capacity of its

10   programming through quality initiatives. One of ACBHCS's six quality goals is to promote

11   "effective communication and coordination of care." RJN, Ex. D, p.3.

12       ACBHCS's initiatives to improve size, scope, and quality of services demonstrate the

13   County Defendants' "genuine, comprehensive and reasonable" commitment to providing care in

14   the most integrated setting. So demonstrated, the Court should not interfere with the County's

15   policy determinations. "It is not reasonable to read the ADA to permit court intervention in these

16   decisions." *Olmstead*, 527 U.S. 581 at 612–13 (Kennedy, J., concurring) (noting that "[g]rave

17   constitutional concerns are raised when a federal court is given the authority to review the State's

18   choices in basic matters such as establishing or declining to establish new programs").

19       **B.**    **Plaintiff Presents No Qualified Individual With A Disability.**

20       Though Plaintiff has requested creation of a menu of new or expanded services (*see, supra*,

21   Part I.A.1), it has not pleaded any facts to support that any individual actually qualifies for

22   additional community services (*i.e.,* that these services would be medically necessary), as the

23   caselaw requires. Only a "qualified individual with a disability" may bring an *Olmstead* action.[3]

24   *Townsend,* 328 F.3d at 516. A "qualified individual" is someone who "meets the essential

25   eligibility requirements for the receipt of services or the participation in programs or activities

26

27         [3] In *Brantley*, for example, each plaintiff presented an "Individual Plan of Care (IPC)" specifying "the types of services the applicant requires and the amount of time each week those

28   services are necessary." 656 F. Supp. 2d at 1165; *see also, Olmstead,* 527 U.S. at 583-84 (relying on the state's own professionals' determination that plaintiffs qualified for services).

7001633.6

1  provided by a public entity." 42 U.S.C. § 12131(2). In any setting, a person is only eligible to

2  receive behavioral health services that are medically necessary.

3      For the four exemplar constituents, Plaintiff fails to provide (1) factual support for the legal

4  conclusion that any additional community services are necessary (let alone that any physician has

5  certified these services are necessary to keep them in the community) or (2) a clear articulation of

6  what services each might actually require. At most, Plaintiff summarily concludes that some

7  (vague) group of services are needed:

8  - MR "is receiving care from a psychologist and a psychiatrist" (Compl. ¶48), but there is
   no allegation she needs a service she is not receiving.

9

10 - Mr. Walter is connected to an FSP program that "assisted him in securing housing," but
   Plaintiff concludes (without supporting allegations) that the housing "does not meet his
   substance use disorder needs" and that he has been unable to get employment services

11   "and other needed services." *Id.* ¶¶34, 39.

12 - Ms. Ahmad receives services at "an outpatient clinic in Alameda County," but Plaintiff
   summarily concludes that these are not "the intensive community services that she

13   needs to help her manage her disability, such as day-program services, peer supports,
   and social services." *Id.* ¶34.

14

15 - KG received FSP services and had Section 8 housing, but lost her housing because "her
   FSP provider failed to engage and assist her." *Id.* ¶127. The Complaint is silent on what
   community services KG currently receives, but summarily concludes she needs

16   "adequate case management services and supportive housing." *Id.* ¶43.

17 Moreover, Plaintiff requests the County Defendants add many services to their network that <u>no</u>

18 exemplar constituents even seek. *Compare* above summary of exemplars *with* list of requested

19 services in Part I.A.1, *supra. Olmstead* clearly does not stretch that far.

20      It is not enough for Plaintiff to argue that there *must be* at least *some* constituents that

21 would qualify for each of the requested services, as Plaintiff seeks to do by arguing that

22 hospitalizations in Alameda County exceed the state average. Compl. ¶73. This is a *discrimination*

23 action that can only be brought on behalf of "qualified" individuals. Those individuals must be

24 pleaded. Otherwise, Plaintiff has stated only a "legal conclusion couched as a factual allegation,"

25 which is not entitled to the presumption of truth. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555

26 (2007) (citation omitted).

