JORDAN KEARNEY (State Bar No. 305483)
E-Mail:        jkearney@health-law.com
KATRINA A. PAGONIS (State Bar No. 262890)
E-Mail:        kpagonis@health-law.com
**HOOPER, LUNDY & BOOKMAN, P.C.**
101 Montgomery Street, 11th Floor
San Francisco, California 94104
Telephone:    (415) 875-8500
Facsimile:    (415) 986-2157

LINDA RANDLETT KOLLAR (State Bar No. 126850)
E-Mail:        lkollar@health-law.com
**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 Century Park East, Suite 1600
Los Angeles, CA 90067
Telephone:    (310) 551-8194
Facsimile:    (310) 551-8181

Attorneys for COUNTY OF ALAMEDA and
ALAMEDA COUNTY BEHAVIORAL
HEALTH CARE SERVICES

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISABILITY RIGHTS CALIFORNIA, a California nonprofit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF ALAMEDA and ALAMEDA COUNTY BEHAVIORAL HEALTH CARE SERVICES,<br><br>Defendants. | Case No. 3:20-cv-05256-CRB<br><br>**NOTICE AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM IN SUPPORT THEREOF**<br><br>Judge:     Hon. Charles R. Breyer<br>Date:      June 4, 2021<br>Time:      10:00 a.m.<br>Dept.:     Courtroom 6<br><br>Trial Date:              None Set |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on June 4, 2021, at 10:00 a.m., or as soon thereafter as the matter can be heard, in the courtroom of the Honorable Charles R. Breyer located at 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102, courtroom 6, Defendants County of Alameda and Alameda County Behavioral Health Care Services ("Defendants") will, and hereby move to

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1   dismiss Plaintiff's claims.

2          By this Motion, Defendants seek an order dismissing Plaintiff's First Amended Complaint

3   (ECF No. 52) in the above-captioned action pursuant to Federal Rule of Civil Procedure 12(b)(6).

4   This Motion is based on this notice of motion and motion, the memorandum of points and authorities

5   below, the request for judicial notice filed herewith, the pleadings and papers on file in this action,

6   such other further evidence and argument as may be presented prior to, and at, the hearing on this

7   Motion.

8

9   Dated: April 1, 2021                            HOOPER, LUNDY & BOOKMAN, P.C.

10

11
                                                    By:    _/s/ Jordan Kearney_
12                                                         JORDAN KEARNEY
                                                          KATRINA A. PAGONIS
13                                                      LINDA RANDLETT KOLLAR

14                                                  Attorneys for COUNTY OF ALAMEDA and
                                                   ALAMEDA COUNTY BEHAVIORAL HEALTH
15                                                 CARE SERVICES

16

17

18

19

20

21

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

7054443.10

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ........................................................................1

SUMMARY OF THE ARGUMENT.............................................................................7

I. STATEMENT OF THE ISSUES TO BE DECIDED..................................................9

II. STATEMENT OF THE RELEVANT FACTS (PLAINTIFF'S ALLEGATIONS) ....................9

    A.    The "Requested Services" Encompass All Potential Mental Health Services...........9

    B.    All of the Requested Services Are Available In The Community. ..........................10

    C.    Only Narrow Services Are Currently Available In Institutions. ..............................10

    D.    Plaintiff Pleads No New Facts About The Three Exemplar Constituents. ..............10

III. ARGUMENT ........................................................................................................11

    A.    The FAC Is Miscast As An *Olmstead* Action And Should Be Dismissed
        Under Rule 12(b)(6) For Failure To State A Claim. .................................................12

        1.    Plaintiff Has Not Alleged The Denial Of Any Community-Based
            Service That Is Available In An Institution. ..................................................12

            a.    Plaintiff Fails to Plead Which Services Are Available In
                Institutions. ..................................................................................13

            b.    The Requested Services Are Offered In The Community. ..............13

        2.    Plaintiff Has Not Pleaded That Treatment Professionals Have
            Determined That Requested Services Are Appropriate In The
            Community. ..................................................................................15

            a.    Plaintiff Pleads No Undue Institutionalization.............................15

            b.    Plaintiff Does Not Plead That Any Specific Community
                 Services Are Appropriate. ............................................................16

        3.    Plaintiff's Requested Relief Would Fundamentally Alter the
            County's Behavioral Health System. ..........................................................18

            a.    Plaintiff's Complaint Demands A Fundamental Alteration Of
                 The County's Behavioral Health System. ....................................19

            b.    Alameda's "Genuine, Comprehensive and Reasonable"
                 Commitment To Deinstitutionalization Should Not Be
                 Disturbed. ....................................................................................20

    B.    Plaintiff's Policy-Oriented Claims Exceed The Bounds Of *Olmstead* And
        Raise Non-Justiciable Political Questions.................................................................22

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

Case No. 3:20-cv-05256-CRB
ALAMEDA COUNTY'S AND ACBHCS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

7054443.10

1    C.    Further Amendment Would be Futile. ...................................................................23

2  IV. CONCLUSION ..............................................................................................................23

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**HOOPER, LUNDY & BOOKMAN, P.C.**
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

7054443.10

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

# TABLE OF AUTHORITIES

**Page**

## CASES

*Arc of Wash. State Inc. v. Braddock*,
    427 F.3d 615 (9th Cir. 2005) .............................................................. 8, 18, 19, 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................... 12

*Baker v. Carr*,
    369 U.S. 186 (1962) ............................................................................... 8, 22, 23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 555 (2007) ................................................................................. 18

*Brantley v. Maxwell-Jolly*,
    656 F. Supp. 2d 1161 (N.D. Cal. 2009) ................................................. 8, 16, 17, 18

*Bryant v. Steele*,
    25 F. Supp. 3d 233 (E.D.N.Y. 2014) ................................................................ 15

*Cooper v. Simpson Strong-Tie Co., Inc.*,
    460 F. Supp. 3d 894 (N.D. Cal. 2020) .............................................................. 17

*Disability Advocates, Inc. v. N.Y. Coalition for Quality Assisted Living, Inc.*,
    675 F.3d 149 (2d Cir. 2012) ............................................................................. 18