27      ///

28

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

**C.** **Plaintiff Has Pleaded No Exemplar Of An Undue Institutionalization.**

1. No Identified Constituent Face a Serious Risk of Institutionalization.

As no exemplar constituent is institutionalized,[4] they must face a "serious risk of institutionalization" to state a cause of action. *M.R.*, 697 F.3d at 734. This is a high standard. Cases that meet it feature, for example, an "elimination of services that have enabled Plaintiffs to remain in the community" when that elimination "causes them to enter an institution immediately, or . . . causes them to decline . . . and eventually enter an institution." *Id.* Courts rely on physician certifications to establish that need. *See, e.g., Brantley*, 656 F. Supp. 2d at 1173 (physician certified that, without services State proposed to eliminate, plaintiffs faced "imminent risk of institutionalization, hospitalization, or death").

Plaintiffs fail to plead such a risk. All four exemplar constituents are in the community and are receiving or have previously received community services, and there is no allegation that any of those services will be eliminated. Moreover, Plaintiff does not make a single allegation that a medical professional has opined on any constituent's risk of institutionalization (or that any given service would alleviate that risk). Rather, Plaintiff relies on mere subjective concerns about the *possibility* of requiring inpatient care. For example, as to Ms. Ahmad, the Complaint asserts there is a "serious risk she will be re-institutionalized at John George *if her condition deteriorates*" and that she is "*terrified of the prospect* of relapsing and being involuntarily admitted." Compl. ¶34 (emphasis added). Her fears, however, cannot establish a cognizable "serious risk of institutionalization," as is required under *Olmstead*.

2. Necessary Inpatient Care Does Not Implicate *Olmstead*.

Plaintiff also errs in assuming that necessary care – including involuntary commitments[5] (*i.e.,* the services provided at John George, Compl. ¶72) or medically necessary inpatient

---

[4] To the extent Plaintiff seeks to bring this action on behalf of any institutionalized individual (*see* Compl. ¶ 1, Req. Relief ¶3.a), this is flatly not pleaded and must be dismissed.

[5] Involuntary commitments require a finding of probable cause to take a person "into custody" because the person is a danger to himself or others, or is gravely disabled. Section 5150. These are not *inappropriate* institutionalizations. *See Bryant v. Steele*, 25 F. Supp. 3d 233, 242-43 (E.D.N.Y. 2014) ("[A]n accusation that an individual was involuntarily committed on the basis of a mental disability cannot serve as a basis . . . for disability discrimination because such a finding

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

psychiatric institutionalizations – trigger *Olmstead*. *Olmstead* only prohibits *inappropriate* institutionalizations, which occur when the "State's own professionals determined that community-based treatment would be appropriate." 527 U.S. at 584. Though Plaintiff pleads each exemplar had an involuntary hold or a psychiatric stay (Compl. ¶¶33, 34 (Ahmad), ¶¶36, 100 (Walter), ¶41 (KG), ¶45 (MR)), it does not plead these services could have been provided in the community. To the extent Plaintiff argues that other patients held at John George do not need to be institutionalized (*id.* ¶¶77–79), it is not enough to allege that some people might have a cause of action. Plaintiff must identify at least one constituent who has suffered actionable discrimination.

**D.     Plaintiff Does Not Allege That Any Requested Service Is Available To Institutionalized Patients.**

Plaintiff further fails to state a claim because it has not alleged that the cornucopia of outpatient services it demands are currently available in an institutional setting. The disparate treatment actionable under *Olmstead* occurs when services that could be appropriately provided in a community setting are only available in an institution. In contrast, here, Plaintiff seeks more or better services without alleging that any of these services currently exist in an institution. The County is not required to "create new programs that provide heretofore unprovided services to assist disabled persons." *Townsend*, 328 F.3d at 518; *see also Olmstead,* 527 U.S. at 603, n.14 ("States must adhere to the ADA's nondiscrimination requirement *with regard to the services they in fact provide.*") (emphasis added, citation omitted).

Rather than alleging discrimination, Plaintiff's sweeping allegations are better construed as a call for a higher standard of care, but this is not an actionable claim for relief. *Olmstead*, 527 U.S. at 603 n.14 ("We do not in this opinion hold that the ADA imposes on the States a standard of care for whatever medical services [they] render, or that the ADA requires States to provide a certain level of benefits to individuals with disabilities.") (citation omitted).