*Herguan University v. Immigration and Customs Enforcement*,
    258 F. Supp. 3d 1050 (N.D. Cal. 2017) ............................................................ 11

*Joseph S. v. Hogan*,
    561 F. Supp.2d 280 (E.D.N.Y. 2008) ............................................................... 18

*Leadsinger, Inc. v. BMG Music Pub.*,
    512 F.3d 522 (9th Cir. 2008) ........................................................................... 23

*Love v. Marriott Ownership Resorts, Inc.*,
    No. 20-CV-07523-CRB, 2021 WL 1176674 (N.D. Cal. Mar. 29, 2021)............... 23

*M.R. v. Dreyfus*,
    697 F.3d 706 (9th Cir. 2012) ..................................................................... 8, 13

*Orgone Cap. III, LLC v. Daubenspeck*,
    912 F.3d 1039 (7th Cir. 2019) ......................................................................... 11

*Rivera v. Peri & Sons Farms, Inc.*,
    735 F.3d 892 (9th Cir. 2013) ........................................................................... 19

*Sanchez v. Johnson*,
    416 F.3d 1051 (9th Cir. 2005) ..................................................................... 8, 20

Case No. 3:20-cv-05256-CRB

ALAMEDA COUNTY'S AND ACBHCS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

7054443.10

*Soo Park v. Thompson*,
    851 F.3d 910 (9th Cir. 2017) ............................................................................ 17

*Spence v. Clinton*,
    942 F. Supp. 32 (D.D.C. 1996) ........................................................................ 22

*Townsend v. Quasim*,
    328 F.3d 511 (9th Cir. 2003) ................................................................ 7, 14, 15

*Zivotofsky ex rel. Zivotofsky v. Clinton*,
    566 U.S. 189 (2012) ......................................................................................... 23

## FEDERAL STATUTES

42 U.S.C. § 12131(2) ............................................................................................... 15

## STATE STATUTES

Cal. Welf. & Instit. Code § 5150 ..................................................................... 10, 15, 21

## REGULATIONS

28 C.F.R. § 35.130(b)(7) ..................................................................................... 18, 19

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

ALAMEDA COUNTY'S AND ACBHCS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

7054443.10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

## MEMORANDUM OF POINTS AND AUTHORITIES

## SUMMARY OF THE ARGUMENT

Like the original Complaint (ECF No. 1), the First Amended Complaint ("FAC," ECF No. 52) raises questions of public policy, the structuring of public services, and the allocation of public resources. Although Defendants County of Alameda and Alameda County Behavioral Health Care Services ("ACBHCS") (collectively, "Defendants" or the "County") share the goal of providing behavioral health services, including in the community-based setting, policy questions about those services are not properly challenged under *Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581 (1999).

In granting Defendants' prior Motion to Dismiss, the Court was clear that, to survive a subsequent motion, Plaintiff Disability Rights California ("Plaintiff") would need to shift its focus from the County's "need to expand and strengthen community based services" and "alleged shortcomings in reducing institutionalization" and instead "plausibly state a disability discrimination claim." Order Granting Mots. Dismiss & Den. Mot. Strike 20, Jan. 21, 2021, ECF No. 50 ("Order").

> Because *Olmstead* applies "where the issue is the *location* of services, not *whether* services will be provided, *Townsend* [*v. Quasim*, 328 F.3d 511, 517 (9th Cir. 2003)], DRC must point to services that could be provided in the community, or a risk that DRC constituents will need to endure institutionalization to receive specific services that could be provided in the community. Although DRC's complaint requests that Defendants relocate services "from institutions to community-based settings," Complaint ¶ 112, DRC does not plead with particularity which services the County Defendants must relocate. DRC must also plausibly allege that the relevant entity's treatment professionals have determined that community placement for receipt of these specific services is appropriate; that the relevant patients do not oppose such treatment; and that the community placement (with respect to these specific services) can be reasonably accommodated.

*Id.*, p.19. Plaintiff pleads none of this, and the FAC remains fatally deficient.

Plaintiff has wholly failed to add any factual allegation of any service offered in an institution that is not provided in the community. Though Plaintiff argues community-based services are offered at "insufficient levels," it fails to identify even a single instance in which a person allegedly needed and did not receive such services. *Cf. M.R. v. Dreyfus*, 697 F.3d 706,

ALAMEDA COUNTY'S AND ACBHCS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1    724, 733 (9th Cir. 2012) (holding that it would be discriminatory to offer personal care services in

2    an institutional setting but not in the home setting).  To the contrary, Plaintiff acknowledges that

3    *every* outpatient service it seeks is currently offered in the community.

4         Neither has Plaintiff plausibly alleged that "the relevant entity's treatment professionals

5    have determined that community placement for receipt of these specific services is appropriate."

6    Order 19; *Cf. Brantley v. Maxwell-Jolly,* 656 F. Supp. 2d 1161 (N.D. Cal. 2009) (relying on each

7    plaintiff's care plan specifying appropriate services).  Rather than plead facts, Plaintiff relies on a

8    repeated statement that "upon information and belief" the same list of requested services is

9    appropriate for each constituent.  This is plainly not enough.

10        If anything, Plaintiff's allegations demonstrate that the County's mental health services

11   and offerings are *more* extensive in an outpatient setting than in an inpatient setting.  Unlike in

12   *Olmstead*, where the plaintiffs were forced to live for many years in an institution to receive

13   mental health services, long-term institutionalization is not an issue in Alameda County.  *See* FAC

14   ¶ 105 (average length of stay for hospitalized patients at John George is eight days and for post-

15   acute stays at Villa Fairmont is four months).  The County's community-based service delivery is

16   part of an overall "commitment to deinstitutionalization [that] is genuine, comprehensive and

17   reasonable," which should not be disrupted.  *Arc of Wash. State Inc. v. Braddock*, 427 F.3d 615,

18   621 (9th Cir. 2005); *Sanchez v. Johnson*, 416 F.3d 1051, 1067 (9th Cir. 2005) (same).  Judicial

19   intervention under *Olmstead* is thus unwarranted in this case.

20        Because, after a years-long investigation and multiple pleadings, Plaintiff has still failed to

21   plead the elements of an *Olmstead* action, instead relying on an expansive and unsupported view

22   of *Olmstead* that would require the Court to engage in policy-making best left to the political

23   branches, *see Baker v. Carr*, 369 U.S. 186, 217 (1962), this Court should dismiss the FAC with

24   prejudice.