**II.     Plaintiff Has Not Established Standing To Pursue Injunctive Relief.**

would convert every involuntary commitment transport into a civil rights violation."). Nor does a public entity unlawfully discriminate when an individual has to wait a short time for a community bed following proper institutionalization. *See Olmstead,* 527 U.S. at 606.

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1   To plead associational standing, Plaintiff must plead that at least one constituent has

2   "standing to present, in his or her own right, the claim (or type of claim) pleaded by the

3   association." *Mink*, 322 F.3d at 1112 (citation omitted).[6] It is not enough to summarily plead that

4   there exists some hypothetical member who would have standing, as Plaintiff seeks to do by

5   defining "Constituent" to mean "adult Alameda County residents who have serious mental health

6   disabilities and who are unnecessarily segregated into the County's psychiatric institutions or are

7   at serious risk of being needlessly segregated into these institutions" (*i.e.,* adult constituents with

8   standing.) Compl. ¶4. Where the defendant must know the "identity of a particular member to

9   understand and respond to" the claimed injury, the organization must "identify by name the

10  member or members injured."  *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th

11  Cir. 2015). This is certainly the case here, where the injury sounds in discrimination, requiring, as

12  a threshold matter, a determination of whether an individual even qualified for the services sought.

13  Plaintiff has not presented an exemplar constituent who would have standing to bring an

14  *Olmstead* action. Standing requires "(1) an injury in fact, (2) a causal relationship between the

15  injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a

16  favorable decision." *Mink*, 322 F.3d at 1108 (citation omitted). The bar for establishing standing is

17  particularly high here because Plaintiff seeks injunctive relief in the form of a mandatory

18  injunction—a form of relief that is "particularly disfavored" and only awarded where "extreme or

19  very serious damage will result." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571

20  F.3d 873, 879 (9th Cir. 2009).

21  **A.      None Of The Exemplars Suffered An Injury-In-Fact That ADA Remedies.**

22  "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury

23  in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural

24  or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation omitted); *see*

25

26  ────────────
    [6] Claims for which a plaintiff lacks standing must be dismissed for lack of subject matter
27  jurisdiction. *See* Rule 12(b)(1). Plaintiff has the burden of establishing jurisdiction. Plaintiff must
    establish standing for each claim and against each defendant. *DaimlerChrysler Corp. v. Cuno*, 547
28  U.S. 332 (2006); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59 (2d Cir. 2012); *Reniger v. Hyundai
    Motor Am.*, 122 F. Supp. 3d 888, 895 (N.D. Cal. 2015).

1  *also Lujan v. Defs. of Wildlife*, 504 U.S. 561, 564 (1992) (citation omitted) ("'some day'

2  intentions—without any description of concrete plans, or indeed even any specification of *when*

3  the some day will be—do not support a finding of the 'actual or imminent' injury that our cases

4  require"). Speculative allegations are insufficient to show the a sufficient likelihood of a future

5  injury that is concrete and particularized. *E.g.*, *Yazzie v. Hobbs*, 977 F.3d 964, 966-67 (9th Cir.

6  2020) (generalized allegations concerning an intent to vote failed to establish injury in fact flowing

7  from the receipt deadline for mail-in ballots). Plaintiff has not pleaded that any of the exemplar

8  constituents have suffered an injury-in-fact of the type recognized by the ADA.

9      Ms. MR: MR is connected to community services and makes no allegations that she needs

10  services that are not available to her or that she is institutionalized or at risk of institutionalization.

11  Compl. ¶48. She plainly lacks standing against the County Defendants.

12      Mr. Walter and Ms. KG: Mr. Walter and KG have each suffered a devastating series of

13  involuntary commitments and psychiatric hospitalizations. They have also received high-intensity

14  community services by participating in FSPs, which provide "whatever it takes to promote

15  recovery for targeted, high needs individuals." *Id.* ¶¶39, 127 n.4. Both have been connected to

16  housing, though KG lost her housing when her FSP "failed to engage and assist her." *Id.* ¶¶39,

17  127. Mr. Walter seeks alternative housing, employment support, and "other needed services." *Id.*

18  ¶39. But Plaintiff alleges that all of these requested services fall within the scope of an FSP, with

19  which he is already connected. *Id.* ¶116. KG seeks "adequate case management services and

20  supported housing." *Id.* ¶43. It is unclear whether she currently receives FSP services, which

21  would incorporate both. There is no allegation, let alone a concrete and particularized one, that her

22  disconnection from any services is due to unavailability of those services in Alameda County.