25

26

27

28

# I. STATEMENT OF THE ISSUES TO BE DECIDED

1.      Whether Plaintiff's Complaint must be dismissed for failure to state a claim under Federal Rules of Civil Procedure, Rule 12(b)(6) ("Rule 12(b)(6)")?

## II. STATEMENT OF THE RELEVANT FACTS (PLAINTIFF'S ALLEGATIONS)

Though disguised as a discrimination suit, this action is a call to expand and improve community-based services across-the-board in Alameda County.  Plaintiff seeks to force the County to provide community-based services "in a quantity and manner" to prevent adverse outcomes.  FAC ¶ 132(b).  Specifically Plaintiff seeks to expand the following services: rehabilitative mental health services including medication support services, intensive case management, psychiatric crisis services, substance use disorder treatment, and residential services (collectively, the "Requested Services").  FAC ¶¶ 61-62.  One way to provide the Requested Services in the community is through Full Service Partnerships ("FSP") (FAC ¶ 63), which typically follow the Assertive Community Treatment ("ACT") model.

## A.      The "Requested Services" Encompass All Potential Mental Health Services.

The Requested Services, here, are defined in a way to swallow the whole of mental health treatment, making it impossible to compare the services available in institutional and community settings.  Though Plaintiff has worked to streamline its summary of its Requested Services to a single phrase (*i.e.*, "rehabilitative mental health services including medication support services, intensive case management, psychiatric crisis services, substance use disorder treatment, and residential services") and repeats that phrase over and over (FAC ¶¶ 5, 26, 30, 31, 35, 38, 40, 41, 61, 75, 79, 82, 132), the services that Plaintiff requests the County provide are just as broad as what was requested in the original Complaint and remain just as elusive.

In fact, it is difficult to envision a mental health service that would not fall within one of Plaintiff's listed broad categories of services.  "Rehabilitative mental health services," for example, includes "assessment and plan development, medication support services, therapies, interventions, and education designed to restore, maintain, or increase independence and self-sufficiency, including employment" and "peer support services."  FAC ¶ 61(a).  And "substance use disorder treatment" includes "medication assisted therapy . . . , outpatient and residential

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

7054443.10

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1  treatment, counseling and therapy, and peer support services."  FAC ¶ 62.

2  **B.  All of the Requested Services Are Available In The Community.**

3  Plaintiff admits that *all of the Requested Services are already available in the community*

4  (FAC ¶ 61), including the most intensive services (FAC ¶ 90).  Rather, Plaintiff argues that the

5  County fails to provide the community-based services "in a quantity and manner" to prevent

6  institutionalizations.  FAC ¶ 132(b).  Specifically, FSP services "fail to reach" constituents who

7  need them, and crisis services "have inadequate capacity, hours of operation, and geographic

8  accessibility."  FAC ¶ 88.

9  **C.  Only Narrow Services Are Currently Available In Institutions.**

10  Alameda County does not have a long-term inpatient psychiatric facility, and Plaintiff does

11  not allege otherwise.  The FAC alleges institutional care is temporary and occurs in three settings:

12  • John George's Psychiatric Emergency Services Unit ("PES") "provides 24-hour emergency psychiatric care, seven days a week" and is the only facility in the county to do so.  FAC ¶ 72.  Under California's civil commitment laws, a person may be detained at John George's PES *for up to 72 hours* if she is gravely disabled or a danger to self or others.  FAC ¶ 69, n. 9; Cal. Welf. Inst. Code § 5150(a).  "Most DRC Constituents admitted to the PES unit are discharged to the community."  FAC ¶ 77.

16  • Approximately 25% of those detained to the PES unit are hospitalized in John George's locked inpatient unit.  FAC ¶ 79.  The average length of stay in John George's hospital for DRC Constituents who are homeless is eight days.  FAC. ¶ 105.

17  • Villa Fairmont is a 96-bed, locked "sub-acute" mental health facility.  FAC ¶ 82.  The average length of stay is four months.  FAC ¶ 105.

19  Plaintiff concludes, with no supporting facts, that the Requested Services are available for

20  patients in the hospital at John George and at Villa Fairmont.  FAC ¶¶ 79, 82.  They "may" be

21  available at John George's PES.  FAC ¶ 75.

22  **D.  Plaintiff Pleads No New Facts About The Three Exemplar Constituents.**

23  Plaintiff's three exemplar constituents have each been either detained or hospitalized (the

24  FAC does not specify) at John George on many occasions.  FAC ¶¶ 29, 34, 40.  Rian Walter was a

25  patient in Villa Fairmont's subacute unit on four occasions over a sixteen-year period (FAC ¶ 29),

26  and KG had one stay at Villa Fairmont (FAC ¶ 34).  There is no allegation that any detention at

27  John George was improper (*i.e.,* that the requirements under Cal. Welf. & Inst. Code § 5150 were

28  not satisfied), nor is there any allegation that the temporary stays at Villa Fairmont (or John

George's hospital, to the extent there were any) were not medically necessary.

As to each constituent, DRC alleges a nearly identical recitation of the elements of an *Olmstead* action with no factual support:

- Each person "received rehabilitative mental health services including medication support services, intensive case management, crisis services . . . and residential services" when they were institutionalized. FAC ¶¶ 30, 35, 40. Mr. Walter also received "substance abuse treatment." FAC ¶¶ 30.

- At some point, the County "failed to provide" each exemplar constituent with needed mental health services. FAC ¶¶ 30, 35, 40. Though Plaintiff alleges the County "failed" to provide the constituents these services, it does allege the services were requested and denied or were otherwise unavailable. The FAC does not elaborate on why or how any missed connection occurred.

- "Upon information and belief, mental health professionals, including mental health professionals employed by Defendants or their contractors, have determined that it is appropriate to provide the following services to [the constituent] in a community setting:  rehabilitative mental health services, including medication support services, intensive case management, crisis services . . . and residential services." FAC ¶¶ 31, 38, 41.  On information and belief, Mr. Walter also requires "substance abuse treatment." FAC ¶¶ 30.