23      It is clear that the County Defendants have made the highest level of community-based

24  services available to both Mr. Walter and KG – indeed County Defendants have provided each

25  with the program Plaintiff touts most highly. There is no allegation that these services will be

26  reduced. It is not clear how either exemplar has been injured by any alleged discrimination.

27      Ms. Ahmad: Ms. Ahmad is also connected to community services. *Id.* ¶34. To the extent

28  she now seeks additional services, there are no allegations to support the conclusion that those

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

Case No. 3:20-cv-05256-CRB

DEFENDANT ALAMEDA COUNTY & ACBHCS MOTION TO DISMISS

7001633.6

services are necessary (*i.e.,* that she is "qualified" to receive those services), or that the County

Defendants have failed to make them available to her. And even without these services, Plaintiff

has not pleaded that Ms. Ahmad is institutionalized or at risk of institutionalization. Ms. Ahmad is

"terrified *of the prospect* of relapsing and being involuntarily admitted." *Id*. She is concerned that

"*if her condition deteriorates*" she will be "involuntarily admitted."[7] *Id.* (emphasis added). This is

not the kind of concrete harm that a court can remedy through mandatory injunctive relief. *L.A. v.*

*Lyons*, 461 U.S. 95, 107 n.8 (1983) (a plaintiff's "subjective apprehensions" do not demonstrate

the required likelihood of future injury because it is only "the *reality* of the threat of repeated

injury that is relevant to the standing inquiry.")

**B.      Any Alleged Harm Cannot Be Remedied By This Action.**

Because Plaintiff failed to plead injury-in-fact for any identified constituent, it lacks

associational standing. No further analysis is required. Plaintiff has also failed to plead causation

and redressability—an injury that is "fairly traceable to the challenged action of the defendant,"

*Summers*, 555 U.S. at 493; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413, (2013), and that

likely "will be redressed by a favorable decision." *Lujan,* 504 U.S. at 561 (citation omitted).

Plaintiff concedes that the County provides community-based services (in fact, each

exemplar constituent receives such services), but Plaintiff argues that constituents should receive

additional services. Plaintiff has not pleaded that those additional services are even unavailable in

Alameda County and has, therefore, failed to plead that any lack of access to services is fairly

traceable to the conduct of the County Defendants. There are plenty of reasons why a patient

might not receive a service that is nonetheless available. For example, a service might not be

provided because a treating provider has not determined it to be medically necessary, a point on

which the Complaint is conspicuously silent. Where, as here, there is no allegation that services

are even unavailable to the exemplar constituents, an injunction to increase service availability is

not likely to redress any injury they may have suffered.

Plaintiff's failure to plead causation and redressability is particularly blatant as to Ms. MR.

---

[7] Note also that the "institutionalization" about which Ms. Ahmad is concerned – an involuntary admission – does not implicate *Olmstead. See, supra,* Part I.C.2.

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1   The Complaint alleges that MR is currently privately insured. Plaintiffs plead no basis for the

2   conclusion that the County Defendants caused any deficits in the private services to which she has

3   access and which are reimbursed by her private insurance.

4          Plaintiff cannot state a claim as an association without identifying at least one member

5   who has standing to bring the claim. Having identified none, Plaintiff's Complaint must fail.

6   **III.    The Complaint Presents A Non-Justiciable Political Question Rather Than A Claim**

7          **Of Unlawful Discrimination.**

8          Plaintiff's Complaint should be dismissed because it stretches *Olmstead* to the point of

9   presenting a non-justiciable political question. The Supreme Court has delineated six

10  circumstances in which an issue might present a political question, and this case presents at least

11  the second and third of these factors, namely "a lack of judicially discoverable and manageable

12  standards for resolving it" and "the impossibility of deciding without an initial policy

13  determination of a kind clearly for nonjudicial discretion." *Baker v. Carr*, 369 U.S. 186, 217

14  (1962). "The presence of any one of these factors is sufficient to render an issue nonjusticiable."