Plaintiff has admitted that each exemplar constituent has access to community-based services.  The FAC acknowledges the County previously provided Mr. Walter with community-based services, including housing support. FAC ¶¶ 31, 93.  Plaintiff's original Complaint[1] makes clear that Mr. Walter was connected to the highest level of outpatient care, FSP, which includes all of the services he requests.  Compl. ¶¶ 34, 39.  KG has also received FSP services and housing (Compl. ¶ 127), and Ms. Ahmad was connected to outpatient services (Compl. ¶ 34).

## III. ARGUMENT

Each of the pleading deficits addressed below are symptoms of one problem: Plaintiff has attempted to stretch *Olmstead* too far.  *Olmstead* is not an avenue for reimagining or expanding the County's behavioral health system.  It does not offer the opportunity to create the ideal system of care or even require an adequate care network.  *Olmstead*, 527 U.S. at 603 n.14.  <u>*Olmstead* actions can only remedy discrimination in the *setting* in which care is provided.</u>  Like Plaintiff's

---

[1] *Herguan University v. Immigration and Customs Enforcement*, 258 F. Supp. 3d 1050, 1064 (N.D. Cal. 2017) (finding that emails attached to the original complaint could be considered in deciding a motion to dismiss the amended complaint); *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1048 (7th Cir. 2019) (finding the district court properly considered the original complaint in dismissing an amended complaint).

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

7054443.10

1   original Complaint, the FAC improperly "focuses on Defendants' need to expand and strengthen

2   community based services so that fewer County residents are institutionalized," and in fact seeks

3   an order requiring the County to provide the Requested Services "in a quantity and manner that

4   prevents unnecessary institutionalization."  *Compare* Order 20 *with* FAC ¶ 132(b).

5       In the end, this case presents a public policy debate and is not a *discrimination* suit under

6   *Olmstead* and its progeny.  For this reason, Plaintiff fails to plead a cause of action and presents

7   non-justiciable political questions that should be resolved by the political branches of government.

8   **A.      The FAC Is Miscast As An *Olmstead* Action And Should Be Dismissed Under Rule**

9   **        12(b)(6)[2] For Failure To State A Claim.**

10      Plaintiff has failed to plead an *Olmstead* violation because (1) it argues for expanded and

11  improved community based services rather than plausibly alleging that any service is being

12  provided in institutional settings that could be, but is not, provided in the community; (2) it pleads

13  no facts to support that treatment professionals determined that community placement is

14  appropriate; and (3) the service expansion demanded cannot be reasonably accommodated and

15  would constitute a fundamental alteration of the County's mental health system.  The FAC should

16  be dismissed.

17      1.      Plaintiff Has Not Alleged The Denial Of Any Community-Based Service That Is

18              Available In An Institution.

19      The first step in pleading an *Olmstead* action is to "point to services that could be provided

20  in the community, or a risk that DRC constituents will need to endure institutionalization to

21  receive specific services that could be provided in the community."  Order 19.  As this Court held,

22  DRC must "plead with particularity which services the County Defendants must relocate" from an

23  institution to the community.  *Id.; see Olmstead*, 527 U.S. at 593–94 (plaintiffs were forced to

24  reside in a state hospital to receive care that could be appropriately provided in the community);

25

26      [2] To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient
    factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*
27  *Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). When deciding a Rule 12(b)(6) motion, the
    Court must accept the facts pleaded in the complaint as true. However, pleadings that "are no more
28  than conclusions . . . are not entitled to the assumption of truth." *Id.* at 679.

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1    *M.R.*, 697 F.3d at 724 (finding an *Olmstead* violation when the state refused to provide certain

2    specific personal care services, which were paid for in a skilled nursing facility but could also be

3    provided at home).  The FAC adds no facts to meet this burden.

4              a.         *Plaintiff Fails to Plead Which Services Are Available In Institutions.*

5         The Requested Services, here, are defined so as to encompass nearly every conceivable

6    mental health service.  *See supra* Part II.A.  Despite this Court's conclusion that Plaintiff's

7    original Complaint did "not plead with particularity which services the County Defendants must

8    relocate" (Order 19) and thus did not plausibly allege an *Olmstead* violation, Plaintiff's FAC

9    continues to repeat this error.  In brief, Plaintiff's FAC summarily concludes that each "[Exemplar

10   Constituent] received rehabilitative mental health services including medication support services,

11   intensive case management, crisis services . . . and residential services" when institutionalized

12   (FAC ¶¶ 30, 35, 40) and that patients receive the Requested Services at John George's inpatient

13   units and Villa Fairmont's sub-acute unit (FAC ¶¶ 79, 82) and patients "*may* receive" the

14   Requested Services in John George's PES (FAC ¶ 75).

15        This is not enough.  Plaintiffs have simply alleged that the County offers general inpatient

16   mental health services, repeatedly invoking a list of Requested Services that encompasses virtually

17   any mental health service, without identifying any inpatient service that is not available in the

18   community.  In the end, these conclusory allegations do not put the County on notice of what

19   services are even at issue here.[3]  The FAC fails to state a cause of action under *Olmstead* for this

20   reason alone.

21              b.         *The Requested Services Are Offered In The Community.*

22        Plaintiff freely admits that *the Requested Services are already available in the community.*

23   FAC ¶ 61.  Even the most intensive services identified in the FAC – FSP and supported housing

24   services – are currently available in Alameda County.  FAC ¶ 90.  Plaintiff's FAC describes an

25

26        [3] Further, in many respects, the conclusion that the Requested Services are available in an
     institution is implausible on its face.  For example, Plaintiff alleges "residential services," which it
27   defines to mean "a rental subsidy" and "services to support the individual's successful tenancy"
     are available in an institution.  FAC ¶¶ 30, 35, 40, 62.  These services are obviously <u>not</u> provided
28   in a 72-hour detention, a hospitalization (with an average length of stay of eight days, FAC ¶ 105),
     or in a post-acute setting (with an average-length of stay of four months, *id.*).

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1   unfortunate and high rate of civil commitment in Alameda County and an elevated risk of

2   institutionalization (*e.g.*, FAC ¶¶ 83–86), and then goes on to describe community-based services

3   and their value (*e.g.*, FAC ¶¶ 87–95).  It does not allege *any* services that are limited to the

4   inpatient setting.