15  *Spence v. Clinton*, 942 F. Supp. 32, 39 (D.D.C. 1996).

16         There are no judicially discoverable and manageable standards for resolving Plaintiff's

17  claims because, as discussed in Part I.A, *supra*, Plaintiff's requested remedy – a "systemwide

18  assessment of the community-based service needs" of people with mental illness in Alameda

19  County – sounds in public policy rather than discrimination, making the ADA's standards

20  inapposite. Resolving Plaintiff's claims requires policy determinations about management of

21  scarce public resources to develop, implement, and manage appropriate behavioral health services

22  programs. *See, e.g.*, *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 204-05 (2012)

23  (Sotomayor, J., concurring) ("The second and third *Baker* factors reflect circumstances in which a

24  dispute calls for decision making beyond courts' competence. . . When a court is given no

25  standard by which to adjudicate a dispute, or cannot resolve a dispute in the absence of a yet-

26  unmade policy determination charged to a political branch, resolution of the suit is beyond the

27  judicial role envisioned by Article III."). Plaintiff uses the language of discrimination to address

28  core public policy concerns that are properly left to the political branches, and this Court should

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1    decline Plaintiff's invitation to exceed the judicial role envisioned by Article III.

2    **IV.     County Defendants Are Not Liable For Defendant AHS's Conduct.**

3          Finally, Plaintiff has not pleaded sufficient facts to demonstrate how or why the County

4    Defendants are liable for any alleged actions taken by Defendant AHS here. Instead, the

5    Complaint attempts to paint the parties as an interconnected behavioral health system and glosses

6    over the fact that Defendants are separate legal and governmental entities. *E.g.*, Compl. ¶¶53, 110.

7    However, California Health and Safety Code section 101850(j) makes clear that, as a hospital

8    authority, AHS is "a legal entity" and "a government entity separate and apart from the county,

9    and shall not be considered to be an agency, division, or department of the county. The hospital

10   authority shall not be governed by, nor be subject to, the charter of the county and shall not be

11   subject to policies or operational rules of the county . . . ."

12         Perhaps recognizing the legal separateness of the Defendants, Plaintiff also alleges that

13   "Defendant Alameda Health System . . . was created by and is an instrumentality of Alameda

14   County," Compl. ¶154, and that the County "administer[s its] mental health system—directly or

15   through contractual or other arrangements, including through the County and ACBHCS's contract

16   with AHS . . . ." *Id.* ¶172; *see also id.* ¶¶57, 63, 162, 169. However, each of these statements are

17   merely "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 679.

18   Plaintiff does not specifically allege how Defendant AHS is "an instrumentality of Alameda

19   County," nor the operative agreement by which the County "administer[s]" any services, program,

20   or activities here.[8] This legal conclusions couched as fact are "not entitled to the assumption of

21   truth." *Iqbal*, 556 U.S. at 679.[9]

22   **V.     Conclusion**

23         For the reasons discussed herein, this Court should dismiss Plaintiff's Complaint.

24   _____

25        [8] Similarly, Plaintiff fails to allege with any specificity the operative agreement alleged
     between ACBHCS and Telecare Corporation. *See* Compl. ¶ 86.

26        [9] Moreover, Plaintiff's allegations related to any contractual relationship between the
27   Defendants, if true, instead demonstrate that the County was taking all necessary steps to ensure
     that its contractors were aware of "*Olmstead*-related obligations." Compl. ¶ 133 (alleging
     contractual provisions related to *Olmstead*). The Complaint is devoid of any factual allegations
28   that the County Defendants' *contractual arrangement* resulted in any harm to Plaintiff's
     constituents.

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1

2    DATED: November 24, 2020          HOOPER, LUNDY & BOOKMAN, P.C.

3

4                                      By:      /s/ Jordan Kearney

5                                            JORDAN KEARNEY
                                             KATRINA A. PAGONIS
6                                            LINDA RANDLETT KOLLAR

7                                      Attorneys for COUNTY OF ALAMEDA and
                                       ALAMEDA COUNTY BEHAVIORAL HEALTH
8                                      CARE SERVICES

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157