5   　　　If anything, Plaintiff's allegations lead to the conclusion that the County's mental health

6   services and offerings are *more* extensive in an outpatient setting than in an inpatient setting.

7   Unlike in *Olmstead*, where the plaintiffs spent several years in an institution to receive mental

8   health services, Alameda County residents primarily receive community-based mental health

9   services and do not experience long-term institutionalization.  *See* FAC ¶ 105 (average length of

10  stay for hospitalized patients at John George is eight days and for post-acute stays at Villa

11  Fairmont is four months).  In fact, Plaintiff's allegations concede that each exemplar constituent

12  was repeatedly discharged to the community.  *E.g.*, FAC ¶¶ 30, 35, 40.  In the most recent data

13  published by the California Department of Health Care Services ("DHCS"), the County did not

14  provide 30-day intensive inpatient treatment to *any* resident, but at least 2,908 individuals received

15  these services statewide.  RJN, Ex. A, p.5.  And the County has limited capacity for sub-acute

16  care—Villa Fairmont has 96 beds.  FAC ¶ 82.  In contrast, the County added 100 new slots to the

17  FSP programs in Fiscal Year 2019-20.  RJN, Ex. B, pp.14-15.  These allegations and judicially

18  noticeable facts are consistent with the County prioritizing care in the least restrictive setting (the

19  community) rather than long-term institutional care, which is directly at odds with an *Olmstead*

20  violation.  Order 19 (*Olmstead* "does not provide a remedy for when government entities could

21  generally do more to keep people from being institutionalized."); *Townsend v. Quasim*, 328 F.3d

22  511, 518 (9th Cir. 2003) (states are not required to "create new programs that provide heretofore

23  unprovided services to assist disabled persons.").

24  　　　Along these lines, Plaintiff fails to point to even one example in which a DRC Constituent

25  was not able to access services because services were not available in the community.  Though

26  Plaintiff alleges that the County "failed to provide" certain undisclosed mental health services to

27  each of the three exemplar constituents, it is undisputed that those services are in fact offered in

28  the community.  FAC ¶¶ 30, 37, 42.  Of course, Plaintiff can make no such claim because Plaintiff

Case No. 3:20-cv-05256-CRB

ALAMEDA COUNTY'S AND ACBHCS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1   has admitted that all of the exemplar constituents have access to community-based services.  Mr.

2   Walter was provided community-based services, including housing support.  FAC ¶¶ 31, 93.  Mr.

3   Walter was connected to the highest level of outpatient care, FSP, which includes all of the

4   services he requests. Compl. ¶¶ 34, 39.  KG also received FSP services and housing (Compl.

5   ¶ 127), and Ms. Ahmad was connected to outpatient services (Compl. ¶ 34).

6       Rather than alleging discrimination, Plaintiff's sweeping allegations are better construed as

7   a call to "expand and strengthen community-based services" (Order 20), but this is not an

8   actionable claim for relief.  *Olmstead*, 527 U.S. at 603 n.14 ("We do not in this opinion hold that

9   the ADA imposes on the States a standard of care for whatever medical services [they] render, or

10  that the ADA requires States to provide a certain level of benefits to individuals with disabilities.")

11  (citation omitted).

12      2.   Plaintiff Has Not Pleaded That Treatment Professionals Have Determined That

13          Requested Services Are Appropriate In The Community.

14      Plaintiff has not pleaded any facts to support that any individual actually qualifies for

15  additional, specific community services that they are not receiving, as the case law requires. Only

16  a "qualified individual with a disability" may bring an *Olmstead* action.  *Townsend,* 328 F.3d at

17  516.  A "qualified individual" is someone who "meets the essential eligibility requirements for the

18  receipt of services or the participation in programs or activities provided by a public entity."  42

19  U.S.C. § 12131(2).  To meet this standard, Plaintiff must allege that "the relevant entity's

20  treatment professionals have determined that community placement for receipt of these specific

21  services is appropriate."  Order 19-20.

22          a.   *Plaintiff Pleads No Undue Institutionalization.*

23      The "institutional" services alleged here are involuntary detentions[4] (*i.e.,* the services

24

25      [4] Involuntary detentions require a finding of probable cause to take a person "into custody"
    because the person is a danger to himself or others, or is gravely disabled.  Cal. Welf. & Inst.
26  § 5150.  These are not *inappropriate* institutionalizations. *See Bryant v. Steele*, 25 F. Supp. 3d
    233, 242-43 (E.D.N.Y. 2014) ("[A]n accusation that an individual was involuntarily committed on
27  the basis of a mental disability cannot serve as a basis . . . for disability discrimination because
    such a finding would convert every involuntary commitment transport into a civil rights
28  violation.").  Nor does a public entity unlawfully discriminate when an individual has to wait a
    short time for a community placement following proper detention. *See Olmstead,* 527 U.S. at 606.

provided at John George's PES, FAC ¶ 69) and short-term psychiatric institutionalizations, which are provided at a time of acute psychological crisis. Plaintiff does not plead that these institutionalizations were unnecessary at the time. Rather, Plaintiff erroneously assumes that necessary care in an institutional setting – even avoidable necessary care – triggers *Olmstead*. *Olmstead* prohibits "undue" or "unjustified" placement or retention in an institution. *See* 527 U.S. at 601-02 ("We emphasize that nothing in the ADA or its implementing regulations condones termination of institutional settings for persons unable to handle or benefit from community settings."). It is not the case, as Plaintiff seemingly presumes, that repeated detentions and hospitalizations alone trigger *Olmstead*. To the contrary, it is critical that patients who need inpatient care can access it, and that care should not be disrupted.

> b.    *Plaintiff Does Not Plead That Any Specific Community Services Are Appropriate.*

Plaintiff's FAC also fails because it fails to plead any facts to support that any individual community-based service would be appropriate for a particular constituent, such that a constituent would be qualified to receive that service. Plaintiff relies only on the repeated statement that: "*Upon information and belief*, mental health professionals, including mental health professionals employed by Defendants or their contractors, have determined that it is appropriate to provide the following services to [the constituent] in a community setting: rehabilitative mental health services, including medication support services, intensive case management, crisis services…and residential services." FAC ¶¶ 31, 38, 41, 66.[5] Plaintiff entirely fails to provide (1) factual support for the conclusion that any additional community services are necessary (let alone that any physician has certified these services are necessary to prevent institutionalizations) or (2) a clear articulation of what services each might actually require, instead asserting (implausibly) that "all or virtually all" DRC Constituents are eligible for all the Requested Services. FAC ¶ 66. *Cf. Brantley v. Maxwell-Jolly*, 656 F. Supp. 2d 1161, 1165 (N.D. Cal. 2009) (plaintiffs provided

---

[5] The FAC also alleges that, on information and belief, Mr. Walter also requires "substance abuse treatment." FAC ¶ 30. This itself is non-specific, as Plaintiff defines "substance abuse treatment" to include "individual and group services including medication assisted therapy . . . , outpatient and residential treatment, counseling and therapy, and peer support services." *Id.* ¶ 62.

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1   "Individual Plan of Care (IPC)" specifying "the types of services the applicant requires and the

2   amount of time each week those services are necessary.").

3          Plaintiff cannot satisfy its requirement to plead an element by pleading that, on information

4   and belief, the element is satisfied.  The Ninth Circuit will only allow a plaintiff to plead on

5   information and belief "where the facts are peculiarly within the possession and control of the

6   defendant or where the belief is based on factual information that makes the inference of

7   culpability plausible."  *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017); *Cooper v.*

8   *Simpson Strong-Tie Co., Inc.*, 460 F. Supp. 3d 894, 907 (N.D. Cal. 2020) (pleading on information

9   and belief is improper where "all the relevant information is either within Plaintiffs' knowledge or

10  possession, or if it isn't, Plaintiffs are best positioned to obtain it.").  Here, information about the

11  medical needs of the exemplar constituents is not in Defendants' possession and is most accessible

12  by the exemplar constituents themselves and their statutorily-appointed representatives (FAC

13  ¶¶ 17–19) who are bringing this action on their behalf.

14         Instead of pleading new facts, Plaintiff treats its FAC as a motion for reconsideration,

15  citing to guidance from the U.S. Department of Justice ("DOJ") and out-of-circuit case law which

16  stand for the proposition that an *Olmstead* plaintiff does not need to provide evidence that the state

17  or public entity's treating professionals have found the care to be appropriate, but can instead rely

18  on determinations from their own treating professional or other relevant sources.  FAC ¶¶ 52-53,

19  n. 4.  Plaintiff's legal citations should not change the Court's holding that Plaintiff must plead

20  "that the relevant entity's treatment professionals have determined that community placement for

21  receipt of these specific services is appropriate."  Order 19–20.

22         The Court's holding, here, is directly supported by the Supreme Court's decision in

23  *Olmstead*, which itself relied on the determination of the state's own treatment professionals to

24  establish that the plaintiffs were qualified for community-based care.  527 U.S. at 603.  In-district

25  case law also supports such a determination.  In *Brantley*, for example, each plaintiff presented

26  "medical history and physical information from their personal physician . . . and . . . a three-day

27  assessment performed by a multi-disciplinary team of clinicians including physicians, registered

28  nurses, social workers, physical therapists, recreational therapists and dieticians, among others."

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

17                                          Case No. 3:20-cv-05256-CRB

656 F. Supp. 2d at 1165.

The Court is, of course, not bound by out-of-district authority to the contrary.  In any case, Plaintiff's cited authority is distinguishable because the cases and guidance contemplate pleading significant factual support that the services would be appropriate, and, here, Plaintiff provides _no_ such facts.  DOJ guidance suggests that a plaintiff could plead evidence from "their own treatment providers, from community-based organizations that provide services to people with disabilities outside of institutional settings, or from another relevant source."[6]  The cases Plaintiff cites also require factual support that services are appropriate.  *Joseph S. v. Hogan*, 561 F. Supp.2d 280, 290–91 (E.D.N.Y. 2008) (relying on allegations that "a mental health professional evaluated" the plaintiff); *Disability Advocs., Inc. v. Paterson*, 653 F. Supp.2d 184, 258–59 (E.D.N.Y. 2009), rev'd on other grounds sub nom. *Disability Advocates, Inc. v. N.Y. Coalition for Quality Assisted Living, Inc.*, 675 F.3d 149 (2d Cir. 2012)) (relying on "persuasive evidence from a variety of sources," including an "Assessment Project" that defendants themselves commissioned).  No similar factual allegations are present here.

Simply put, it is not clear which constituents need which services that are appropriate but cannot be obtained in the community.  This is a *discrimination* action that can only be brought on behalf of "qualified" individuals.  Those individuals and what specifically they need, as described by treating clinicians, must be pleaded.  Otherwise, Plaintiff has stated only a "legal conclusion couched as a factual allegation," which is not entitled to the presumption of truth.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted).

3.    Plaintiff's Requested Relief Would Fundamentally Alter the County's Behavioral Health System.

The integration mandate requires public entities make "reasonable modifications in policies, practices, or procedures" that are "necessary to avoid discrimination."  *Arc of Wash. State Inc. v. Braddock*, 427 F.3d 615, 618 (9th Cir 2005) (*citing* 28 C.F.R. § 35.130(b)(7)).  A public entity is

---

[6] Statement of the Department of Justice on Enforcement of the Integration Mandate of Title II of the Americans with Disabilities Act and *Olmstead v. L.C.*, *available at* https://www.ada.gov/olmstead/q&a_olmstead.htm (Feb. 25, 2020).

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1   _not_ expected to make "modifications [that] would fundamentally alter the nature of the service,

2   program, or activity" provided.  28 C.F.R. § 35.130(b)(7).  Whether a modification is a fundamental

3   alteration depends on "the cost of providing community-based care to the litigants, . . . the range of

4   services the State provides others with mental disabilities, and the State's obligations to mete out

5   those services equitably."  _Olmstead_, 527 U.S. at 597.  Courts consider these factors "in view of the

6   resources available."  _Id_. When the public entity demonstrates a "genuine, comprehensive and

7   reasonable" commitment to deinstitutionalization, the courts do not interfere.  _Arc of Wash._, 427

8   F.3d at 620 (citation omitted).

9           a.      *Plaintiff's Complaint Demands A Fundamental Alteration Of The County's*

10                  *Behavioral Health System.*

11          On the face of the FAC, it is clear that the wide-ranging relief Plaintiff seeks would

12   constitute a fundamental alteration of Alameda's behavioral health system.[7]  Plaintiff demands the

13   expansion of what amounts to the near entirety of potential community-based services.  The

14   Requested Services span across all potential mental health interventions, including different

15   modalities (_e.g._, individual and therapy, pharmacological interventions, peer support, case

16   management, etc.) and by different provider types (_e.g.,_ licensed clinicians, non-clinical case

17   managers, physicians and nurses, peers, etc.).  FAC ¶ 62.  The Requested Services potentially span

18   all levels of mental health care, too, from general outpatient services to acute crisis intervention to

19   high-intensity FSP programs.  Plaintiff's requested injunction would charge this Court with

20   developing and prioritizing a menu of appropriate behavioral health services, supplanting the

21   County's role in developing behavioral health policy.  _Olmstead_ does not allow this.  Instead,

22   _Olmstead_ recognizes that public entities must be able to "maintain a range of facilities for the care

23   and treatment of persons with diverse mental disabilities," and "to administer services with an

24   even hand."  527 U.S. at 597.

25

26          [7] This court can (and should) consider the fundamental alteration defense in this motion to
     dismiss.  _See Rivera v. Peri & Sons Farms, Inc._, 735 F.3d 892, 902 (9th Cir. 2013) (district court
27   properly addressed an affirmative defense raised in a motion to dismiss).  Plaintiff itself pleads
     facts to establish the defense.  _See infra_, Part III.A.3.b; _see also_ 735 F.3d at 902 ("When an
28   affirmative defense is obvious on the face of a complaint, [] a defendant can raise that defense in a
     motion to dismiss.").

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1    Where, as here, the Complaint seeks a remedy that would be so comprehensive as to

2 constitute a fundamental alteration, the Court should dismiss before subjecting the County to

3 broad and burdensome discovery.

4          b.    *Alameda's "Genuine, Comprehensive and Reasonable" Commitment To*

5                *Deinstitutionalization Should Not Be Disturbed.*

6    Courts "will not tinker with" a public entity's behavioral health delivery system where its

7 "commitment to deinstitutionalization is genuine, comprehensive and reasonable." *Arc of Wash.*,

8 427 F.3d at 621 (citations omitted).  The Ninth Circuit has considered whether a public entity is

9 "genuinely and effectively in the process of deinstitutionalizing disabled persons with an even

10 hand." *Id.* at 620 (citation omitted).  The *Sanchez* Court refused to require the state to increase

11 funding to a program where the state had increased expenditures for individuals in community

12 settings over 10 years, reduced its institutionalized population over four years, and applied for

13 increases in the size of its waiver program.  *Sanchez v. Johnson*, 416 F.3d 1051, 1067 (9th Cir.

14 2005).  Similarly, in *Arc of Washington*, plaintiffs sought to increase enrollment in Washington's

15 waiver program.  The Court refused to modify the state's program because it was large and had

16 increased over the past 20 years, was full, allowed eligible persons to enroll as slots became

17 available, had significantly reduced the size of the state's institutionalized population, and its

18 budget increased at the same rate or more than other state agencies.  427 F.3d at 621–22.

19    Like in *Arc of Washington* and *Sanchez*, ACBHCS has demonstrated a commitment to

20 deinstitutionalization and has increased expenditures for and expanded community services.

21 Alameda County does not house *any* of its residents in long-term institutions for the treatment of

22 mental illness.  *See* FAC ¶ 105 (average length of stay for hospitalized patients at John George is

23 eight days and for post-acute stays at Villa Fairmont is four months); RJN, Ex. A, p.5 (Most recent

24 DHCS report showing that Alameda County did not provide 30-day intensive inpatient treatment

25 to *any* resident in FY 2016–17, but at least 2,908 individuals received these services statewide).  In

26 attempting to support its allegations that current community services are inadequate, Plaintiff cites

27 to documents that in fact evidence the County's commitment to deinstitutionalization and ongoing

28 efforts to support and expand community-based services.  For example, the FAC incorporates by

7054443.10

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1   reference the Innovation Plan Proposal for a Community Assessment and Transport Team

2   ("CATT") in Alameda.  FAC ¶ 78, n.10; *see* RJN, Ex. C.  That document describes a project "to

3   design, implement and support a crisis response system that reduces the rate of involuntary

4   detentions and increases the efficiency and effectiveness of linking clients to needed services" and

5   summarizes other ongoing efforts to improve the crisis system of care in Alameda.  RJN Ex. C,

6   pp. 9-10.[8]  Similarly, Plaintiff points to the County's proposed annual plan for Fiscal Year 2018–

7   19 (FAC ¶ 90, n.11), which describes Defendant ACBHCS's proposal to increase capacity and

8   payment rates for supportive housing programs in FSPs.  RJN, Ex. D, p.8.

9        Judicially-noticeable documents further demonstrate the County's genuine,

10  comprehensive, and reasonable commitment to deinstitutionalization.  DHCS has certified that

11  ACBHCS maintains and monitors an adequate network of providers to deliver specialty

12  behavioral health services. RJN, Ex. E, pp.5, 37.  DHCS made this determination after

13  "conduct[ing] a comprehensive review of [ACBHCS's] provider network" pursuant to federal

14  regulations and considering compliance areas including network composition and capacity, system

15  infrastructure, and language assistance capacity.  *Id*. at 3.  And, ACBHCS's network is growing.

16  For State Fiscal Year 2020–21, ACBHCS set aside $136,071,268 in budget authority, a nearly

17  55% increase over the previous three-year plan budget.  RJN, Ex. F, p.14.  The budget increase

18  directly responds to "additional homelessness and housing supports, new crisis programming,

19  increased capacity in [FSP programming], additional school-based supports and increased

20  culturally responsive services."  *Id*.

21        ACBHCS has also increased community-based programming and services.  In Fiscal Year

22

23  ─────────────────────────

[8] "The CATT project will promote interagency collaboration . . . to develop a highly
24  responsive and efficient mobile psychiatric crisis response system." *Id.* at 10. Because the CATT
mobile crisis team is able to make medical assessments, law enforcement ia less likely to hold
25  someone under Cal. Welf. & Inst. Code § 5150.  *Id*. at 12.  The mobile crisis team also has the
ability to transport individuals to "sobering centers, residential crisis units, crisis stabilization
26  units, or peer respite" rather than a locked psychiatric unit.  *Id*.  The CATT was approved on
October 25, 2018, with a soft launch in 2020.  RJN, Ex. F, p.22; *see also* RJN, Ex. B, pp.16-17 &
27  Ex. D, p.14-15 (earlier reports providing annual updates on the CATT project and other
innovations). When at full capacity, CATT will have a total of 12 teams in the field 7 days a week,
28  in addition to the pre-existing Mobile Crisis /Mobile Evaluation Teams that provide mobile crisis
services in Alameda County.  RJN, Ex. F, p.22

7054443.10

1    2019–20, 100 additional slots became available in the FSP program to assist individuals who are

2    homeless and struggling with severe mental illness.  RJN, Ex. B, p.14-15.  For scale, more FSP

3    slots opened last year (100) than there are total beds at Villa Fairmont (96).  FAC ¶ 82.  Six

4    additional licensed board and care homes have been brought on (with a seventh site pending) to

5    provide services and stable housing for people with disabilities.  RJN, Ex. B, p.15.

6         ACBHCS's initiatives to improve size, scope, and quality of services demonstrate the

7    County's "genuine, comprehensive and reasonable" commitment to providing care in the most

8    integrated setting.  So demonstrated, the Court should not interfere with the County's policy

9    determinations.  "It is not reasonable to read the ADA to permit court intervention in these

10   decisions."  *Olmstead*, 527 U.S. 581 at 612–13 (Kennedy, J., concurring) (noting that "[g]rave

11   constitutional concerns are raised when a federal court is given the authority to review the State's

12   choices in basic matters such as establishing or declining to establish new programs").

13   **B.**    **Plaintiff's Policy-Oriented Claims Exceed The Bounds Of *Olmstead* And Raise Non-**

14          **Justiciable Political Questions.**

15        Plaintiff's FAC should be dismissed because it stretches *Olmstead* to the point of

16   presenting a non-justiciable political question.  The Supreme Court has delineated six

17   circumstances in which an issue might present a political question, and this case presents at least

18   the second and third of these factors, namely "a lack of judicially discoverable and manageable

19   standards for resolving it" and "the impossibility of deciding without an initial policy

20   determination of a kind clearly for nonjudicial discretion."  *Baker v. Carr* , 369 U.S. 186, 217

21   (1962).  "The presence of any one of these factors is sufficient to render an issue nonjusticiable."

22   *Spence v. Clinton*, 942 F. Supp. 32, 39 (D.D.C. 1996).

23        There are no judicially discoverable and manageable standards for resolving Plaintiff's

24   claims because, as discussed in Part III.A, *supra*, Plaintiff's requested remedy – to require

25   Defendants to expand and improve the Alameda County mental health network – sounds in public

26   policy rather than discrimination, making the ADA's standards inapposite.  Resolving Plaintiff's

27   claims requires policy determinations about management of scarce public resources to develop,

28   implement, and manage appropriate behavioral health services programs.  *See, e.g.*, *Zivotofsky ex*

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1   *rel. Zivotofsky v. Clinton*, 566 U.S. 189, 204–05 (2012) (Sotomayor, J., concurring) ("The second

2   and third *Baker* factors reflect circumstances in which a dispute calls for decision making beyond

3   courts' competence. . .  When a court is given no standard by which to adjudicate a dispute, or

4   cannot resolve a dispute in the absence of a yet-unmade policy determination charged to a political

5   branch, resolution of the suit is beyond the judicial role envisioned by Article III.").  Plaintiff uses

6   the language of discrimination to address core public policy concerns that are properly left to the

7   political branches, and this Court should decline Plaintiff's invitation to exceed the judicial role

8   envisioned by Article III.

9   **C.**      **Further Amendment Would be Futile.**

10          For the reasons discussed herein, this Court should dismiss the FAC with prejudice.  The

11   FAC should be dismissed without leave to amend because Plaintiff has repeatedly failed to cure

12   deficiencies and further amendment would be futile.  *Leadsinger, Inc. v. BMG Music Pub.*, 512

13   F.3d 522, 532 (9th Cir. 2008); *Love v. Marriott Ownership Resorts, Inc.*, No. 20-CV-07523-CRB,

14   2021 WL 1176674 (N.D. Cal. Mar. 29, 2021) (granting motion to dismiss in ADA case with

15   prejudice).  Plaintiff initiated an investigation into this matter in 2018, including extensive pre-

16   litigation discovery and inspections of all relevant facilities, issued written findings in 2019, filed

17   a complaint in 2020, and filed the FAC in 2021.  FAC ¶ 3; Compl., Ex. A, ECF No. 1.  Despite

18   this, Plaintiff can still only allege "shortcomings in reducing institutionalization" rather than

19   "plausibly stat[ing] a disability discrimination claim" (Order 20), confirming the futility of further

20   amendments.

21                                     **IV. <u>CONCLUSION</u>**

22          With this case, Plaintiff seeks to reimagine and improve the community-based network of

23   care in Alameda County.  As a matter of law, an *Olmstead* case does not provide that remedy.  The

24   FAC should be dismissed with prejudice.

25

26

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

7054443.10

23                                                        Case No. 3:20-cv-05256-CRB
ALAMEDA COUNTY'S AND ACBHCS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    DATED: April 1, 2021                    HOOPER, LUNDY & BOOKMAN, P.C.

2

3                                            By:      /s/ Jordan Kearney

4                                                   JORDAN KEARNEY
                                                    KATRINA A. PAGONIS
5                                                   LINDA RANDLETT KOLLAR

6                                            Attorneys for COUNTY OF ALAMEDA and
7                                            ALAMEDA COUNTY BEHAVIORAL HEALTH
                                             CARE SERVICES
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

7054443.10